B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>East West Bank | DEFENDANTS<br>Nino Jefferson Lim |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Jeffery D. Hermann (State Bar No. 90445) and John A. Farmer (State Bar No. 242775)<br>Orrick, Herrington & Sutcliffe LLP / 777 S. Figueroa St. Suite 3200<br>Los Angeles, CA 90017-5855<br>Tel: 213-629-2020 | ATTORNEYS (If Known)<br>Stella Havkin (State Bar No. 134334)<br>Havkin & Shrago / 5950 Canoga Ave. #400<br>Woodland Hills, CA 91367<br>Tel: 818-999-1568 |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>■ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This is an action to determine the nondischargeability of debt pursuant to 11 USC sec. 523(a)(2)(A) and 11 USC sec. 523(a)(6).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ■ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 17,594,501.38 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Nino Jefferson Lim | BANKRUPTCY CASE NO.<br>2:18-bk-22877-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Hon. Barry Russell |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jeffery D. Hermann | | |
| DATE<br>January 23, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jeffery D. Hermann | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jeffery D. Hermann (State Bar No. 90445)<br>jhermann@orrick.com<br>John A. Farmer (State Bar No. 242775)<br>jfarmer@orrick.com<br>Orrick, Herrington & Sutcliffe LLP<br>777 S. Figueroa Street, Suite 3200<br>Los Angeles, CA 90017-5855<br>Tel: (213) 629-2020<br>Fax: (213) 612-2499<br><br>*Attorney for Plaintiff* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Nino Jefferson Lim,<br><br><br><br>Debtor(s). | CASE NO.: 2:18-bk-22877-BR<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| East West Bank,<br><br><br><br>Plaintiff(s)<br><br>Versus<br><br>Nino Jefferson Lim,<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** _____ | **Address:**<br>☐ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**


                         **KATHLEEN J. CAMPBELL**
                         **CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: **_____**


By: **_____**
               Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:


☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.


☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____    _____    _____
*Date*                          *Printed Name*                        *Signature*

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

JEFFERY D. HERMANN (STATE BAR NO. 90445)
jhermann@orrick.com
JOHN A. FARMER (STATE BAR NO. 242775)
jfarmer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017-5855
Telephone:    (213) 629-2020
Facsimile:    (213) 612-2499

Attorneys for East West Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>NINO JEFFERSON LIM,<br><br>        Debtor. | Case No. 2:18-bk-22877-BR<br><br>Chapter 7<br><br>Adv. No.:_____ |
| EAST WEST BANK,<br><br>        Plaintiff,<br><br>v.<br><br>NINO JEFFERSON LIM,<br><br>        Defendant. | **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT– 11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)**<br><br>(Hearing date to be set by summons) |

Plaintiff East West Bank ("**Plaintiff**" or "**East West Bank**") hereby alleges for its

complaint against Defendant Nino Jefferson Lim ("**Lim**", "**Debtor**" or "**Defendant**") as follows:

## I.

## PARTIES, JURISDICTION AND VENUE

1.    Pursuant to Federal Rule of Bankruptcy Procedure 7008(a), Plaintiff states that this

adversary proceeding relates to *In re Nino Jefferson Lim*, bankruptcy case no. 2:18-bk-22877-BR,

which the Debtor voluntarily filed as a chapter 7 case in this District on October 31, 2018, and

Plaintiff consents to entry of final orders or judgment by this Court.

2.     Defendant is the debtor in this case, and Plaintiff is a creditor of the Debtor.

3.     This Court has original and exclusive jurisdiction over this matter pursuant to

28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(I).

4.     Venue is proper in this District because the Debtor resides in the Central District

of California and because the events giving rise to Plaintiff's claim occurred in this District.

5.     The acts and events giving rise to Plaintiff's claim are based upon conduct which

occurred between 2016 and 2018.

## II.

## **GENERAL ALLEGATIONS**

6.     At the time of the filing of Debtor's chapter 7 case, East West Bank was involved

in litigation with Debtor regarding the causes of action set forth in the First Amended Complaint

filed in the Superior Court of California, County of Los Angeles, on July 19, 2018, case no.

KC07177, attached hereto as Exhibit "1" (the "**First Amended Complaint**" filed in the

"**Superior Court**").

7.     The "**Island Pacific Entities**" are business organizations wholly owned and

controlled by Lim, and Lim is primarily responsible for the actions and activities of each of the

Island Pacific Entities, including the wrongful actions alleged herein.[1]  Lim was the sole

---

[1] The Island Pacific Entities consist of the following entities:  Island Pacific Supermarkets, Inc., a
California corporation;  Island Pacific Chula Vista Inc., a California corporation;  Island Pacific
National City, Inc., a California corporation;  Island Pacific Oxnard, Inc., a California
corporation;  Island Pacific Pittsburg, Inc., a California corporation;  Island Pacific Rancho, Inc.,
a California corporation;  Island Pacific Distribution, Inc., a California corporation;  Island
Pacific Temecula, Inc., a California corporation;  Island Pacific Enterprises, Inc., a California
corporation;  Island Pacific Hayward, Inc., a California corporation;  Promenade Supermarket
Inc., a California corporation;  Long Beach Seafood Market Inc., a California corporation;  Oishi
Supermarket, Inc., a California corporation;  Fresno Supermarket, Inc., a California corporation;
American Canyon Supermarket, Inc., a California corporation;  Puregold Supermarket, Inc., a

- 2 -

authorized signatory on each of the commercial checking accounts he caused the Island Pacific

entities to open at East West Bank and each and every check written on those accounts bore the

signature of Lim and Lim only.  As set forth in more detail in the First Amended Complaint filed

in the Superior Court, Lim is and was the alter ego of each of the Island Pacific Entities.

8.    The Island Pacific Entities were primarily engaged in the business of operating

supermarkets and restaurants catering to consumers of Filipino food with locations throughout

California, and two locations in Las Vegas, Nevada.  On May 17, 2018, most, but not all, of the

Island Pacific Entities effectuated an Assignment for the Benefit of Creditors pursuant to which,

among other things, the assets of the companies were assigned to Insolvency Services Group, as

assignee.

9.    Prior to 2014, Lim and certain of his Island Pacific Entities (Lim formed other of

the Island Pacific Entities later, in 2016 and 2017) were borrowers of Southern California based

Royal Business Bank.  In 2014, Lim and certain of his Island Pacific Entities became borrowers

of East West Bank, and the loans to Royal Business Bank were repaid with the loan proceeds

from the East West Bank loans.  In March of 2017, Lim and certain of his Island Pacific Entities

became borrowers of One West Bank, and the loans to East West Bank were repaid with the loan

proceeds from the One West Bank loans.

10.    When Lim and certain of his Island Pacific Entities became borrowers of East

West Bank, Lim caused each of his+ Island Pacific Entities to open commercial checking

accounts with East West Bank.  In general, deposits of cash, customer checks and credit card

receipts were deposited into these commercial checking accounts, and checks to creditors, wire

California corporation;  Kababayan Development, Inc., a California corporation;  Manila Bay
Foods, Inc., a California corporation;  Azusa Supermarket, Inc., a California corporation;  Mega
Foods, Inc., a California corporation;  Vermont Seafood Market, Inc., a California corporation;
Canoga Supermarket, Inc., a California corporation;  San Jose International Market, Inc., a
California corporation;  and Island Pacific Vegas, Inc., a Nevada corporation.

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

transfers and other transfers were debited from these commercial checking accounts.  When the East West Bank loans were repaid in March of 2017, Lim and his Island Pacific Entities requested that those commercial checking accounts not be closed, as would normally be the practice for a bank customer changing its primary banking relationships, but they requested that the accounts instead remain open.  Further, after March of 2017, Lim requested that East West Bank open additional commercial checking accounts for new entities created in connection with new supermarket locations.  East West Bank accommodated both requests.

11.    Upon information and belief, Lim and the Island Pacific Entities maintained additional commercial checking accounts at Royal Business Bank, even though the Royal Business Bank loans had been repaid in 2014, and Lim and the Island Pacific Entities opened new commercial checking accounts at One West Bank.

12.    Thus, Lim caused the Island Pacific Entities to maintain commercial checking accounts at three separate banks.

13.    On February 2, 2018, and thereafter, East West Bank received notifications that checks that had been deposited to the commercial checking accounts of the Island Pacific Entities were being dishonored by the banks upon which such checks were written because of insufficient funds.  Almost all the checks that were dishonored were written on accounts of various of the Island Pacific Entities at One West Bank and Royal Business Bank.  East West Bank had relied upon the checks deposited into the commercial checking accounts of the Island Pacific Entities being good checks that would be honored when East West Bank allowed the Island Pacific Entities to withdraw funds from their East West Bank accounts and in transferring funds to the payees of checks written on the East West Bank accounts.  In fact however, beginning on February 2nd, the deposited checks "bounced" because the Island Pacific Entities had little or no money in the accounts the checks were written on.  Because the deposited checks were worthless,

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

this activity created large overdrafts in the commercial checking accounts of the Island Pacific Entities.  In addition, East West Bank was notified that certain of the Island Pacific Entities had placed stop payment orders on checks they had deposited into East West Bank, and that East West Bank had relied upon in honoring the checks that Lim caused the Island Pacific Entities to write on their East West Bank commercial checking accounts.  The over 200 dishonored checks that Lim caused the Island Pacific entities to deposit into the East West Bank commercial checking accounts are listed on Exhibit "B" attached hereto to the First Amended Complaint and incorporated herein by reference as if set forth in full.  Each such check bears the signature of Lim.

14.    When the dust settled, East West Bank had paid out almost $18 million of its money expecting to be reimbursed by the checks that Lim caused the Island Pacific Entities to deposit into their East West Bank commercial checking accounts.  This resulted in overdrafts of almost $18 million in the accounts of the Island Pacific Entities.  Thereafter, Lim caused the Island Pacific Entities to cease depositing monies into the East West Bank accounts.  With the few deposits received after February 2, 2018, and other credits, the final overdraft amount of the overdrafts in the commercial checking accounts of the Island Pacific Entities was $17,594,501.38.

15.    Despite demand for repayment, neither Lim nor the Island Pacific Entities have reimbursed East West Bank for the amounts paid out by East West Bank in reliance upon the genuineness and bona fides of the checks that Lim caused the Island Pacific Entities to deposit in the East West Bank accounts.

16.    In fact, Lim had been running a "check kiting scheme" through his wholly owned and controlled Island Pacific Entities.  Check kiting is a form of bank fraud, potentially a federal crime under 18 U.S.C. § 1344, the federal bank fraud statute, and potentially a state crime under Section 476a of the California Penal Code, statutes that apply to criminal prosecutions for kiting.

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

Under this kiting scheme, the defendants wrote many thousands of checks over many months on accounts with insufficient or no funds, deposited those checks into their accounts at another bank, which bank gave them credit for the deposited amounts, and before the deposited checks "bounced", the defendants deposited further checks into the first account with insufficient or no funds, deceiving both banks into believing that all checks written on the two accounts were backed by good funds.  In this case, Lim ran a kiting scheme involving thousands of checks written on three depositary banks, deceiving East West Bank into believing that good funds existed in Island Pacific Entity commercial checking accounts at all three banks, when in fact, upon information and belief, Lim and the Island Pacific Entities had withdrawn the amount of funds involved in the kiting scheme and used the same for the benefit of Lim.

17.     On April 3, 2018, East West Bank filed a complaint against Lim and the Island Pacific Entities for fraud, conversion and other causes of action in the Pomona Division of the Los Angeles Superior Court.  This case was automatically stayed as to Lim when Lim filed his chapter 7 case.

18.     As a result of the wrongful conduct described in this Complaint, East West Bank has suffered significant damages for which Lim is liable.

**III.**

**FIRST CLAIM FOR RELIEF**

**FRAUD**

19.     East West Bank repeats and incorporates by reference all prior allegations in this Complaint as though set forth in full herein.

20.     Lim and each of his Island Pacific Entities engaged in a scheme to defraud in that the kiting scheme perpetrated by them had only one purpose, to steal money from East West Bank (and possibly One West Bank and Royal Business Bank).  Indeed, there can be no legitimate

- 6 -

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

purpose for, and no justification for, the daily blizzard of large dollar amount checks from Lim's different Island Pacific Entities coming into and going out of the commercial checking account of any specific Island Pacific Entity, other than to keep the kiting scheme alive and to thereby steal money from East West Bank.

21.    Lim, through the Island Pacific Entities wholly owned and controlled by him, defrauded East West Bank through, among other things, the implied representations in making and endorsing the thousands of checks deposited into the commercial checking accounts at East West Bank that such deposited items were written on good and collected funds, that such checks would be honored by One West Bank and Royal Business Bank as appropriate, and that the making, endorsing and depositing of such items was done in good faith and for a proper business purpose.

22.    Such representations were false when made.  Such representations were made on each occasion that each check of the many thousands of checks involved in the kiting scheme was written, when it was endorsed and when it was deposited into an East West Bank account.  The persons or entities making such misrepresentations include Lim, each of each his wholly owned and controlled Island Pacific Entities that wrote each check, each of his Island Pacific Entities that deposited each such check, and the person or persons causing each such check to be written, endorsed and deposited.

23.    Upon information and belief, and as evidenced by the thousands of checks issued and deposited by them as part of their kiting scheme, Lim and each of his Island Pacific Entities knew, or should have known, that these representations were false when they were made and they each made these representations recklessly and without regard to their truth or falsity.

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

24.    Upon information and belief, Lim and each of his wholly owned and controlled Island Pacific Entities intended, as the natural and intended nature of the kiting scheme, to deceive East West Bank by making such false representations.

25.    East West Bank justifiably relied upon the above representations and such reliance on the false and misleading statements and warranties of Lim and his Island Pacific Entities caused East West Bank to suffer damages and harm as a result of such reliance.

26.    Lim and each of his wholly owned and controlled Island Pacific Entities harbored a specific malicious intent to do harm to East West Bank, and in fact, willfully and intentionally caused harm to East West Bank.

27.    As a direct and proximate result of these false representations and the kiting scheme to defraud, East West Bank has suffered damages for overdrafts in the commercial checking accounts of the Island Pacific Entities in the amount of $17,594,501.38, in an exact amount to be proven at trial.

28.    The aforementioned acts of Lim and each of his wholly owned and controlled Island Pacific Entities were willful, oppressive, fraudulent and malicious.

## **SECOND CLAIM FOR RELIEF**

## **CONVERSION**

29.    East West Bank repeats and incorporates by reference all allegations in this Complaint as though set forth in full herein.

30.    Lim has intentionally and knowingly diverted, misappropriated, converted to his own use, and absconded with money of East West Bank in the amount of no less than $17,594,501.38.  These sums rightfully belong to East West Bank, and the refusal of Lim to repay these sums constitutes an unlawful and unauthorized exercise of control over the property of another.

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

31.    As a direct and proximate result of the refusal of Lim to return the monies he wrongfully caused East West Bank to pay out on its behalf in an amount of no less than $17,594,501.38 in an exact amount to be proven at trial, East West Bank has suffered and will continue to suffer injury and damages.

## THIRD CLAIM FOR RELIEF

## DETERMINATION OF NONDISCHARGEABILITY – 11 U.S.C. § 523(a)(2)(A)

32.    East West Bank hereby realleges and incorporates by reference each of the allegations of this Complaint as though fully set forth herein.

33.    Lim obtained money from East West Bank by false pretenses, a false representation, or actual fraud.  Therefore, Lim's debt to East West Bank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## FOURTH CLAIM FOR RELIEF

## DETERMINATION OF NONDISCHARGEABILITY – 11 U.S.C. § 523(a)(6)

34.     East West Bank hereby realleges and incorporates by reference each of the allegations of this Complaint as though fully set forth herein.

35.    Lim's conduct amounted to malicious and willful injury to East West Bank. Therefore, Lim's debt to East West Bank is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## IV.

## PRAYER FOR RELIEF

**WHEREFORE**, East West Bank respectfully requests that:

1.    The Court determine that the debt in the amount of at least $17,594,501.38, and in such further amount as proved at trial, is nondischargeable;

2.    East West Bank have judgment against Lim for at least $17,594,501.38 and in such further amount as proved at trial; and

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

1         3.    East West Bank have such other further relief as is just, including reasonable costs

2    and attorneys' fees.

3

4

5    Dated: January 23, 2019                     JEFFERY D. HERMANN
                                                 JOHN A. FARMER
6                                                Orrick, Herrington & Sutcliffe LLP

7

8                                                By: _____/s/ Jeffery D. Hermann_____
                                                        JEFFERY D. HERMANN
9                                                     Attorneys for East West Bank

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT–
11 U.S.C. § 523(a)(2)(A) AND § 523(a)(6)

# EXHIBIT 1

COPY

1  MARK MERMELSTEIN (State Bar No. 208005)
   JEFFERY D. HERMANN (State Bar No. 90445)
2  JOHN FARMER (State Bar No. 242775)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
4  Telephone:   213-629-2020
   Facsimile:   213-612-2499
5  mmermelstein@orrick.com
   jhermann@orrick.com
6  jfarmer@orrick.com

7  Attorneys for Plaintiff
   East West Bank
8

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 19 2018

Sherri R. Carter, Executive Officer/Clerk
By Jacqueline Gonzalez, Deputy

                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                            COUNTY OF LOS ANGELES
10
                                  EAST DISTRICT
11

12 | EAST WEST BANK, a California banking
   | association,                              Case No. KC070177
13 |
   |              Plaintiff,                   **FIRST AMENDED COMPLAINT FOR
14 |                                           BREACH OF CONTRACT; FRAUD;
   |      v.                                   CONVERSION; LIABILITY ON
15 |                                           INSTRUMENTS; AND CIVIL
   | NINO JEFFERSON MIAVE LIM, an              CONSPIRACY**
16 | individual; ISLAND PACIFIC
   | SUPERMARKETS, INC., a California          [Unlimited Jurisdiction over $25,000]
17 | corporation; ISLAND PACIFIC CHULA
   | VISTA INC., a California corporation;
18 | ISLAND PACIFIC NATIONAL CITY,
   | INC., a California corporation; ISLAND
19 | PACIFIC OXNARD, INC., a California
   | corporation; ISLAND PACIFIC
20 | PITTSBURG, INC., a California
   | corporation; ISLAND PACIFIC RANCHO,
21 | INC., a California corporation; ISLAND
   | PACIFIC DISTRIBUTION, INC., a
22 | California corporation; ISLAND PACIFIC
   | TEMECULA, INC., a California
23 | corporation; ISLAND PACIFIC
   | ENTERPRISES, INC., a California
24 | corporation; ISLAND PACIFIC
   | HAYWARD INC., a California corporation;
25 | PROMENADE SUPERMARKET INC., a
   | California corporation; LONG BEACH
26 | SEAFOOD MARKET INC., a California
   | corporation; OISHI SUPERMARKET,
27 | INC., a California corporation; FRESNO
   | SUPERMARKET, INC., a California
28 | corporation; AMERICAN CANYON

1    SUPERMARKET, INC., a California
corporation;  PUREGOLD
2    SUPERMARKET, INC., a California
corporation;  KABABAYAN
3    DEVELOPMENT, INC., a California
corporation;  MANILA BAY FOODS, INC.,
4    a California corporation;  AZUSA
SUPERMARKET, INC., a California
5    corporation;  MEGA FOODS, INC., a
California corporation;  VERMONT
6    SEAFOOD MARKET, INC., a California
corporation;  CANOGA SUPERMARKET,
7    INC., a California corporation;  SAN JOSE
INTERNATIONAL MARKET, INC., a
8    California corporation;  ISLAND PACIFIC
VEGAS, INC., a Nevada corporation;
9    and DOES 1 through 30;

10                    Defendants.

11

12        Plaintiff East West Bank complains of Defendants and alleges as follows:

13                        **JURISDICTION AND VENUE**

14        1.    This Court has jurisdiction over this entire action by virtue of the fact that

15    this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000.

16    Venue is proper in this district pursuant to California Code of Civil Procedure Section 395, et.

17    seq. and the local rules of this Court because the principal place of business of most or all of the

18    Defendants is in Walnut, California.

19                            **PARTIES**

20        2.    East West Bank ("**East West Bank**") is a California banking association

21    and wholly-owned subsidiary of East West Bancorp, Inc., with its principal place of business in

22    Pasadena, California.

23        3.    Nino Jefferson Miave Lim ("**Lim**") is an individual whose principal place

24    of business at the time of the events complained of herein was 20819 Currier Road, Unit 100,

25    Walnut CA 91789.  On information and belief, Lim is the direct or indirect beneficial owner of all

26    other Defendants herein, and is the individual primarily responsible for the wrongful actions of

27    each and every one of the Defendants herein.

28

                            - 2 -        **FIRST AMENDED COMPLAINT FOR BREACH OF
                                          CONTRACT ETC.**

1      4.    Island Pacific Supermarkets, Inc. is a California corporation with a

2   principal place of business at the time of the events complained of herein at 20819 Currier Road,

3   Unit 100, Walnut CA 91789.

4      5.    Island Pacific Chula Vista Inc. is a California corporation with a principal

5   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

6   Walnut CA 91789.

7      6.    Island Pacific National City, Inc. is a California corporation with a

8   principal place of business at the time of the events complained of herein at 20819 Currier Road,

9   Unit 100, Walnut CA 91789.

10     7.    Island Pacific Oxnard, Inc. is a California corporation with a principal

11   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

12   Walnut CA 91789.

13     8.    Island Pacific Pittsburg, Inc. is a California corporation with a principal

14   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

15   Walnut CA 91789.

16     9.    Island Pacific Rancho, Inc. is a California corporation with a principal

17   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

18   Walnut CA 91789.

19     10.    Island Pacific Distribution, Inc. is a California corporation with a principal

20   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

21   Walnut CA 91789.

22     11.    Island Pacific Temecula, Inc. is a California corporation with a principal

23   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

24   Walnut CA 91789.

25     12.    Island Pacific Enterprises, Inc. is a California corporation with a principal

26   place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

27   Walnut CA 91789.

28

**FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

13.    Island Pacific Hayward Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

14.    Promenade Supermarket Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

15.    Long Beach Seafood Market Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

16.    Oishi Supermarket, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

17.    Fresno Supermarket, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

18.    American Canyon Supermarket, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

19.    Puregold Supermarket, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

20.    Kababayan Development, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

21.    Manila Bay Foods, Inc. is a California corporation with a principal place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut CA 91789.

-4-

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT ETC.**

1          22.     Azusa Supermarket, Inc. is a California corporation with a principal place

2  of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

3  Walnut CA 91789.

4          23.     Mega Foods, Inc. is a California corporation with a principal place of

5  business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut

6  CA 91789.

7          24.     Vermont Seafood Market, Inc. is a California corporation with a principal

8  place of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

9  Walnut CA 91789.

10        25.     Canoga Supermarket, Inc. is a California corporation with a principal place

11  of business at the time of the events complained of herein at 20819 Currier Road, Unit 100,

12  Walnut CA 91789.

13        26.     San Jose International Market, Inc. is a California corporation with a

14  principal place of business at the time of the events complained of herein at 20819 Currier Road,

15  Unit 100, Walnut CA 91789.

16        27.     Island Pacific Vegas, Inc. is a Nevada corporation with a principal place of

17  business at the time of the events complained of herein at 20819 Currier Road, Unit 100, Walnut

18  CA 91789.

19        28.     The above named Defendants, with the exception of Lim, are sometimes

20  hereinafter referred to as the "**Island Pacific Entities**".

21        29.     Plaintiff is ignorant of the true names and capacities of the Defendants sued

22  herein as Does 1 through 30, and for that reason has sued them by their fictitious names.  On

23  information and belief, Plaintiff alleges that each of these fictitiously named Defendants is

24  responsible in some manner for some or all of the acts alleged herein, and that Plaintiff's damages

25  as herein alleged were proximately caused by such Defendants.  Plaintiff will amend this First

26  Amended Complaint to set forth the true names and capacities of the fictitiously-named

27  Defendants once Plaintiff has ascertained that information.

28

    **FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

1     30.    On information and belief, Lim and Does 21 through 30 are the alter egos

2  of each of the Island Pacific Entities, the Island Pacific Entities are alter egos of each other and

3  Lim and Does 21 through 30, and should be adjudicated to be operating as a single enterprise, due

4  to the following factors, among others:

5             (a)    the island Pacific Entities held themselves out to the public as a

6  single entity with all the stores doing business under the same two names - "Island

7  Pacific Supermarket" or "Island Pacific Seafood Market";

8             (b)    a single individual, Lim, controlled virtually every business and

9  financial decision of each and every one of the Island Pacific Entities;

10            (c)    Lim and Does 21 through 30 diverted assets from such entities to

11  the detriment of creditors of such entities, including East West Bank;

12            (d)    the Island Pacific Entities were used as a subterfuge for the

13  commission of wrongful and illegal activities, including the activities complained

14  of herein, with the purpose and intent of making it more difficult for the victims of

15  the wrongful or unlawful activities to hold Lim and Does 21 through 30 liable for

16  the same;

17            (e)    the Island Pacific Entities were used by Lim and Does 21 through

18  30 as a means of defrauding the victims of their wrongful and illegal activities and

19  other creditors with the intention of hindering, delaying or defrauding such victims

20  and other creditors;

21            (f)    the disregard of and failure to maintain corporate formalities for the

22  Island Pacific Entities;

23            (g)    the failure to adhere to minimally acceptable standards of corporate

24  accounting, or to maintain adequate business records that accurately portray the

25  business activities of the Island Pacific Entities;

26            (h)    the exceedingly large and frequent transfers of money between all

27  of the Island Pacific Entities as evidenced by the fraudulent kiting scheme

28  described herein;

- 6 -          **FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

1          (i)     cash generated by one store was available to satisfy obligations of

2   other stores without an appropriate accounting;

3         (j)     the treatment by Lim and Does 21 through 30 of the assets of the

4   Island Pacific Entities as their own; and

5         (k)     the Island Pacific Entities were inadequately capitalized.

6      31.     On information and belief, there is such a unity of interest and ownership

7   that the separate personalities of the Island Pacific Entities and Lim and Does 21 through 30 no

8   longer exist and if the actions and omissions of the Island Pacific Entities alleged herein are

9   treated as those of each of the Island Pacific Entities alone, an inequitable result would follow.

10     32.     As a result of the foregoing, the Island Pacific Entities are alter egos of

11   each other and of Lim and of Does 21 through 30, should be considered to be a single enterprise,

12   and each of the Island Pacific Entities, Lim, and Does 21 through 30 should be adjudicated to be

13   liable for the wrongful actions of each of the Island Pacific Entities, Lim and Does 21 through 30

14   alleged herein.

15     33.     On information and belief, Defendants, and each of them, knowingly and

16   willfully conspired and agreed among themselves to commit the acts herein alleged, and each of

17   Defendants is, and at all times mentioned herein was, the co-conspirator of the remaining

18   Defendants and that, in doing the acts alleged herein, the Defendants were acting in furtherance of

19   and in the course and scope of a conspiracy to defraud Plaintiff, to breach or induce the breach of

20   contractual duties owed to Plaintiff, and to misappropriate and steal the property of Plaintiff.

21     34.     On information and belief, Defendants, and each of them, are, and at all

22   times mentioned herein were, aiding and abetting the remaining Defendants and acting in close

23   and active concert in the commission of the acts alleged herein, in order to defraud Plaintiff, to

24   breach or induce the breach of contractual duties owed to Plaintiff, and to misappropriate and

25   steal the property of Plaintiff.

26     35.     On information and belief, at all times herein mentioned each of the

27   Defendants was the agent of each of the remaining Defendants, and by committing the acts herein

28   alleged, was acting within the course and scope of such agency.

**FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

1

**FACTS COMMON TO ALL CLAIMS**

2        36.      The Island Pacific Entities are business organizations owned directly or

3    indirectly by Lim, and Lim is primarily responsible for the actions and activities of each of the

4    Island Pacific Entities, including the wrongful actions alleged herein.  The Island Pacific Entities

5    are primarily engaged in the business of operating supermarkets and restaurants catering to

6    consumers of Filipino food with locations throughout California, and two locations in Las Vegas,

7    Nevada.  On May 17, 2018, the Island Pacific Entities effectuated an Assignment for the Benefit

8    of Creditors pursuant to which, among other things, the assets of the companies were assigned to

9    Insolvency Services Group, as assignee.

10        37.      Prior to 2014, Lim and certain of the Island Pacific Entities (other of the

11    Island Pacific Entities were formed later, in 2016 and 2017) were borrowers of Southern

12    California based Royal Business Bank.  In 2014, Lim and certain of the Island Pacific Entities

13    became borrowers of East West Bank, and the loans to Royal Business Bank were repaid with the

14    loan proceeds from the East West Bank loans.  In March of 2017, Lim and certain of the Island

15    Pacific Entities became borrowers of One West Bank, and the loans to East West Bank were

16    repaid with the loan proceeds from the One West Bank loans.

17        38.      When Lim and certain of the Island Pacific Entities became borrowers of

18    East West Bank, they each opened commercial checking accounts with East West Bank.  In

19    general, deposits of cash, customer checks and credit card receipts were deposited into these

20    commercial checking accounts, and checks to creditors, wire transfers and other transfers were

21    debited from these commercial checking accounts.  When the East West Bank loans were repaid

22    in March of 2017, Lim and the Island Pacific Entities requested that those commercial checking

23    accounts not be closed, as would normally be the practice for a bank customer changing its

24    primary banking relationships, but instead remain open.  Further, after March of 2017, Lim and

25    the Island Pacific Entities requested that East West Bank open additional commercial checking

26    accounts for new supermarket locations.  East West Bank accommodated both requests.

27        39.      Upon information and belief, Lim and the Island Pacific Entities

28    maintained additional commercial checking accounts at Royal Business Bank, even though the

- 8 -

**FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

1   Royal Business Bank loans had been repaid in 2014, and Lim and the Island Pacific Entities

2   opened new commercial checking accounts at One West Bank.

3        40.    Thus, Lim and the Island Pacific Entities maintained commercial checking

4   accounts at three separate banks.

5        41.    On February 2, 2018, and thereafter, East West Bank received notifications

6   that checks that had been deposited to the commercial checking accounts of the Island Pacific

7   Entities were being dishonored by the banks that such checks were written on because of

8   insufficient funds.  Almost all of the checks that were dishonored were written on accounts of

9   various of the Island Pacific Entities at One West Bank and Royal Business Bank.  East West

10  Bank had relied upon the checks deposited into the commercial checking accounts of the Island

11  Pacific Entities being good checks that would be honored when East West Bank allowed the

12  Island Pacific Entities to withdraw funds from their East West Bank accounts and in transferring

13  funds to the payees of checks written on the East West Bank accounts.  In fact, the deposited

14  checks "bounced" because the Island Pacific Entities had little or no money in the accounts the

15  checks were written on.  Because the deposited checks were worthless, this activity created large

16  overdrafts in the commercial checking accounts of the Island Pacific Entities.  In addition, East

17  West Bank was notified that certain of the Island Pacific Entities had placed stop payment orders

18  on checks they had deposited into East West Bank, and that East West Bank had relied upon in

19  honoring the checks that the Island Pacific Entities had written on their East West Bank

20  commercial checking accounts.  The over 200 worthless checks deposited by the Island Pacific

21  entities into their East West Bank commercial checking accounts are listed on Exhibit "A" hereto

22  and incorporated herein by reference as if set forth in full.  Each such check bears the signature of

23  Lim.

24       42.    When the dust settled, East West Bank had paid out almost $18 million of

25  its money expecting to be reimbursed by the checks deposited by the Island Pacific Entities into

26  their East West Bank commercial checking accounts.  This resulted in overdrafts of almost $18

27  million in the accounts of the Island Pacific Entities.  The Island Pacific Entities thereafter ceased

28  depositing monies into the East West Bank accounts.  With the few deposits received after

1    February 2, 2018, and other credits, the final overdraft amount of all of the overdrafts in the

2    commercial checking accounts of the Island Pacific Entities was $17,594,501.38.

3            43.    Despite demand for repayment, neither Lim nor the Island Pacific Entities

4    have reimbursed East West Bank for the amounts paid out by East West Bank in reliance upon

5    the genuineness and bona fides of the checks deposited by the Island Pacific Entities.

6            44.    In fact, Lim and the Island Pacific Entities had been running a "check

7    kiting scheme." Check kiting is a form of bank fraud, potentially a federal crime under 18 U.S.C.

8    § 1344, the federal bank fraud statute, and potentially a state crime under Section 476a of the

9    California Penal Code, statutes that apply to criminal prosecutions for kiting. Under this kiting

10   scheme, the defendants wrote many thousands of checks over many months on accounts with

11   insufficient or no funds, deposited those worthless checks into their accounts at another bank,

12   which bank gave them credit for the deposited amounts, and before the deposited checks

13   "bounced", the defendants deposited further checks into the first account with insufficient or no

14   funds, deceiving both banks into believing that all checks written on the two accounts were

15   backed by good funds. In this case, Lim and the Island Pacific Entities ran a kiting scheme

16   involving thousands of checks written on all three of its depositary banks, deceiving East West

17   Bank into believing that good funds existed in Island Pacific Entity commercial checking

18   accounts at all three banks, when in fact, Lim and the Island Pacific Entities had withdrawn the

19   amount of funds involved in the kiting scheme.

20           45.    As a result of the wrongful conduct described in this First Amended

21   Complaint, East West Bank has suffered significant damages for which Defendants are liable.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

### (Against Lim and each of the Island Pacific Entities)

22

23           46.    East West Bank repeats and incorporates by reference all prior allegations

24   in this First Amended Complaint as though set forth in full herein.

25

26           47.    Upon opening each of the commercial checking accounts, each of the

27   Island Pacific Entities executed and delivered a "**Business Account Signature Card**", which

28

- 10 -    **FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

among other things, incorporated the terms and conditions of the Bank's "**Deposit Agreement**"

which together constitute a written agreement between East West Bank on the one hand and each

of the Island Pacific Entities and the signatories listed on the Business Account Signature Card on

the other hand.  Lim was the authorized signer for each of the accounts of the Island Pacific

Entities and personally signed each of the Business Account Signature Cards.  True and correct

copies of each of the Business Account Signature Cards are collectively attached hereto as

Exhibit "B" and incorporated herein by reference as if set forth in full.  True and correct copies of

the two forms of Deposit Agreements applicable for the time periods involved are attached hereto

as Exhibit "C" and incorporated herein by reference as if set forth in full.

48.     Both the Business Account Signature Cards and Deposit Agreements are

valid and enforceable contracts.

49.     East West Bank has performed all of its duties under the Deposit

Agreements.

50.     Under the terms of the Deposit Agreements, each account owner and

authorized signer is liable for the losses in the accounts.  The Deposit Agreement provides in part:

> Used in this Agreement, the words "we", "us", "our" or "the Bank" mean East
> West Bank, and the words "you"/"your" mean the ***owners and authorized signers***
> on the account.
>
> * * *
>
> ***You agree to pay us the amount of any overdraft immediately***, without notice or
> demand from us. . . .
>
> ***Each of you is jointly and severally responsible to us for paying any and all***
> ***overdrafts created by any one of the authorized signers*** (including your
> authorized agents and/or attorney-in-fact), irrespective of who signed the check or
> item creating the overdraft, benefited from the payment, or contributed funds to
> the account. . . .  (emphasis added)

51.     As the authorized signer for each of the accounts, Lim is jointly and

severally liable, together with the Island Pacific Entities, for repayment to East West Bank of the

- 11 -        **FIRST AMENDED COMPLAINT FOR BREACH OF**
              **CONTRACT ETC.**

1    overdrafts on the accounts. Neither Lim nor the Island Pacific Entities can in good faith dispute

2    the overdrafts or their liability for them.

3            52.     Under section 10 of the Deposit Agreements governing each of the

4    commercial checking accounts of the Island Pacific Entities, Lim and the Island Pacific Entities

5    are liable for all attorneys' fees arising out of this action. East West Bank requests that it recover

6    its attorney's fees and expenses incurred in connection with this litigation.

7            53.     As a result of these breaches of the Deposit Agreements, East West Bank

8    has suffered damages for overdrafts in the commercial checking accounts of the Island Pacific

9    Entities in the amount of $17,594,501.38, an amount in excess of the jurisdictional limits of this

10    Court, in an exact amount to be proven at trial.

11                          **SECOND CAUSE OF ACTION**
**FRAUD**

12

13              **(Against Lim, each Island Pacific Entity and Does 1 - 30)**

14            54.     East West Bank repeats and incorporates by reference all prior allegations

in this First Amended Complaint as though set forth in full herein.

15

16           55.     Lim, each Island Pacific Entity and Does 1 through 30 engaged in a

17    scheme to defraud in that the kiting scheme perpetrated by them had only one purpose, to steal

money from East West Bank (and possibly One West Bank and Royal Bank). Indeed, there can

18

19    be no legitimate purpose for, and no justification for, the daily blizzard of large dollar amount

checks from different Island Pacific Entities coming into and going out of the commercial

20

21    checking account of any specific Island Pacific Entity, other than to keep the kiting scheme alive

and to thereby steal money from East West Bank and possibly others.

22

23           56.     Lim, each Island Pacific Entity and Does 1 through 30 defrauded East West

Bank through, among other things, their implied representations in making and endorsing the

24

25    thousands of checks deposited into the commercial checking accounts at East West Bank that

such deposited items were written on good and collected funds, that such checks would be

26

27    honored by One West Bank and Royal Business Bank as appropriate, and that the making,

endorsing and depositing of such items was done in good faith and for a proper business purpose.

28

     **FIRST AMENDED COMPLAINT FOR BREACH OF**
**CONTRACT ETC.**

57.    Such representations were false when made.  Such representations were made on each occasion that each check of the many thousands of checks involved in the kiting scheme was written, when it was endorsed and when it was deposited into an East West Bank account.  The persons or entities making such misrepresentations include the Island Pacific Entity that wrote each check, each Island Pacific Entity that deposited each such check, and the person or persons causing each such check to be written, endorsed and deposited.

58.    Upon information and belief, and as evidenced by the thousands of worthless checks issued and deposited by them as part of their kiting scheme, Lim, each Island Pacific Entity and Does 1 through 30 knew these representations to be false when they were made and they made these representations recklessly and without regard to their truth or falsity.

59.    Upon information and belief, Lim, each Island Pacific Entity and Does 1 through 30 intended, as the natural and intended nature of their kiting scheme, to deceive East West Bank by making such false representations.

60.    East West Bank justifiably relied upon the above representations and such reliance on the false and misleading statements and warranties of Lim and the Island Pacific Entities caused East West Bank to suffer damages and harm as a result of such reliance.

61.    Lim, each Island Pacific Entity and Does 1 through 30 engaged in a scheme to defraud in that the kiting scheme perpetrated by them had only one purpose, to steal money from East West Bank (and possibly One West Bank and Royal Bank).  Indeed, there can be no legitimate purpose for, and no justification for, the daily blizzard of large dollar amount checks from different Island Pacific Entities coming into and going out of the commercial checking account of any specific Island Pacific Entity, other than to keep the kiting scheme alive and to thereby steal money from East West Bank and possibly others.

62.    Lim, each Island Pacific Entity and Does 1 through 30 harbored a specific malicious intent to do harm to East West Bank, and in fact, willfully and intentionally caused harm to East West Bank.

63.    As a direct and proximate result of these false representations and the kiting scheme to defraud, East West Bank has suffered damages for overdrafts in the commercial

- 13 -    **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT ETC.**

checking accounts of the Island Pacific Entities in the amount of $17,594,501.38, an amount in excess of the jurisdictional limits of this Court, in an exact amount to be proven at trial.

64.    The aforementioned acts of Lim, each Island Pacific Entity and Does 1 through 30 were willful, oppressive, fraudulent and malicious.  East West Bank is therefore entitled to punitive damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## CONVERSION

### (Against Lim, each Island Pacific Entity and Does 1 - 30)

65.    East West Bank repeats and incorporates by reference all allegations in this First Amended Complaint as though set forth in full herein.

66.    Defendants, and each of them, have intentionally and knowingly diverted, misappropriated, converted to their own use, and absconded with money of East West Bank in the amount of no less than $17,594,501.38.  These sums rightfully belong to East West Bank, and the refusal of Defendants to repay these sums constitutes an unlawful and unauthorized exercise of control over the property of another.

67.    As a direct and proximate result of the refusal of Defendants to return the monies they wrongfully caused East West Bank to pay out on its behalf in an amount of no less than $17,594,501.38 in an exact amount to be proven at trial, East West Bank has suffered and will continue to suffer injury and damages.

68.    The aforementioned acts of Defendants were willful, oppressive, fraudulent and malicious.  East West Bank is therefore entitled to punitive damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## LIABILITY ON WRITTEN INSTRUMENTS

### (Against each Island Pacific Entity)

69.    East West Bank repeats and incorporates by reference all prior allegations in this First Amended Complaint as though set forth in full herein.

70.    Each of the Island Pacific Entities wrote checks on their accounts at One West Bank and Royal Business Bank in favor of various of the other Island Pacific Entities who

- 14 -    **FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

deposited those checks into their accounts at East West Bank with the intention that East West

Bank would credit their account for the amount of such deposits. With respect to such checks

that were dishonored by One West Bank and Royal Business Bank, and therefore returned to East

West Bank unpaid, each of the Island Pacific Entities remain liable to East West Bank as a maker

of such worthless checks for the amounts of such worthless deposited checks notwithstanding the

dishonor of such worthless checks on account of insufficient funds in the accounts upon which

such worthless checks were written.

71.     Each of the Island Pacific Entities that deposited checks into their accounts

at East West Bank have liability as endorser of each such check. When those checks were

dishonored by One West Bank and Royal Business Bank for insufficient funds, the Island Pacific

Entities that deposited those worthless checks into their East West Bank account are liable to East

West Bank for the amount of each such check as an endorser.

72.     Upon information and belief, Lim caused each of the Island Pacific Entities

to write such worthless checks and to deposit such worthless checks into their accounts at East

West Bank.

73.     As a result of the dishonor of such worthless checks, East West Bank has

suffered and will continue to suffer injury and damages in an amount no less than $17,594,501.38

in an exact amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## CIVIL CONSPIRACY

### (Against All Defendants)

74.     East West Bank repeats and incorporates by reference all prior allegations

in this First Amended Complaint as though set forth in full herein.

75.     Plaintiff alleges above that the named defendants are alter egos of each

other and should be adjudicated to be but one entity. In the event that such a determination is not

made and that one or more of the named Defendants are held to have a separate existence,

Plaintiff believes that such Defendants acted together to perpetrate the kiting scheme alleged

herein and to commit the other wrongful acts alleged herein.

- 15 -      **FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

76.     On information and belief, Defendants, and each of them expressly or tacitly conspired and agreed upon a course of action:  (a) to deprive East West Bank of monies belonging to East West Bank;  (b) to misrepresent to East West Bank that checks deposited into the East West Bank commercial checking accounts of the Island Pacific Entities and written on those accounts were deposited, endorsed and written in good faith and for a proper business purpose and not for an improper purpose;  (c) to engage in a fraudulent kiting scheme with the sole intent and purpose of stealing money from East West Bank; and  (d) to otherwise take actions pursuant to such conspiracy to ensure the continuation and eventual implementation of such fraudulent activities.

77.     Defendants knowingly and willfully took the actions and made the omissions alleged herein pursuant to, and in furtherance of, such conspiracy.

78.     Defendants were successful in their conspiratorial efforts to continue the fraudulent kiting scheme and to steal money from East West Bank.

79.     As a direct and proximate result of the refusal of Defendants to return the monies they wrongfully caused East West Bank to pay out on its behalf in an amount of no less than $17,594,501.38, in an exact amount to be proven at trial, East West Bank has suffered and will continue to suffer injury and damages.

80.     The aforementioned acts of Defendants were willful, oppressive, fraudulent and malicious.  East West Bank is therefore entitled to punitive damages in an amount to be proven at trial.

**FIRST AMENDED COMPLAINT FOR BREACH OF
CONTRACT ETC.**

1

## PRAYER FOR RELIEF

2     Wherefore, East West Bank prays as follows:

3          1.     For compensatory damages, jointly and severally, against Defendants of

4     amount of no less than $17,594,501.38, in an exact amount to be proven at trial, together with

5     pre-judgment and post judgment interest thereon;

6          2.     For punitive damages against Defendants in an amount to be proven at

7     trial;

8          3.     For a judgment finding that all Defendants have the liability of each of the

9     other Defendants as co-conspirators;

10          4.     For a judgment that Lim and Does 21 through 30 are the alter egos of each

11    of the Island Pacific Entities, and the Island Pacific Entities are alter egos of each other, and each

12    are therefore liable for the obligations and liabilities of Lim and the Island Pacific Entities as set

13    forth herein;

14          5.     For attorney's fees, expenses and costs of suit; and

15          6.     For such other and further relief as the Court deems proper.

16

17    Dated: July 18, 2018              JEFFERY D. HERMANN
                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
18

19

20

21                                      Jeffery D. Hermann
                                        Attorneys for Plaintiff
22                                      EAST WEST BANK

23

24

25

26

27

28

                              - 17 -     **FIRST AMENDED COMPLAINT FOR BREACH OF
                                         CONTRACT ETC.**

# EXHIBIT A

| Account number | Account name | Maker | Check# | Amount | Drawee Bank | Date Returned | Reason |
|---|---|---|---|---|---|---|---|
| | Long Beach Seafood Market Inc. | Island Pacific Distribution Inc. | 65761 | $21,552.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65828 | $54,351.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $75,913.00 | | | |
| XXXXXX4608 | Island Pacific Hayward Inc. | Island Pacific Distribution Inc. | 65769 | $52,689.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65836 | $33,109.00 | Onewest Bank | 2/6/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65837 | $35,492.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $121,290.00 | | | |
| XXXXXX4590 | Oishi Supermarket Inc. | Island Pacific Distribution Inc. | 65762 | $23,707.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65829 | $32,143.00 | Onewest Bank | 2/6/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65830 | $32,076.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $87,926.00 | | | |
| XXXXXX4582 | Island Pacific Chula Vista Inc. | Island Pacific Distribution Inc. | 65759 | $19,478.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65826 | $27,912.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $47,390.00 | | | |
| XXXXXX4566 | Fresno Supermarket Inc. | Island Pacific Distribution Inc. | 65758 | $27,883.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65825 | $45,617.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $73,500.00 | | | |
| XXXXXX4558 | American Canyon Supermarket Inc. | Island Pacific Distribution Inc. | 65757 | $36,222.00 | Onewest Bank | 2/5/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65823 | $31,143.00 | Onewest Bank | 2/6/2018 | NSF |
| | | Island Pacific Distribution Inc. | 65824 | $31,071.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | $98,436.00 | | | |
| XXXXXX2182 | Island Pacific Enterprises Inc. | 1 Long Beach Seafood Market Inc. | 191807 | $38,009.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 2 Promenade Supermarket Inc. | 161139 | $38,327.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 3 Promenade Supermarket Inc. | 161137 | $38,321.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 4 Puregold Supermarket Inc. | 161132 | $52,014.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 5 Puregold Supermarket Inc. | 131624 | $51,816.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 6 Island Pacific Supermarket Inc. | 131625 | $28,123.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 7 Azusa Supermarket Inc. | 242928 | $32,998.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 8 Fresno Supermarket Inc. | 41127 | $24,998.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 9 Promenade Supermarket Inc. | 151812 | $38,314.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 10 Long Beach Seafood Market Inc. | 161138 | $25,604.00 | Onewest Bank | 2/5/2018 | NSF |

$18,945,565.00

| Account | Company | # | Entity | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|---|---|
| XXXXXX2125 | Purogold Supermarket Inc. | 11 | Ataza Supermarket Inc. | 41135 | $52,998.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 12 | Fresno Supermarket Inc. | 151820 | $24,998.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 13 | Promenade Supermarket Inc. | 161145 | $38,321.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 14 | Long Beach Seafood Market Inc. | 193816 | $38,009.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 15 | Island Pacific Chula Vista Inc. | 211860 | $28,123.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 16 | Purogold Supermarket Inc. | 131632 | $51,816.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 17 | Promenade Supermarket Inc. | 161147 | $38,327.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 18 | Purogold Supermarket Inc. | 131631 | $52,014.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 19 | Promenade Supermarket Inc. | 161146 | $38,314.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 20 | Long Beach Seafood Market Inc. | 191817 | $5,152.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | AAS Fee | | -$57,863.88 | | | |
| | | | | | **$726,596.00** | | | |
| XXXXXX2308 | Island Pacific Distribution Inc. | 1 | Island Pacific Distribution Inc. | 65768 | $51,053.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 2 | Island Pacific Distribution Inc. | 65767 | $51,014.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 3 | Island Pacific Distribution Inc. | 65766 | $51,054.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 4 | Island Pacific Distribution Inc. | 65765 | $51,009.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 5 | Island Pacific Distribution Inc. | 65764 | $51,028.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 6 | Island Pacific Distribution Inc. | 65763 | $51,031.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 7 | Island Pacific Distribution Inc. | 65835 | $56,619.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 8 | Island Pacific Distribution Inc. | 65834 | $56,628.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 9 | Island Pacific Distribution Inc. | 65833 | $56,674.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 10 | Island Pacific Distribution Inc. | 65832 | $56,654.00 | Onewest Bank | 2/6/2018 | NSF |
| | | 11 | Island Pacific Distribution Inc. | 65831 | $56,644.00 | Onewest Bank | 2/6/2018 | NSF |
| | | | | | **$589,408.00** | | | |
| | | 1 | Mega Foods Inc. | 50967 | $5,669.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 2 | Island Pacific Hayward Inc. | 201856 | $44,088.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 3 | Island Pacific Vegas Inc. | 181257 | $55,912.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 4 | Island Pacific Vegas Inc. | 181266 | $54,239.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 5 | Island Pacific Hayward Inc. | 201864 | $44,655.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 6 | Mega Foods Inc. | 50977 | $16,665.00 | Onewest Bank | 2/5/2018 | NSF |
| | | | | | **$221,168.00** | | | |
| XXXXXXX1755 | Kababayan Development Inc. | 1 | Island Pacific National City Inc. | 276 | $26,214.00 | Royal Business Bank | 2/5/2018 | NSF |
| | | 2 | Island Pacific National City Inc. | 277 | $26,211.00 | Royal Business Bank | 2/5/2018 | NSF |
| | | 3 | Island Pacific Pittsburg Inc. | 299 | $26,228.00 | Royal Business Bank | 2/5/2018 | NSF |
| | | 4 | Island Pacific Pittsburg Inc. | 300 | $26,347.00 | Royal Business Bank | 2/5/2018 | NSF |
| | | 5 | Island Pacific Chula Vista Inc. | 213847 | $52,328.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 6 | Island Pacific Hayward Inc. | 201860 | $44,911.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 7 | Island Pacific Pittsburg Inc. | 101230 | $55,492.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 8 | Mega Foods Inc. | 50971 | $30,992.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 9 | Island Pacific Chula Vista Inc. | 211848 | $51,233.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 10 | Island Pacific Hayward Inc. | 201861 | $54,269.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 11 | Island Pacific Vegas Inc. | 181258 | $14,716.00 | Onewest Bank | 2/5/2018 | NSF |
| | | 12 | Island Pacific Pittsburg Inc. | 101231 | $30,823.00 | Onewest Bank | 2/5/2018 | NSF |

**EXHIBIT A**

**San Jose International Market Inc.**

| # | Company | Number | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 13 | Mega Foods Inc. | 50970 | $32,028.00 | Onewest Bank | 2/5/2018 | NSF |
| 14 | Island Pacific Pittsburg Inc. | 101239 | $55,492.00 | Onewest Bank | 2/6/2018 | NSF |
| 15 | Island Pacific Hayward Inc. | 201869 | $34,269.00 | Onewest Bank | 2/6/2018 | NSF |
| 16 | Island Pacific Pittsburg Inc. | 101240 | $30,823.00 | Onewest Bank | 2/6/2018 | NSF |
| 17 | Mega Foods Inc. | 50980 | $32,028.00 | Onewest Bank | 2/6/2018 | NSF |
| 18 | Island Pacific Vegas Inc. | 181267 | $34,716.00 | Onewest Bank | 2/6/2018 | NSF |
| 19 | Mega Foods Inc. | 50981 | $30,992.00 | Onewest Bank | 2/6/2018 | NSF |
| 20 | Island Pacific Chula Vista Inc. | 218855 | $52,928.00 | Onewest Bank | 2/6/2018 | NSF |
| 21 | Island Pacific Hayward Inc. | 201868 | $44,911.00 | Onewest Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Distribution Inc. | 65809 | $49,674.00 | Onewest Bank | 2/6/2018 | NSF |
| 23 | Island Pacific Distribution Inc. | 65810 | $49,674.00 | Onewest Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Distribution Inc. | 65811 | $41,654.00 | Onewest Bank | 2/6/2018 | NSF |
| 25 | Island Pacific Chula Vista Inc. | 218856 | $41,672.00 | Onewest Bank | 2/6/2018 | NSF |
| 26 | Canoga Supermarket Inc. | 280 | $49,628.00 | Onewest Bank | 2/6/2018 | NSF |
| 27 | Canoga Supermarket Inc. | 281 | $49,654.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 28 | Canoga Supermarket Inc. | 282 | $49,674.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 29 | San Jose International Market Inc. | 297 | $49,686.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 30 | San Jose International Market Inc. | 298 | $34,663.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 31 | San Jose International Market Inc. | 299 | $26,697.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | | | **$1,184,681.00** | | | |

**XXXXXX1607**

| # | Company | Number | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 1 | Island Pacific Distribution Inc. | 65755 | $50,783.00 | One West Bank | 2/5/2018 | NSF |
| 2 | Island Pacific Distribution Inc. | 65754 | $50,709.00 | One West Bank | 2/5/2018 | NSF |
| 3 | Island Pacific Distribution Inc. | 65753 | $50,711.00 | One West Bank | 2/5/2018 | NSF |
| 4 | Island Pacific Distribution Inc. | 65752 | $50,714.00 | One West Bank | 2/5/2018 | NSF |
| 5 | Island Pacific Distribution Inc. | 65751 | $50,729.00 | One West Bank | 2/5/2018 | NSF |
| 6 | Island Pacific Vegas Inc. | 181263 | $27,735.00 | One West Bank | 2/5/2018 | NSF |
| 7 | Fresno Supermarket Inc. | 151811 | $51,106.00 | One West Bank | 2/5/2018 | NSF |
| 8 | American Canyon Supermarket Inc. | 121762 | $35,739.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Mega Foods Inc. | 50972 | $30,014.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Island Pacific Oxnard Inc. | 91230 | $30,000.00 | One West Bank | 2/5/2018 | NSF |
| 11 | Canoga Supermarket Inc. | 71271 | $25,262.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Canoga Supermarket Inc. | 71270 | $31,368.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Fresno Supermarket Inc. | 151810 | $50,143.00 | One West Bank | 2/5/2018 | NSF |
| 14 | Island Pacific Oxnard Inc. | 91229 | $35,673.00 | One West Bank | 2/5/2018 | NSF |
| 15 | American Canyon Supermarket Inc. | 121761 | $48,011.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Canoga Supermarket Inc. | 71269 | $31,384.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Seattle Inc. | 141783 | $43,138.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Mega Foods Inc. | 50973 | $31,841.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Island Pacific Vegas Inc. | 181262 | $38,009.00 | One West Bank | 2/5/2018 | NSF |
| 20 | Island Pacific Oxnard Inc. | 91228 | $35,028.00 | One West Bank | 2/5/2018 | NSF |
| 21 | Island Pacific Distribution Inc. | 65821 | $50,711.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Distribution Inc. | 65820 | $50,714.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Island Pacific Distribution Inc. | 65819 | $50,754.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Distribution Inc. | 65818 | $50,728.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Island Pacific Vegas Inc. | 65817 | $50,729.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Island Pacific Vegas Inc. | 181272 | $27,735.00 | One West Bank | 2/6/2018 | NSF |
| 27 | American Canyon Supermarket Inc. | 121770 | $35,739.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Mega Foods Inc. | 50982 | $30,014.00 | One West Bank | 2/6/2018 | NSF |
| 29 | Island Pacific Oxnard Inc. | 91239 | $30,000.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Canoga Supermarket Inc. | 71278 | $31,384.00 | One West Bank | 2/6/2018 | NSF |

# EXHIBIT A

| Account | Company | # | Payee | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|---|---|
| | | 31 | American Canyon Supermarket Inc. | 121769 | $48,011.00 | One West Bank | 2/6/2018 | NSF |
| | | 32 | Canoga Supermarket Inc. | 71280 | $25,262.00 | One West Bank | 2/6/2018 | NSF |
| | | 33 | Fresno Supermarket Inc. | 151619 | $37,376.00 | One West Bank | 2/6/2018 | NSF |
| | | 34 | Canoga Supermarket Inc. | 71279 | $31,368.00 | One West Bank | 2/6/2018 | NSF |
| | | 35 | Island Pacific Seattle Inc. | 141790 | $43,138.00 | One West Bank | 2/6/2018 | NSF |
| | | 36 | Island Pacific Oxnard Inc. | 91237 | $35,028.00 | One West Bank | 2/6/2018 | NSF |
| | | 37 | Island Pacific Vegas Inc. | 181271 | $38,009.00 | One West Bank | 2/6/2018 | NSF |
| | | 38 | Mega Foods Inc. | 50983 | $31,841.00 | One West Bank | 2/6/2018 | NSF |
| | | 39 | Fresno Supermarket Inc. | 151818 | $50,143.00 | One West Bank | 2/6/2018 | NSF |
| | | 40 | Island Pacific Oxnard Inc. | 91238 | $35,673.00 | One West Bank | 2/6/2018 | NSF |
| | | | | | $ 1,582,464.00 | | | |
| XXXXXX1615 | Island Pacific Pittsburg Inc. | 1 | Island Pacific Distribution Inc. | 65746 | $4,630.00 | One West Bank | 2/5/2018 | NSF |
| | | 2 | Island Pacific Distribution Inc. | 65745 | $4,411.00 | One West Bank | 2/5/2018 | NSF |
| | | 3 | Island Pacific Distribution Inc. | 65744 | $4,414.00 | One West Bank | 2/5/2018 | NSF |
| | | 4 | Island Pacific Distribution Inc. | 65743 | $4,409.00 | One West Bank | 2/5/2018 | NSF |
| | | 5 | Island Pacific Distribution Inc. | 65742 | $4,428.00 | One West Bank | 2/5/2018 | NSF |
| | | 6 | Island Pacific Distribution Inc. | 65741 | $4,466.00 | One West Bank | 2/5/2018 | NSF |
| | | 7 | Island Pacific Distribution Inc. | 65740 | $4,490.00 | One West Bank | 2/5/2018 | NSF |
| | | 8 | Island Pacific Distribution Inc. | 65739 | $4,497.00 | One West Bank | 2/5/2018 | NSF |
| | | 9 | Island Pacific Distribution Inc. | 65738 | $4,493.00 | One West Bank | 2/5/2018 | NSF |
| | | 10 | Island Pacific Distribution Inc. | 65737 | $4,463.00 | One West Bank | 2/5/2018 | NSF |
| | | 11 | Island Pacific Distribution Inc. | 65736 | $4,454.00 | One West Bank | 2/5/2018 | NSF |
| | | 12 | Island Pacific Distribution Inc. | 65735 | $4,484.00 | One West Bank | 2/5/2018 | NSF |
| | | 13 | Island Pacific Distribution Inc. | 65734 | $4,470.00 | One West Bank | 2/5/2018 | NSF |
| | | 14 | Island Pacific Distribution Inc. | 65805 | $4,870.00 | One West Bank | 2/6/2018 | NSF |
| | | 15 | Island Pacific Distribution Inc. | 65804 | $5,904.00 | One West Bank | 2/6/2018 | NSF |
| | | 16 | Island Pacific Distribution Inc. | 65803 | $5,854.00 | One West Bank | 2/6/2018 | NSF |
| | | 17 | Island Pacific Distribution Inc. | 65802 | $5,911.00 | One West Bank | 2/6/2018 | NSF |
| | | 18 | Island Pacific Distribution Inc. | 65801 | $5,910.00 | One West Bank | 2/6/2018 | NSF |
| | | 19 | Island Pacific Distribution Inc. | 65800 | $5,909.00 | One West Bank | 2/6/2018 | NSF |
| | | 20 | Island Pacific Distribution Inc. | 65799 | $5,514.00 | One West Bank | 2/6/2018 | NSF |
| | | 21 | Island Pacific Distribution Inc. | 65798 | $5,899.00 | One West Bank | 2/6/2018 | NSF |
| | | 22 | Island Pacific Distribution Inc. | 65797 | $5,749.00 | One West Bank | 2/6/2018 | NSF |
| | | 23 | Island Pacific Distribution Inc. | 65796 | $5,884.00 | One West Bank | 2/6/2018 | NSF |
| | | 24 | Island Pacific Distribution Inc. | 65795 | $5,890.00 | One West Bank | 2/6/2018 | NSF |
| | | 25 | Island Pacific Distribution Inc. | 65794 | $5,897.00 | One West Bank | 2/6/2018 | NSF |
| | | 26 | Island Pacific Distribution Inc. | 65793 | $5,893.00 | One West Bank | 2/5/2018 | NSF |
| | | | | | $ 1,434,718.00 | | | |
| XXXXXX1623 | Island Pacific Oxnard Inc. | 1 | Island Pacific Supermarket Inc. | 242926 | $13,445.00 | One West Bank | 2/5/2018 | NSF |
| | | 2 | Island Pacific Hayward Inc. | 201658 | $50,470.00 | One West Bank | 2/5/2018 | NSF |
| | | 3 | Promenade Supermarket Inc. | 161132 | $48,341.00 | One West Bank | 2/5/2018 | NSF |
| | | 4 | Island Pacific Distribution Inc. | 65733 | $58,490.00 | One West Bank | 2/5/2018 | NSF |
| | | 5 | Island Pacific Distribution Inc. | 65732 | $58,374.00 | One West Bank | 2/5/2018 | NSF |
| | | 6 | Island Pacific Distribution Inc. | 65731 | $58,328.00 | One West Bank | 2/5/2018 | NSF |
| | | 7 | Island Pacific Distribution Inc. | 65730 | $58,314.00 | One West Bank | 2/5/2018 | NSF |

**EXHIBIT A**

XXXXXX1631    Island Pacific National City Inc.

| # | Company | Check | Amount | Bank | Date | Status |
|---|---------|-------|--------|------|------|--------|
| 8 | Island Pacific Distribution Inc. | 65729 | $58,397.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Island Pacific Distribution Inc. | 65728 | $58,399.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Island Pacific Distribution Inc. | 65727 | $58,390.00 | One West Bank | 2/5/2018 | NSF |
| 11 | Island Pacific Distribution Inc. | 65726 | $58,384.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Island Pacific Distribution Inc. | 242925 | $48,811.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Promenade Supermarket Inc. | 161133 | $40,921.00 | One West Bank | 2/5/2018 | NSF |
| 14 | Island Pacific Hayward Inc. | 201857 | $51,414.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Promenade Supermarket Inc. | 161134 | $40,614.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Promenade Supermarket Inc. | 161142 | $40,614.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Supermarket Inc. | 242970 | $41,644.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Promenade Supermarket Inc. | 161141 | $36,359.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Island Pacific Hayward Inc. | 201866 | $50,470.00 | One West Bank | 2/6/2018 | NSF |
| 20 | Island Pacific Distribution Inc. | 65785 | $58,404.00 | One West Bank | 2/6/2018 | NSF |
| 21 | Island Pacific Distribution Inc. | 65791 | $58,380.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Distribution Inc. | 65792 | $58,398.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Promenade Supermarket Inc. | 161140 | $48,143.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Hayward Inc. | 201865 | $51,414.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Promenade Supermarket Inc. | 242969 | $48,811.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Island Pacific Distribution Inc. | 65786 | $58,380.00 | One West Bank | 2/6/2018 | NSF |
| 27 | Island Pacific Distribution Inc. | 65787 | $58,393.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Island Pacific Distribution Inc. | 65788 | $58,397.00 | One West Bank | 2/6/2018 | NSF |
| 29 | Island Pacific Oxnard Inc. | 65789 | $58,374.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Island Pacific Distribution Inc. | 65790 | $58,354.00 | One West Bank | 2/6/2018 | NSF |
| | | | **$1,546,413.00** | | | |
| 1 | Oishi Supermarket Inc. | 171298 | $54,027.00 | One West Bank | 2/5/2018 | NSF |
| 2 | Island Pacific Seattle Inc. | 141780 | $45,010.00 | One West Bank | 2/5/2018 | NSF |
| 3 | Azusa Supermarket Inc. | 41121 | $48,928.00 | One West Bank | 2/5/2018 | NSF |
| 4 | Puregold Supermarket Inc. | 131619 | $46,414.00 | One West Bank | 2/5/2018 | NSF |
| 5 | Island Pacific Seattle Inc. | 141779 | $46,009.00 | One West Bank | 2/5/2018 | NSF |
| 6 | Island Pacific Seattle Inc. | 242924 | $49,743.00 | One West Bank | 2/5/2018 | NSF |
| 7 | Fresno Supermarket Inc. | 153806 | $49,562.00 | One West Bank | 2/5/2018 | NSF |
| 8 | American Canyon Supermarket Inc. | 121757 | $49,011.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Azusa Supermarket Inc. | 41120 | $48,937.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Azusa Supermarket Inc. | 41122 | $48,946.00 | One West Bank | 2/5/2018 | NSF |
| 11 | American Canyon Supermarket Inc. | 121758 | $50,150.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Fresno Supermarket Inc. | 151805 | $49,554.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Island Pacific Chula Vista Inc. | 211846 | $1,881.00 | One West Bank | 2/5/2018 | NSF |
| 14 | Oishi Supermarket Inc. | 171797 | $58,411.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Island Pacific Chula Vista Inc. | 242923 | $58,911.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Puregold Supermarket Inc. | 131620 | $46,052.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Azusa Supermarket Inc. | 41129 | $48,928.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Island Pacific Supermarket Inc. | 242967 | $49,911.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Azusa Supermarket Inc. | 41130 | $48,946.00 | One West Bank | 2/5/2018 | NSF |
| 20 | Puregold Supermarket Inc. | 131626 | $46,414.00 | One West Bank | 2/5/2018 | NSF |
| 21 | Island Pacific Chula Vista Inc. | 211854 | $31,455.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Oishi Supermarket Inc. | 171806 | $49,448.00 | One West Bank | 2/6/2018 | NSF |
| 23 | American Canyon Supermarket Inc. | 121765 | $49,011.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Seattle Inc. | 141786 | $46,009.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Fresno Supermarket Inc. | 151814 | $49,562.00 | One West Bank | 2/6/2018 | NSF |

**EXHIBIT A**

| Account | # | Payee | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|---|
| XXXXXXX1669 Canoga Supermarket Inc. | 26 | Island Pacific Supermarket Inc. | 242968 | $49,743.00 | One West Bank | 2/6/2018 | NSF |
| | 27 | Puregold Supermarket Inc. | 131627 | $46,052.00 | One West Bank | 2/6/2018 | NSF |
| | 28 | Azusa Supermarket Inc. | 41128 | $48,997.00 | One West Bank | 2/6/2018 | NSF |
| | 29 | Fresno Supermarket Inc. | 153813 | $49,554.00 | One West Bank | 2/6/2018 | NSF |
| | 30 | Island Pacific Seattle Inc. | 141787 | $45,010.00 | One West Bank | 2/6/2018 | NSF |
| | 31 | American Canyon Supermarket Inc. | 121766 | $50,150.00 | One West Bank | 2/6/2018 | NSF |
| | | | | $1,451,716.00 | | | |
| | 1 | Island Pacific Distribution Inc. | 65718 | $57,390.00 | One West Bank | 2/5/2018 | NSF |
| | 2 | Island Pacific Distribution Inc. | 65717 | $57,366.00 | One West Bank | 2/5/2018 | NSF |
| | 3 | Island Pacific Distribution Inc. | 65725 | $57,466.00 | One West Bank | 2/5/2018 | NSF |
| | 4 | Island Pacific Distribution Inc. | 65724 | $57,314.00 | One West Bank | 2/5/2018 | NSF |
| | 5 | Island Pacific Distribution Inc. | 65723 | $57,309.00 | One West Bank | 2/5/2018 | NSF |
| | 6 | Island Pacific Distribution Inc. | 65722 | $57,311.00 | One West Bank | 2/5/2018 | NSF |
| | 7 | Island Pacific Distribution Inc. | 65721 | $57,328.00 | One West Bank | 2/5/2018 | NSF |
| | 8 | Island Pacific Distribution Inc. | 65720 | $57,397.00 | One West Bank | 2/5/2018 | NSF |
| | 9 | Island Pacific Distribution Inc. | 65719 | $57,393.00 | One West Bank | 2/5/2018 | NSF |
| | 10 | Island Pacific Distribution Inc. | 65716 | $57,363.00 | One West Bank | 2/5/2018 | NSF |
| | 11 | Island Pacific Distribution Inc. | 65715 | $57,384.00 | One West Bank | 2/5/2018 | NSF |
| | 12 | Island Pacific Distribution Inc. | 65714 | $57,354.00 | One West Bank | 2/5/2018 | NSF |
| | 13 | Island Pacific Distribution Inc. | 65713 | $57,374.00 | One West Bank | 2/5/2018 | NSF |
| | 14 | Island Pacific Distribution Inc. | 65712 | $57,365.00 | One West Bank | 2/5/2018 | NSF |
| | 15 | Island Pacific Distribution Inc. | 65784 | $56,264.00 | One West Bank | 2/6/2018 | NSF |
| | 16 | Island Pacific Distribution Inc. | 65783 | $56,054.00 | One West Bank | 2/6/2018 | NSF |
| | 17 | Island Pacific Distribution Inc. | 65782 | $56,104.00 | One West Bank | 2/6/2018 | NSF |
| | 18 | Island Pacific Distribution Inc. | 65781 | $56,010.00 | One West Bank | 2/6/2018 | NSF |
| | 19 | Island Pacific Distribution Inc. | 65780 | $56,009.00 | One West Bank | 2/6/2018 | NSF |
| | 20 | Island Pacific Distribution Inc. | 65779 | $56,011.00 | One West Bank | 2/6/2018 | NSF |
| | 21 | Island Pacific Distribution Inc. | 65778 | $56,014.00 | One West Bank | 2/6/2018 | NSF |
| | 22 | Island Pacific Distribution Inc. | 65777 | $56,028.00 | One West Bank | 2/6/2018 | NSF |
| | 23 | Island Pacific Distribution Inc. | 65776 | $56,097.00 | One West Bank | 2/6/2018 | NSF |
| | 24 | Island Pacific Distribution Inc. | 65775 | $56,093.00 | One West Bank | 2/6/2018 | NSF |
| | 25 | Island Pacific Distribution Inc. | 65774 | $56,090.00 | One West Bank | 2/6/2018 | NSF |
| | 26 | Island Pacific Distribution Inc. | 65773 | $56,084.00 | One West Bank | 2/6/2018 | NSF |
| | 27 | Island Pacific Distribution Inc. | 65772 | $56,074.00 | One West Bank | 2/6/2018 | NSF |
| | 28 | Island Pacific Distribution Inc. | 65771 | $56,072.00 | One West Bank | 2/6/2018 | NSF |
| | | | | $1,588,120.00 | | | |
| XXXXXXXX1656 Vermont Seafood Market | 1 | Canoga Supermarket Inc. | 71273 | $40,554.00 | One West Bank | 2/5/2018 | NSF |
| | 2 | Long Beach Seafood Market Inc. | 193806 | $50,474.00 | One West Bank | 2/5/2018 | NSF |
| | 3 | Promenade Supermarket Inc. | 161136 | $50,587.00 | One West Bank | 2/5/2018 | NSF |
| | 4 | Island Pacific Vegas Inc. | 181264 | $38,011.00 | One West Bank | 2/5/2018 | NSF |
| | 5 | Canoga Supermarket Inc. | 71272 | $40,538.00 | One West Bank | 2/5/2018 | NSF |
| | 6 | Mega Foods Inc. | 50976 | $53,725.00 | One West Bank | 2/5/2018 | NSF |
| | 7 | Island Pacific Pittsburg Inc. | 101234 | $48,014.00 | One West Bank | 2/5/2018 | NSF |
| | 8 | American Canyon Supermarket Inc. | 121764 | $34,653.00 | One West Bank | 2/5/2018 | NSF |
| | 9 | Canoga Supermarket Inc. | 71274 | $40,522.00 | One West Bank | 2/5/2018 | NSF |
| | 10 | Island Pacific Pittsburg Inc. | 101235 | $29,671.00 | One West Bank | 2/5/2018 | NSF |

# EXHIBIT A

XXXXXX1672   Mega Foods Inc.

| # | Company | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 1 | Island Pacific Pittsburg Inc. | 101232 | $38,028.00 | One West Bank | 2/5/2018 | NSF |
| 2 | Canoga Supermarket Inc. | 71268 | $46,920.00 | One West Bank | 2/5/2018 | NSF |
| 3 | Canoga Supermarket Inc. | 71267 | $46,354.00 | One West Bank | 2/5/2018 | NSF |
| 4 | Azusa Supermarket Inc. | 41124 | $36,076.00 | One West Bank | 2/5/2018 | NSF |
| 5 | Azusa Supermarket Inc. | 41126 | $41,060.00 | One West Bank | 2/5/2018 | NSF |
| 6 | Oishi Supermarket Inc. | 171804 | $36,370.00 | One West Bank | 2/5/2018 | NSF |
| 7 | Island Pacific Oxnard Inc. | 91227 | $38,126.00 | One West Bank | 2/5/2018 | NSF |
| 8 | American Canyon Supermarket Inc. | 121760 | $57,371.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Island Pacific Distribution Inc. | 65747 | $45,304.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Island Pacific Distribution Inc. | 65748 | $45,309.00 | One West Bank | 2/5/2018 | NSF |
| 11 | Island Pacific Distribution Inc. | 65749 | $45,314.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Island Pacific Distribution Inc. | 65750 | $40,250.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Canoga Supermarket Inc. | 71266 | $46,637.00 | One West Bank | 2/5/2018 | NSF |
| 14 | American Canyon Supermarket Inc. | 121759 | $43,014.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Oishi Supermarket Inc. | 171803 | $33,148.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Oishi Supermarket Inc. | 171805 | $38,574.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Pittsburg Inc. | 101233 | $37,825.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Island Pacific Oxnard Inc. | 91226 | $32,143.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Azusa Supermarket Inc. | 41125 | $36,084.00 | One West Bank | 2/6/2018 | NSF |
| 20 | Azusa Supermarket Inc. | 41132 | $36,076.00 | One West Bank | 2/6/2018 | NSF |
| 21 | Island Pacific Vegas Inc. | 181813 | $38,574.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Canoga Supermarket Inc. | 71277 | $45,920.00 | One West Bank | 2/6/2018 | NSF |

| # | Company | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 11 | Mega Foods Inc. | 50974 | $38,727.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Mega Foods Inc. | 50975 | $43,728.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Promenade Supermarket Inc. | 161135 | $48,574.00 | One West Bank | 2/5/2018 | NSF |
| 14 | American Canyon Supermarket Inc. | 121763 | $49,009.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Island Pacific Vegas Inc. | 181265 | $36,806.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Long Beach Seafood Market Inc. | 193805 | $46,414.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Supermarket Inc. | 242927 | $14,349.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Island Pacific Distribution Inc. | 65756 | $20,924.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Mega Foods Inc. | 50985 | $43,728.00 | One West Bank | 2/6/2018 | NSF |
| 20 | Long Beach Seafood Market Inc. | 191815 | $52,747.00 | One West Bank | 2/6/2018 | NSF |
| 21 | American Canyon Supermarket Inc. | 121772 | $34,653.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Supermarket Inc. | 242971 | $44,259.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Canoga Supermarket Inc. | 71281 | $40,553.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Vegas Inc. | 181274 | $36,806.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Canoga Supermarket Inc. | 71282 | $40,554.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Promenade Supermarket Inc. | 161143 | $48,574.00 | One West Bank | 2/6/2018 | NSF |
| 27 | Island Pacific Pittsburg Inc. | 101243 | $46,414.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Long Beach Seafood Market Inc. | 191814 | $49,009.00 | One West Bank | 2/6/2018 | NSF |
| 29 | American Canyon Supermarket Inc. | 121771 | $40,522.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Canoga Supermarket Inc. | 71283 | $38,727.00 | One West Bank | 2/6/2018 | NSF |
| 31 | American Canyon Supermarket Inc. | 101244 | $29,671.00 | One West Bank | 2/6/2018 | NSF |
| 32 | Mega Foods Inc. | 50984 | $53,725.00 | One West Bank | 2/6/2018 | NSF |
| 33 | Mega Foods Inc. | 50986 | $53,725.00 | One West Bank | 2/6/2018 | NSF |
| 34 | Promenade Supermarket Inc. | 161144 | $50,587.00 | One West Bank | 2/6/2018 | NSF |
| 35 | Island Pacific Vegas Inc. | 181273 | $38,011.00 | One West Bank | 2/6/2018 | NSF |
| 36 | Island Pacific Distribution Inc. | 65822 | $50,915.00 | One West Bank | 2/6/2018 | NSF |

**$1,512,784.00**

**EXHIBIT A**

XXXXXX1706   Azusa Supermarket Inc.

| # | Company | Check No. | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 1 | Island Pacific Pittsburg Inc. | 101129 | $38,173.00 | One West Bank | 2/5/2018 | NSF |
| 2 | Island Pacific Oxnard Inc. | 91223 | $51,045.00 | One West Bank | 2/5/2018 | NSF |
| 3 | Island Pacific Pittsburg Inc. | 101227 | $38,143.00 | One West Bank | 2/5/2018 | NSF |
| 4 | Island Pacific Seattle Inc. | 141778 | $59,022.00 | One West Bank | 2/5/2018 | NSF |
| 5 | Island Pacific Pittsburg Inc. | 101228 | $38,134.00 | One West Bank | 2/5/2018 | NSF |
| 6 | Island Pacific Hayward Inc. | 201855 | $55,355.00 | One West Bank | 2/5/2018 | NSF |
| 7 | Island pacific Chula Vista Inc. | 211844 | $54,414.00 | One West Bank | 2/5/2018 | NSF |
| 8 | Long Beach Seafood Market Inc. | 191801 | $40,143.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Island Pacific Chula Vista Inc. | 211845 | $54,357.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Island Pacific Hayward Inc. | 201854 | $57,704.00 | One West Bank | 2/5/2018 | NSF |
| 11 | Island Pacific Seattle Inc. | 141777 | $59,985.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Long Beach Seafood Market Inc. | 191800 | $51,704.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Long Beach Seafood Market Inc. | 191802 | $49,514.00 | One West Bank | 2/5/2018 | NSF |
| 14 | Island Pacific Oxnard Inc. | 242920 | $38,501.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Island Pacific Oxnard Inc. | 242922 | $48,143.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Island Pacific Oxnard Inc. | 91222 | $38,143.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Supermarket Inc. | 242921 | $48,143.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Island Pacific Oxnard Inc. | 91231 | $48,143.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Island Pacific Pittsburg Inc. | 101238 | $38,173.00 | One West Bank | 2/6/2018 | NSF |
| 20 | Island Pacific Oxnard Inc. | 91232 | $51,045.00 | One West Bank | 2/6/2018 | NSF |
| 21 | Island Pacific Supermarket Inc. | 242965 | $38,143.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Chula Vista Inc. | 211853 | $54,357.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Long Beach Seafood Market Inc. | 191810 | $40,143.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Chula Vista Inc. | 211863 | $55,355.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Long Beach Seafood Market Inc. | 191811 | $29,781.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Island Pacific Hayward Inc. | 141784 | $59,985.00 | One West Bank | 2/6/2018 | NSF |
| 27 | Island Pacific Supermarket Inc. | 242966 | $38,501.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Island Pacific Supermarket Inc. | 242964 | $49,514.00 | One West Bank | 2/6/2018 | NSF |
| 29 | Island Pacific Pittsburg Inc. | 101236 | $38,143.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Island Pacific Pittsburg Inc. | 101237 | $38,114.00 | One West Bank | 2/6/2018 | NSF |
| 31 | Island Pacific Chula Vista Inc. | 211852 | $54,414.00 | One West Bank | 2/6/2018 | NSF |
| 32 | Island Pacific Hayward Inc. | 203862 | $57,704.00 | One West Bank | 2/6/2018 | NSF |
| 33 | Island Pacific Seattle Inc. | 141785 | $59,022.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Island Pacific Pittsburg Inc. | 101242 | $37,825.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Azusa Supermarket Inc. | 41134 | $41,069.00 | One West Bank | 2/6/2018 | NSF |
| 25 | American Canyon Supermarket Inc. | 121767 | $43,014.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Island Pacific Oxnard Inc. | 91235 | $32,143.00 | One West Bank | 2/6/2018 | NSF |
| 27 | Oishi Supermarket Inc. | 173812 | $36,370.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Canoga Supermarket Inc. | 71275 | $46,637.00 | One West Bank | 2/6/2018 | NSF |
| 29 | American Canyon Supermarket Inc. | 121768 | $40,788.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Island Pacific Distribution Inc. | 65814 | $58,799.00 | One West Bank | 2/6/2018 | NSF |
| 31 | Island Pacific Distribution Inc. | 65815 | $58,774.00 | One West Bank | 2/6/2018 | NSF |
| 32 | Island Pacific Distribution Inc. | 65816 | $66,354.00 | One West Bank | 2/6/2018 | NSF |
| 33 | Canoga Supermarket Inc. | 71276 | $46,354.00 | One West Bank | 2/6/2018 | NSF |
| 34 | Island Pacific Oxnard Inc. | 91236 | $38,126.00 | One West Bank | 2/6/2018 | NSF |
| 35 | Island Pacific Pittsburg Inc. | 101241 | $38,028.00 | One West Bank | 2/6/2018 | NSF |
| 36 | Oishi Supermarket Inc. | 171811 | $33,148.00 | One West Bank | 2/6/2018 | NSF |
| 37 | Azusa Supermarket Inc. | 41133 | $36,084.00 | One West Bank | 2/6/2018 | NSF |

**$1,551,279.00**

**EXHIBIT A**

| Account | Company | No. | Check # | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|---|
| | Long Beach Seafood Market Inc. | 34 | 193809 | $53,704.00 | One West Bank | 2/6/2018 | NSF |
| | | | | **$1,616,320.00** | | | |
| XXXXXX1722 | Island Pacific Supermarket | | | | | | |
| | Island Pacific National City Inc. | 1 | 274 | $48,754.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific National City Inc. | 2 | 275 | $48,728.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific Pittsburg Inc. | 3 | 297 | $48,774.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific Pittsburg Inc. | 4 | 298 | $48,744.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Long Beach Seafood Market Inc. | 5 | 193803 | $45,028.00 | One West Bank | 2/5/2018 | NSF |
| | Oishi Supermarket Inc. | 6 | 171799 | $45,291.00 | One West Bank | 2/5/2018 | NSF |
| | Island Pacific Oxnard Inc. | 7 | 91224 | $40,184.00 | One West Bank | 2/5/2018 | NSF |
| | Oishi Supermarket Inc. | 8 | 171800 | $45,994.00 | One West Bank | 2/5/2018 | NSF |
| | Mega Foods Inc. | 9 | 50968 | $43,884.00 | One West Bank | 2/5/2018 | NSF |
| | Puregold Supermarket Inc. | 10 | 131621 | $43,152.00 | One West Bank | 2/5/2018 | NSF |
| | Azusa Supermarket Inc. | 11 | 41123 | $45,848.00 | One West Bank | 2/5/2018 | NSF |
| | Puregold Supermarket Inc. | 12 | 131622 | $43,174.00 | One West Bank | 2/5/2018 | NSF |
| | Long Beach Seafood Market Inc. | 13 | 193804 | $45,023.00 | One West Bank | 2/5/2018 | NSF |
| | Puregold Supermarket Inc. | 14 | 131623 | $43,130.00 | One West Bank | 2/5/2018 | NSF |
| | Mega Foods Inc. | 15 | 50969 | $43,450.00 | One West Bank | 2/5/2018 | NSF |
| | Island Pacific Hayward Inc. | 16 | 203859 | $9,197.00 | One West Bank | 2/5/2018 | NSF |
| | Island Pacific Oxnard Inc. | 17 | 91225 | $39,989.00 | One West Bank | 2/5/2018 | NSF |
| | Island Pacific Oxnard Inc. | 18 | 91234 | $39,989.00 | One West Bank | 2/6/2018 | NSF |
| | Puregold Supermarket Inc. | 19 | 131630 | $57,139.00 | One West Bank | 2/6/2018 | NSF |
| | Mega Foods Inc. | 20 | 50978 | $43,884.00 | One West Bank | 2/6/2018 | NSF |
| | Oishi Supermarket Inc. | 21 | 171808 | $45,994.00 | One West Bank | 2/6/2018 | NSF |
| | Long Beach Seafood Market Inc. | 22 | 191812 | $45,028.00 | One West Bank | 2/6/2018 | NSF |
| | Puregold Supermarket Inc. | 23 | 131629 | $49,174.00 | One West Bank | 2/6/2018 | NSF |
| | Azusa Supermarket Inc. | 24 | 41131 | $45,848.00 | One West Bank | 2/6/2018 | NSF |
| | Island Pacific Hayward Inc. | 25 | 201867 | $22,851.00 | One West Bank | 2/6/2018 | NSF |
| | Island Pacific Oxnard Inc. | 26 | 91233 | $40,184.00 | One West Bank | 2/6/2018 | NSF |
| | Mega Foods Inc. | 27 | 50979 | $43,450.00 | One West Bank | 2/6/2018 | NSF |
| | Long Beach Seafood Market Inc. | 28 | 191813 | $45,023.00 | One West Bank | 2/6/2018 | NSF |
| | Puregold Supermarket Inc. | 29 | 131628 | $53,143.00 | One West Bank | 2/6/2018 | NSF |
| | Island Pacific Distribution Inc. | 30 | 65806 | $41,667.00 | One West Bank | 2/6/2018 | NSF |
| | Island Pacific Distribution Inc. | 31 | 65807 | $41,669.00 | One West Bank | 2/6/2018 | NSF |
| | Island Pacific Distribution Inc. | 32 | 65808 | $41,664.00 | One West Bank | 2/6/2018 | NSF |
| | Oishi Supermarket Inc. | 33 | 171807 | $45,291.00 | One West Bank | 2/6/2018 | NSF |
| | Canoga Supermarket Inc | 34 | 277 | $59,584.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | Canoga Supermarket Inc | 35 | 278 | $59,574.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | Canoga Supermarket Inc | 36 | 279 | $59,590.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | San Jose International Market Inc | 37 | 294 | $59,593.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | San Jose International Market Inc | 38 | 295 | $59,597.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | San Jose International Market Inc | 39 | 296 | $52,062.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | | | | **$1,780,342.00** | | | |
| XXXXXX1730 | Manila Bay Foods Inc. | | | | | | |
| | Island Pacific National City Inc. | 1 | 278 | $44,784.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific National City Inc. | 2 | 279 | $44,709.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific Pittsburg Inc. | 3 | 301 | $44,710.00 | Royal Business Bank | 2/5/2018 | NSF |
| | Island Pacific Pittsburg Inc. | 4 | 302 | $44,797.00 | Royal Business Bank | 2/5/2018 | NSF |

**EXHIBIT A**

| # | Company | Check | Amount | Bank | Date | Status |
|---|---|---|---|---|---|---|
| 5 | Fresno Supermarket Inc. | 151807 | $43,054.00 | One West Bank | 2/5/2018 | NSF |
| 6 | Island Pacific Vegas Inc. | 182761 | $43,225.00 | One West Bank | 2/5/2018 | NSF |
| 7 | Island Pacific Chula Vista Inc. | 211851 | $43,098.00 | One West Bank | 2/5/2018 | NSF |
| 8 | Oishi Supermarket Inc. | 171802 | $27,274.00 | One West Bank | 2/5/2018 | NSF |
| 9 | Island Pacific Seattle Inc. | 141782 | $56,983.00 | One West Bank | 2/5/2018 | NSF |
| 10 | Island Pacific Seattle Inc. | 141781 | $57,084.00 | One West Bank | 2/5/2018 | NSF |
| 11 | Oishi Supermarket Inc. | 171801 | $38,143.00 | One West Bank | 2/5/2018 | NSF |
| 12 | Island Pacific Chula Vista Inc. | 211850 | $43,011.00 | One West Bank | 2/5/2018 | NSF |
| 13 | Fresno Supermarket Inc. | 151809 | $43,079.00 | One West Bank | 2/5/2018 | NSF |
| 14 | Fresno Supermarket Inc. | 151808 | $43,028.00 | One West Bank | 2/5/2018 | NSF |
| 15 | Island Pacific Chula Vista Inc. | 211849 | $43,055.00 | One West Bank | 2/5/2018 | NSF |
| 16 | Island Pacific Vegas Inc. | 182259 | $43,218.00 | One West Bank | 2/5/2018 | NSF |
| 17 | Island Pacific Vegas Inc. | 182260 | $43,211.00 | One West Bank | 2/5/2018 | NSF |
| 18 | Fresno Supermarket Inc. | 151815 | $43,054.00 | One West Bank | 2/5/2018 | NSF |
| 19 | Oishi Supermarket Inc. | 171810 | $56,021.00 | One West Bank | 2/6/2018 | NSF |
| 20 | Fresno Supermarket Inc. | 151817 | $43,079.00 | One West Bank | 2/6/2018 | NSF |
| 21 | Island Pacific Vegas Inc. | 182270 | $43,225.00 | One West Bank | 2/6/2018 | NSF |
| 22 | Island Pacific Chula Vista Inc. | 211858 | $43,011.00 | One West Bank | 2/6/2018 | NSF |
| 23 | Fresno Supermarket Inc. | 141789 | $56,983.00 | One West Bank | 2/6/2018 | NSF |
| 24 | Island Pacific Chula Vista Inc. | 211857 | $43,055.00 | One West Bank | 2/6/2018 | NSF |
| 25 | Island Pacific Seattle Inc. | 181268 | $43,218.00 | One West Bank | 2/6/2018 | NSF |
| 26 | Island Pacific Seattle Inc. | 141788 | $57,084.00 | One West Bank | 2/6/2018 | NSF |
| 27 | Island Pacific Vegas Inc. | 182269 | $43,211.00 | One West Bank | 2/6/2018 | NSF |
| 28 | Oishi Supermarket Inc. | 171809 | $43,143.00 | One West Bank | 2/6/2018 | NSF |
| 29 | Island Pacific Distribution Inc. | 65812 | $45,143.00 | One West Bank | 2/6/2018 | NSF |
| 30 | Island Pacific Distribution Inc. | 65813 | $48,038.00 | One West Bank | 2/6/2018 | NSF |
| 31 | Fresno Supermarket Inc. | 151816 | $43,028.00 | One West Bank | 2/6/2018 | NSF |
| 32 | Island Pacific Chula Vista Inc. | 211859 | $43,098.00 | One West Bank | 2/6/2018 | NSF |
| 33 | Canoga Supermarket Inc | 283 | $25,414.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 34 | Canoga Supermarket Inc | 284 | $40,143.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 35 | Canoga Supermarket Inc | 285 | $40,011.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 36 | San Jose International Market Inc | 300 | $24,586.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| 37 | San Jose International Market Inc | 301 | $15,446.00 | Royal Business Bank | 2/7/2018 | Stop Payment |
| | | | **$1,585,854.00** | | | |

**XXXXXX4574**

Island Pacific Seattle Inc
*(Account QD was covered)*

| Island Pacific Distribution Inc. | 65760 | $26,203.00 | Onewest Bank | 2/6/2018 | NSF |
|---|---|---|---|---|---|
| Island Pacific Distribution Inc. | 65827 | $36,894.00 | Onewest Bank | 2/6/2018 | NSF |
| | | **$63,097.00** | | | |

**EXHIBIT A**

# EXHIBIT B

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

**ACCOUNT TITLE and BUSINESS ADDRESS**
San Jose International Market, Inc.
DBA: Island Pacific Supermarket
DBA: Island Pacific Seafood Market

2115 Morrill Avenue
San Jose, CA 95132

**ACCOUNT VESTING (BUSINESS TYPE)**
Corporation

**MAILING ADDRESS**
20819 Currier Road, #100
Walnut, CA 91789

**TAX ID NUMBER**

**AGREEMENT**
By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim  AUTHORIZED SIGNER | CA DL | | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**
**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION – I/We** certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2)  The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim / President                                               08-13-14
Printed Name/Title (President, Secretary, Partner, Member, etc.)    Signature                          Date

_____                          _____
Printed Name/Title (President, Secretary, Partner, Member, etc.)    Signature                          Date

Business Signature Card 032012                                              [ Card  1  of  1  ]

**EXHIBIT B**                                    **REDACTED**

San Jose International Market, Inc.

 **EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.<br><br>☐  When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ ~~Unlimited~~<br><br>Max. Dollar Limit<br>Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1607 | 076 | 08-14-14 | Merlin Teng *TU* | Cindy Tant | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | ████████ | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card ___1___ of ___1___ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK.**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Distribution Inc. | Corporation | |
| | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| | Walnut, CA 91789 | |
| 20819 Currier Road, #100 | | |
| Walnut, CA 91789 | | |

**AGREEMENT**

**By signing below,** I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim | CA DL | | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION –** I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim | | 08-13-14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

| | | |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012

[ Card  1  of  1  ]

**EXHIBIT B**

**REDACTED**

Island Pacific Distribution Inc.

 **EASTWEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.<br><br>☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ _____ Unlimited<br>Max. Dollar Limit<br>Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████2308 | 076 | 08-15-14 | Merlin Teng | Cindy | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Kababayan Development Inc.<br>DBA: Island Pacific Supermarket<br>DBA: Ocean Pacific Superstore<br><br>8340 Van Nuys Blvd., Unit A<br>Panorama City, CA 91402 | Corporation<br><br>**MAILING ADDRESS**<br>20819 Currier Road, #100<br>Walnut, CA 91789 | |

**AGREEMENT**

**By signing below**, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Lim | CA  DL | | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim / President                                        08-13-14
Printed Name/Title (President, Secretary, Partner, Member, etc.)    Signature    XXXXXXXXXXXX    Date

_____            _____
Printed Name/Title (President, Secretary, Partner, Member, etc.)    Signature    Date

Business Signature Card 032012                                    [ Card  1  of  1 ]

**EXHIBIT B**

**REDACTED**

Kababayan Development Inc.

 **EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**

East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

**Wire Transfer Limit**

$ _____Unlimited_____

Max. Dollar Limit
Single wire

**ACCOUNTS OPENED**

|   | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1755 | 076 | 08-14-14 | Merlin Teng | Cindy | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

**EXHIBIT B**

**REDACTED**

 **EAST WEST BANK**

Business Signature Card Date  08/13/14

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Manila Bay Foods Inc.<br>DBA: Island Pacific Supermarket | Corporation | ▓▓▓▓▓▓▓ |
| | **MAILING ADDRESS**<br>20819 Currier Road, #100<br>Walnut, CA 91789 | |
| 2110 Spring Road, #24<br>Vallejo, CA 94591 | | |

**AGREEMENT**

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Lim | CA  DL  ▓▓▓▓ | *[signature]* | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

RESOLVED: ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION — I/We** certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2)  The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim | *[signature]* | 08/13/14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature  XXXXXXXXXXXX | Date |
| | | |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012

[ Card  1  of  1  ]

# EXHIBIT B

## REDACTED

Manila Bay Foods Inc.

# ■ EAST WEST BANK

### BUSINESS ACCOUNT SIGNATURE CARD (Continued)

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

**Wire Transfer Limit**
$ Unlimited
Max. Dollar Limit
Single wire

☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

## ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1730 | 076 | 08-15-14 | Merlin Teng | Cindy Tan | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

Business Signature Card 032012

[ Card __1__ of __1__ ]

## EXHIBIT B

## REDACTED

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Supermarkets Inc.<br>DBA: Island Pacific Supermarket | Corporation | |
| | **MAILING ADDRESS**<br>20819 Currier Road, #100<br>Walnut, CA 91789 | |
| 4122 Dyer Street<br>Union City, CA 94587 | | |

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the **Tax Certifications** required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Lim | CA DL | | ☑ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/we certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim | Signature | 08-13-14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | XXXXXXXXXXXXX | Date |
| | | |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012

[ Card 1 of 1 ]

# EXHIBIT B

# REDACTED

Island Pacific Supermarkets Inc.

 **EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br><br> ☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ _Unlimited_ <br> Max. Dollar Limit <br> Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ██████1722 | 076 | 08-15-14 | Merlin Teng | *[signature] Cindy Tiu* | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Azusa Supermarket, Inc. | Corporation | ███████ |
| DBA: Island Pacific Supermarket | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| 1512 E. Amar Road | Walnut, CA 91789 | |
| West Covina, CA 91792 | | |

### AGREEMENT

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim | CA  DL ███████ | ✗〜 | ☑ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| | | |
|---|---|---|
| Nino Jefferson Lim | Signature | 08-13-14 |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | XXXXXXXXXXXXXX | Date |
| | Signature | Date |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | | [ Card 1 of 1 ] |

Business Signature Card 032012

## EXHIBIT B

## REDACTED

Azusa Supermarket, Inc.

# EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**
East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

**Wire Transfer Limit**
$ _____Unlimited_____
Max. Dollar Limit
Single wire

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1706 | 076 | 08-15-14 | Merlin Teng | Cindy Tant | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

**REDACTED**

**EXHIBIT B**

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Mega Foods Inc. | Corporation | |
| DBA: Island Pacific Supermarket | | |
| | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| 627 N. Vermont Avenue | Walnut, CA 91789 | |
| Los Angeles, CA 90004 | | |

## AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien). *Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

**The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.**

## AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim <br> AUTHORIZED SIGNER | CA DL | | ☑ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

## RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2)  The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim  / President | | 08-13-14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature  XXXXXXXXXXXXX | Date |
| | | |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012

[ Card _1_ of _1_ ]

## EXHIBIT B

## REDACTED

Mega Foods Inc.

## ▦ EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.<br><br>☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ _____ Unlimited<br>Max. Dollar Limit<br>Single wire |

### ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1672 | 076 | 08-14-14 | Merlin Teng | Cindy Tan | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

## EXHIBIT B

## REDACTED

 **EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Vermont Seafood Market Inc. | Corporation | ▮▮▮▮▮ |
| DBA: Island Pacific Supermarket | | |
| | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| 229 S. Vermont Avenue | Walnut, CA 91789 | |
| Los Angeles, CA 90004 | | |

## AGREEMENT

**By signing below,** I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

## AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim<br>AUTHORIZED SIGNER | CA DL ▮▮▮▮ | *(signature)* | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

## RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION –** I/We certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim / President | Signature | 08-13-14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | XXXXXXXXXXXX | Date |

| | | |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012                                                                 [ Card 1 of 1 ]

## EXHIBIT B

## REDACTED

Vermont Seafood Market Inc.

 **EASTWESTBANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br><br> ☐  When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ ___Unlimited___ <br> Max. Dollar Limit <br> Single wire |

**ACCOUNTS OPENED**

|  | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 |  | ███1656 | 076 | 08-14-14 | Merlin TEng | Cindy Tas | 8019 |
| 2 |  |  |  |  |  |  |  |
| 3 |  |  |  |  |  |  |  |
| 4 |  |  |  |  |  |  |  |
| 5 |  |  |  |  |  |  |  |
| 6 |  |  |  |  |  |  |  |
| 7 |  |  |  |  |  |  |  |
| 8 |  |  |  |  |  |  |  |
| 9 |  |  |  |  |  |  |  |
| 10 |  |  |  |  |  |  |  |
| 11 |  |  |  |  |  |  |  |
| 12 |  |  |  |  |  |  |  |

Business Signature Card 032012

[ Card __1__ of __1__ ]

## EXHIBIT B

## REDACTED

 **EAST WEST BANK**

Business Signature Card Date 08-13-14

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Canoga Supermarket Inc. DBA: Island Pacific Supermarket | Corporation | ▓▓▓▓▓▓ |
| | **MAILING ADDRESS** 20819 Currier Road, #100 Walnut, CA 91789 | |
| 20922 Roscoe Blvd. Canoga Park, CA ~~91348~~ 91304 | | |

### AGREEMENT

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim AUTHORIZED SIGNER | CA DL ▓▓▓▓ | *signature* | ☑ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| Nino Jefferson Lim / PRESIDENT | *signature* | 08-13-14 |
|---|---|---|
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |
| | XXXXXXXXXXXX | |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

Business Signature Card 032012

[ Card 1 of 1 ]

## EXHIBIT B

## REDACTED

Canoga Supermarket Inc.

 **EASTWEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br><br> ☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ **Unlimited** <br> Max. Dollar Limit <br> Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1649 | 076 | 08-14-14 | Merlin Teng *Tv* | Cindy Tint | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

**EXHIBIT B**

**REDACTED**

 **EAST WEST BANK**

Business Signature Card Date 08-13-14

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|

**ACCOUNT TITLE and BUSINESS ADDRESS**
Island Pacific National City Inc.
DBA: Island Pacific Supermarket

2720 E. Plaza Blvd.
National City, CA 91950

**ACCOUNT VESTING (BUSINESS TYPE)**
Corporation

**MAILING ADDRESS**
20819 Currier Road, #100
Walnut, CA 91789

**TAX ID NUMBER**
▇▇▇▇▇▇

### AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

**The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.**

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim | CA DL ▇▇▇▇ | | ☑ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION – I/We certify that:** (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim
Printed Name/Title (President, Secretary, Partner, Member, etc.)     Signature XXXXXXXXXXXXX     Date 08-13-14

_____
Printed Name/Title (President, Secretary, Partner, Member, etc.)     Signature _____     Date _____

[ Card 1 of 1 ]

Business Signature Card 032012

## EXHIBIT B

## REDACTED

Island Pacific National City

## EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**
East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

**Wire Transfer Limit**
$ _____ Unlimited
Max. Dollar Limit
Single wire

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████1631 | 076 | 08-15-14 | Merlin Teng | Cindy Tant | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

Business Signature Card 032012

[ Card __1__ of __1__ ]

## EXHIBIT B

## REDACTED

 **EAST WEST BANK**

Business Signature Card Date 08-13-14
**BUSINESS ACCOUNT SIGNATURE CARD**

| **ACCOUNT TITLE and BUSINESS ADDRESS** | **ACCOUNT VESTING (BUSINESS TYPE)** | **TAX ID NUMBER** |
|---|---|---|
| Island Pacific Oxnard Inc. | Corporation | ▓▓▓▓▓▓▓ |
| DBA: Island Pacific Supermarket | | |
| DBA: Island Pacific Seafood Market | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| 4833 S. Rose Avenue | Walnut, CA 91789 | |
| Oxnard, CA 93033 | | |

**AGREEMENT**

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim<br>AUTHORIZED SIGNER | CA DL<br>▓▓▓▓▓ | *(signature)* | ☑ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION ~** I/We certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim / PRESIDENT      Signature *(signature)*      8-13-14
Printed Name/Title (President, Secretary, Partner, Member, etc.)            Date

                         Signature XXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)            Signature            Date

Business Signature Card 032012                                          [ Card  1  of  1 ]

# EXHIBIT B

# REDACTED

Island Pacific Oxnard Inc.

# EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. | $ Unlimited |
| ☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | Max. Dollar Limit Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ●●●●1623 | 076 | 08-14-14 | Merlin Teng | Cindy Tu | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

Business Signature Card 032012

[ Card _1_ of _1_ ]

# EXHIBIT B

# REDACTED


**EAST WEST BANK**

Business Signature Card Date 08-13-14

## BUSINESS ACCOUNT SIGNATURE CARD

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Pittsburg Inc. | Corporation | ▬▬▬▬▬ |
| DBA: Island Pacific Supermarket | | |
| DBA: Island Pacific Seafood Market | **MAILING ADDRESS** | |
| | 20819 Currier Road, #100 | |
| 2100 N. Park Plaza Blvd. | Walnut, CA 91789 | |
| Pittsburg, CA 94565 | | |

### AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: It is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien). *Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

**The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.**

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim | CA  DL ▬▬▬ | | ☑ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** ~ I/we certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim _____
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature          XXXXXXXXXXXXX          08-13-14
Date

_____
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature          Date

Business Signature Card 032012

[ Card  1  of  1  ]

## EXHIBIT B
## REDACTED

Island Pacific Pittsburg Inc.

# EASTWEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br><br> ☐ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ Unlimited <br> Max. Dollar Limit <br> Single wire |

## ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ███1615 | 076 | 08-15-14 | Merlin Teng | Cindy | 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |



Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 03-27-17

## BUSINESS ACCOUNT SIGNATURE CARD

**ACCOUNT TITLE and BUSINESS ADDRESS**
Promenade Supermarket, Inc.
DBA: Island Pacific Supermarket
DBA: Island Pacific Seafood Market

11481 South Street
Cerritos, CA 90703

**ACCOUNT VESTING (BUSINESS TYPE)**
Corporation

**MAILING ADDRESS**
20819 Currier Road, Unit 100
Walnut, CA 91789

**TAX ID NUMBER**
▓▓▓▓▓▓▓▓

### AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL ▓▓▓▓ | . | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION — I/We** certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature _____ Date 3/27/2017

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature _____ Date

Business Signature Card 032012

[ Card  1  of  1 ]

# EXHIBIT B

# REDACTED

Promenade Supermarket, Inc.

## ▦ EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**

East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email.  Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☑   When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire.  If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

**Wire Transfer Limit**

$    Unlimited

Max. Dollar Limit
Single wire

### ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ▬4632 | 076 | 03-28-17 | Merlin Teng | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

**BANK USE ONLY**

☐ Superseding Card _____  By: _____  Reason: ☐ Add Signer  ☐ Other: _____

Date                    Employee Printed Name

Business Signature Card 032012

[ Card __1__ of __1__ ]

## EXHIBIT B

## REDACTED

 EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Vegas, Inc. | Corporation | ████████ |
| DBA: Island Pacific Supermarket | | |

**MAILING ADDRESS**
20819 Currier Road # 100
Walnut, CA 91789

8650 W. Tropicana Avenue
Las Vegas, NV 89147

## AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** – By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

## AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL ████ | ╳ | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

## RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or _____
each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).    (2)  The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature        MAR 24, 2017
Date

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature        Date

Business Signature Card 032012        [ Card  1  of  1  ]

# EXHIBIT B

# REDACTED

Island Pacific Vegas, Inc.

**EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. | $ Unlimited |
| ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | Max. Dollar Limit Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4624 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY | | | |
|---|---|---|---|
| ☐ Superseding Card: _____ By: _____ | | Reason: ☐ Add Signer ☐ Other | |
| Date: _____ Employee Printed Name | | | |

Business Signature Card 032012

[ Card ___1___ of ___1___ ]

# EXHIBIT B

# REDACTED

# EAST WEST BANK

Business Signature Card Date 03-24-17

**BUSINESS ACCOUNT SIGNATURE CARD**

| | |
|---|---|
| **ACCOUNT TITLE and BUSINESS ADDRESS**<br>Long Beach Seafood Market, Inc.<br>DBA: Island Pacific Supermarket<br>DBA: Island Pacific Seafood Market<br><br>3300 Atlantic Avenue<br>Long Beach, CA 90807 | **ACCOUNT VESTING (BUSINESS TYPE)**     **TAX ID NUMBER**<br>Corporation<br><br>**MAILING ADDRESS**<br>20819 Currier Road # 100<br>Walnut, CA 91789 |

**AGREEMENT**

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION - By signing below,** I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____
each is authorized to enter into deposit account, funds transfer, treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION – I/We certify that:** (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2)  The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature        Mar 24, 2017  Date

_____        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature        Date

Business Signature Card 032012        [ Card 1 of 1 ]

# EXHIBIT B

# REDACTED

Long Beach Seafood Market, Inc.

# EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br> ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ Unlimited <br> Max. Dollar Limit <br> Single wire |

**ACCOUNTS OPENED**

|   | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 |  | ████4616 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 |  |  |  |  |  |  |  |
| 3 |  |  |  |  |  |  |  |
| 4 |  |  |  |  |  |  |  |
| 5 |  |  |  |  |  |  |  |
| 6 |  |  |  |  |  |  |  |
| 7 |  |  |  |  |  |  |  |
| 8 |  |  |  |  |  |  |  |
| 9 |  |  |  |  |  |  |  |
| 10 |  |  |  |  |  |  |  |
| 11 |  |  |  |  |  |  |  |
| 12 |  |  |  |  |  |  |  |

| BANK USE ONLY |
|---|
| ☐ Superseding Card: _____ By: _____ Reason: ☐ Add Signer ☐ Other: _____ <br> Date     Employee Printed Name |

Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 03-24-17
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Hayward Inc. | Corporation | ▓▓▓▓▓▓▓▓ |
| DBA: Island Pacific Supermarket | | |
| DBA: Island Pacific Seafood Market | **MAILING ADDRESS** | |
| | 20819 Currier Road # 100 | |
| 19691 Hesperian Boulevard | Walnut, CA 91789 | |
| Hayward, CA 94541 | | |

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Mlave Lim<br>President & Secretary | CA DL<br>▓▓▓▓▓ | ✓ | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time those who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** -- I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Mlave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature _____ Mar 24, 2017
Date

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature _____
Date

Business Signature Card 032012

[ Card _1_ of _1_ ]

**EXHIBIT B**

**REDACTED**

Island Pacific Hayward Inc.

# EASTWESTBANK

**BUSINESS ACCOUNT SIGNATURE CARD** (Continued)

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. | $ Unlimited<br>Max. Dollar Limit<br>Single wire |
| ☑  When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | |

**ACCOUNTS OPENED**

| | Account Subtitle<br>(e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ███4608 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY | |
|---|---|
| ☐ Superseding Card: _____ By: _____ Reason: ☐ Add Signer ☐ Other: _____<br>Date          Employee Printed Name | |

Business Signature Card 002012

[ Card _1_ of _1_ ]

# EXHIBIT B
# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 03-24-17

## BUSINESS ACCOUNT SIGNATURE CARD

| ACCOUNT TITLE and BUSINESS ADDRESS<br>Oishi Supermarket, Inc. | ACCOUNT VESTING (BUSINESS TYPE)<br>Corporation | TAX ID NUMBER |
|---|---|---|
| | **MAILING ADDRESS**<br>20819 Currier Road # 100<br>Walnut, CA 91789 | |
| 12188 Foothill Boulevard<br>Rancho Cucamonga, CA 91739 | | |

### AGREEMENT

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** – By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Mlave Lim<br>President & Secretary | CA DL | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Mlave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)    Signature                MAM 24, 2017
                                                                                          Date

Printed Name/Title (President, Secretary, Partner, Member, etc.)    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX    Date
                                                                    Signature

Business Signature Card 032012

[ Card 1 of 1 ]

## EXHIBIT B

## REDACTED

Oishi Supermarket, Inc.

**EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.<br><br>☑  When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ ___Unlimited___<br>Max. Dollar Limit<br>Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4590 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY | | | | | |
|---|---|---|---|---|---|
| ☐ Superseding Card: _____ Date | By: _____ Employee Printed Name | | Reason: ☐ Add Signer ☐ Other: _____ | | |

Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 EASTWESTBANK

Business Signature Card Date 03-24-17
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Chula Vista Inc. | Corporation | |

MAILING ADDRESS
20819 Currier Rd. # 100
Walnut, CA 91789

865 E. H Street
Chula Vista, CA 91910

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: It is exempt from backup withholding; It has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Mlave Lim<br>President & Secretary | CA DL | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Mlave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature                                    3/24/2017
                                                                                                                Date

_____
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature
                                                            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
                                                                                                                Date

Business Signature Card 032012                                                            [ Card  1  of  1  ]

# EXHIBIT B

# REDACTED

Island Pacific Chula Vista Inc.

**EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br><br> ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | Unlimited <br> $ _____ <br> Max. Dollar Limit <br> Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4582 | 076 | 03-28-17 | MERLIN TENG | n Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY | | | |
|---|---|---|---|
| ☐ Superseding Card: _____ <br> Date | By: _____ <br> Employee Printed Name | Reason: ☐ Add Signer ☐ Other: _____ | |

[ Card _1_ of _1_ ]

**EXHIBIT B**

**REDACTED**


**EAST WEST BANK**

Business Signature Card Date 03-24-17
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|

Island Pacific Seattle, Inc.

Corporation

**MAILING ADDRESS**
20819 Currier Rd. # 100
Walnut, CA 91789

6040 Martin Luther King Jr. Way S.
Seattle, WA 98118

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____
each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature                                          3/24/2017
                                                                                                                              Date

                                                          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)          Signature                                          Date

Business Signature Card 032012                                                                        [ Card 1 of 1 ]

**EXHIBIT B**

**REDACTED**

**EAST WEST BANK**

Island Pacific Seattle, Inc.

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**

East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

| Wire Transfer Limit |
|---|
| $ Unlimited |
| Max. Dollar Limit Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4574 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

**BANK USE ONLY**

☐ Superseding Card: _____ By: _____ Reason: ☑ Add Signer ☐ Other: _____
Date: _____ Employee Printed Name

Business Signature Card 032012

[ Card __1__ of __1__ ]

**EXHIBIT B**

**REDACTED**

 **EAST WEST BANK**

Business Signature Card Date 03-24-17
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Fresno Supermarket Inc. | Corporation | ▆▆▆▆▆▆▆ |
| DBA: Island Pacific Supermarket | | |
| DBA: Island Pacific Seafood Market | MAILING ADDRESS | |
| | 20819 Currier Rd. # 100 | |
| 6048 N. 1st Street | Walnut, CA 91789 | |
| Fresno, CA 93710 | | |

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL<br>▆▆▆▆▆ | (signature) | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____
each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** -- I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature _____ Date 3/24/2017

Printed Name/Title (President, Secretary, Partner, Member, etc.)

Signature XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Date _____

Business Signature Card 032012                                              [ Card 1 of 1 ]

**EXHIBIT B**

**REDACTED**

Fresno Supermarket Inc.

# EASTWEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ Unlimited<br>Max. Dollar Limit Single wire |

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4566 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY | |
|---|---|
| ☐ Superseding Card: _____ By: _____ Reason: ☑ Add Signer ☐ Other _____ | |
| Date      Employee Printed Name | |

Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EAST WEST BANK**

Business Signature Card Date 03-24-17

## BUSINESS ACCOUNT SIGNATURE CARD

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| American Canyon Supermarket, Inc.<br>DBA: Island Pacific Supermarket<br>DBA: Island Pacific Seafood Market<br><br>5201 Sonoma Boulevard<br>Vallejo, CA 95132 | Corporation<br><br>**MAILING ADDRESS**<br>20819 Currier Rd. # 100<br>Walnut, CA 91789 | |

### AGREEMENT

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| Nino Jefferson Miave Lim<br>President & Secretary | CA DL | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** -- I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Miave Lim / Secretary                                                                    3/24/2017
Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature                                              Date
                                                                 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Printed Name/Title (President, Secretary, Partner, Member, etc.)        Signature                                              Date

Business Signature Card 032012                                                                    [ Card _1_ of _1_ ]

## EXHIBIT B

## REDACTED

American Canyon Supermarket, Inc.

**EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION. | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION.**
East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☑  When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire.  If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

Wire Transfer Limit
$  Unlimited
Max. Dollar Limit
Single wire

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████4558 | 076 | 03-28-17 | MERLIN TENG | Cindy T. | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

**BANK USE ONLY.**
☐ Superseding Card:          By:          Reason: ☐ Add Signer ☐ Other:
Date          Employee Printed Name

Business Signature Card 032012

[ Card __1__ of __1__ ]

# EXHIBIT B

# REDACTED

 **EASTWESTBANK**

**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| PUREGOLD SUPERMARKET INC | Corporation | ▮▮▮▮▮▮▮ |
| | MAILING ADDRESS | |

20819 CURRIER RD #100
WALNUT, CA 91789

### AGREEMENT

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien). *Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [  ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [  ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| NINO JEFFERSON LIM / CEO | CADL▮▮▮▮ | . | ☑ |
| | | XXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [  1  ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

RESOLVED: ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

CERTIFICATION -- I/We certify that: (1) if the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).   (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective, (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

| | | |
|---|---|---|
| NINO JEFFERSON LIM / CEO | | 9/16/15 |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |
| | XXXXXXXXXXXXXXXX | |
| Printed Name/Title (President, Secretary, Partner, Member, etc.) | Signature | Date |

[ Card  1  of  1  ]

# EXHIBIT B

# REDACTED

PUREGOLD SUPERMARKET INC

# ☷ EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email.  Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.  ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire.  If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | Unlimited $_____ Max. Dollar Limit Single wire |

ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ▬▬2125 | 076 | 9/16/15 | Cindy Tan | *(signature)* | Sanford Lau 8019 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY |
|---|
| ☐ Superseding Card: _____ By: _____  Reason: ☐ Add Signer ☐ Other: _____ |
| Date          Employee Printed Name |

Business Signature Card 032012

[ Card _1_ of _1_ ]

# EXHIBIT B

# REDACTED



**EASTWESTBANK**

Business Signature Card Date 9/16/15
**BUSINESS ACCOUNT SIGNATURE CARD**

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| ISLAND PACIFIC ENTERPRISES INC<br>DBA: ISLAND PACIFIC MARKET | Corporation<br><br>MAILING ADDRESS | ████████ |

20819 CURRIER RD #100
WALNUT, CA 91789

**AGREEMENT**

By signing below, I/we: (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [   ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [   ] if the Company is currently subject to backup withholding.

The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.

**AUTHORIZED SIGNERS**

| Printed Name / Title | ID Type /<br>ID Number | Signature | Funds Transfer<br>Access |
|---|---|---|---|
| NINO JEFFERSON LIM / PRESIDENT | CADL████ | ✗ | ☑ |
|  |  | XXXXXXXXXXXXXX | ☐ |
|  |  | XXXXXXXXXXXXXX | ☐ |
|  |  | XXXXXXXXXXXXXX | ☐ |
|  |  | XXXXXXXXXXXXXX | ☐ |
|  |  | XXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [  1  ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

**RESOLUTION**

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION** – I/We certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s).  (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

NINO JEFFERSON LIM / PRESIDENT
Printed Name/Title (President, Secretary, Partner, Member, etc.)     Signature
XXXXXXXXXXXXXX     9/16/15
Date

_____                    _____    _____
Printed Name/Title (President, Secretary, Partner, Member, etc.)     Signature     Date

Business Signature Card 032012     [ Card  1  of  1  ]

**EXHIBIT B**

**REDACTED**

ISLAND PACIFIC ENTERPRISES INC

# ☐☐ EAST WEST BANK

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|
| East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service. <br> ☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction. | $ ___ Unlimited ___ <br> Max. Dollar Limit Single wire |

## ACCOUNTS OPENED

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | | ████2182 | 076 | 9/16/15 | Cindy Tan | /w/ | Sanford Lau |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY |
|---|
| ☐ Superseding Card: _____ By: _____ Reason: ☐ Add Signer ☐ Other: _____ <br> Date           Employee Printed Name |

Business Signature Card 032012

[ Card _1_ of _1_ ]

# EXHIBIT B

# REDACTED

**EAST WEST BANK**

Business Signature Card Date 07-13-17

## BUSINESS ACCOUNT SIGNATURE CARD

| ACCOUNT TITLE and BUSINESS ADDRESS | ACCOUNT VESTING (BUSINESS TYPE) | TAX ID NUMBER |
|---|---|---|
| Island Pacific Supermarkets Inc. | Corporation | ▓▓▓▓▓ |
| ~~DBA: Island Pacific Supermarket~~ | | |

MAILING ADDRESS
20819 Currier Rd. # 100
Walnut, CA 91789

44060 Margarita Road Suite 1
Temecula, CA 92592

### AGREEMENT

**By signing below, I/we:** (1) confirm that we have received and agree that the accounts and account services of the business named above ("Company") will be governed by the terms of the Bank's Deposit Agreement, Annual Percentage Yield and Account Terms Disclosure, and fee schedules; (2) acknowledge that the Deposit Agreement includes a provision for dispute resolution; (3) authorize the Bank to check our credit history from time to time; and (4) authorize the Bank to act on the oral, written or electronic instruction of any Authorized Signer listed below.

**TAX CERTIFICATION** - By signing below, I also certify under penalty of perjury that (1) the Taxpayer Identification Number set forth on this form is the correct TIN of the Company; and (2) the Company is not subject to backup withholding because: it is exempt from backup withholding; it has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest and dividends; or the IRS has notified it that it is no longer subject to backup withholding; and (3) Company is a U.S. person (including a U.S. resident alien).
*Instruction:* You must cross out (2) if it is not correct. If the Company is a foreign company, check this box [ ] and do not complete this certification. Ask us, instead, for an appropriate IRS W-8 form. Check this box [ ] if the Company is currently subject to backup withholding.

**The Internal Revenue Service does not require your consent to any provisions of this document other than the Tax Certifications required to avoid backup withholding.**

### AUTHORIZED SIGNERS

| Printed Name / Title | ID Type / ID Number | Signature | Funds Transfer Access |
|---|---|---|---|
| Nino Jefferson Lim / President / Secretary | CA DL ▓▓▓▓▓ | | ☑ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ |

Number of authorized signers required to act together to make withdrawals or transfers: [ 1 ]
*[Note: This information is for your own purposes. We may permit any authorized signer to act alone. See Deposit Agreement for details.]*

### RESOLUTION

**RESOLVED:** ☑ The President, any Vice President, the Secretary, Treasurer of the Company and/or ☐ _____

each is authorized to enter into deposit account, funds transfer, investment, and treasury management agreements with East West Bank, and to designate from time to time who is authorized to withdraw funds, initiate payment orders, execute service agreements, and otherwise give instructions on behalf of this Company with respect to its deposit accounts. This authorization is in addition to any other authorizations in effect and will remain in force until the Bank receives written notice of its revocation at the address(es) and in the manner designated by it.

**CERTIFICATION – I/We** certify that: (1) If the Company named above is a corporation, at least one of us is its Secretary or Assistant Secretary; if it is a partnership, we constitute all of its general partners or managing partners; or if it is a limited liability company, I am its Secretary or I/we are Member(s) and/or its only manager(s). (2) The foregoing resolution is a true copy of a resolution duly adopted by the Company's governing body and remains valid and effective. (3) The signatures and titles of the person(s) signing above as Authorized Signers are the genuine signatures and titles of those persons. (4) The person(s) listed as Authorized Signer(s) on this form are authorized to withdraw funds, initiate payment orders (if checked above), and otherwise give instructions on behalf of the Company with respect to its deposit accounts and services including to add or delete accounts to this signature card. No other person's signature or authorization is required to bind the Company with respect to the agreements or transactions mentioned in the resolution.

Nino Jefferson Lim / President / Secretary
Printed Name/Title (President, Secretary, Partner, Member, etc.)           Signature          July 13, 2017    Date

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Printed Name/Title (President, Secretary, Partner, Member, etc.)           Signature          Date

Business Signature Card 032012                                           [ Card  1  of  1 ]

## EXHIBIT B

## REDACTED

Island Pacific Supermarkets Inc.

**EAST WEST BANK**

**BUSINESS ACCOUNT SIGNATURE CARD (Continued)**

| FUNDS TRANSFER DESIGNATION AND AUTHORIZATION | Wire Transfer Limit |
|---|---|

**FUNDS TRANSFER DESIGNATION AND AUTHORIZATION**

East West Bank may honor fund transfer requests for the accounts and from the Authorized Signers designated on this form by the methods provided in the Bank's Deposit Agreement and by email. Please refer to the funds transfer provisions of your Deposit Agreement for information regarding the terms of the service.

☑ When the Bank confirms wire instructions through a call-back procedure, it generally calls an Authorized Signer other than the person who initiated the wire. If you check this box, you confirm that we may also call the Authorized Signer who initiated the wire to confirm the transaction.

Wire Transfer Limit

Unlimited

$ _____
Max. Dollar Limit
Single wire

**ACCOUNTS OPENED**

| | Account Subtitle (e.g. "Payroll Account") | Account Number | Product Code | Opened Date | Opened By | Reviewed By | Acct Officer Code |
|---|---|---|---|---|---|---|---|
| 1 | TEMECULA LOCATION | ▮▮▮0449 | 076 | 07-14-2017 | MERLIN TENG | *Cindy Tan* | 31965 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

| BANK USE ONLY |
|---|
| ☐ Superseding Card: _____ _____ By _____ Reason ☐ Add Signer ☐ Other _____ |
| Date    Employee Printed Name |

Business Signature Card 032012

[ Card __1__ of __1__ ]

**EXHIBIT B**

**REDACTED**

# EXHIBIT C



Member FDIC LENDER
NASDAQ: EWBC

# Deposit
## Agreement
Effective Date 04/26/2010



EAST WEST BANK

www.eastwestbank.com

## Customer Service Center

### 1.888.895.5650

(Rev. 04/2010)

**EXHIBIT C**

## INTRODUCTION

Thank you for your interest in an account with East West Bank. This Agreement, Signature Card you sign, Annual Percentage Yield and Account Terms Disclosure, and evidence of account (if applicable) contain the rules, terms and conditions that govern your deposit account with us.

Please read this Agreement carefully and keep it for your records. Our staff is committed to continuing its tradition of being a good neighbor and community leader through friendly, sincere and efficient service and participation in community affairs. Should you have any questions, please refer them to one of our branch representatives or a branch manager.

**NOTE:**

- Used in this Agreement, the words "we", "us", "our" or "the Bank" mean East West Bank, and the words "you"/"your" mean the owners and authorized signers on the account. The words "authorized signer(s)" refer to the person(s) authorized to sign checks and/or give us instructions regarding your account, including account holder(s), authorized signer(s), attorney(s)-in-fact, and any other agent(s) of yours. The word "signature card" includes any signature card or new account application (including an electronic application) signed and/or completed by you and recorded on the records of East West Bank; the word "account" means any account issued by and recorded on the records of East West Bank; the word "service" means any account-related service offered by and recorded on the records of East West Bank; and the word "card" or "ATM/Visa Check Card" means any ATM Card or Visa Check Card issued by East West Bank, including any additional cards or renewals.

- The headings in this Agreement are for convenience only and are not part of these rules, terms and conditions.

## ABOUT THE AGREEMENT

When you open an account with us or subscribe to one of our services, you (and all other authorized signers, designated agents, and the person or entity you represent if you sign as a representative of another) agree to and are bound by the rules, terms, and conditions described in this Agreement, and all other documents you sign or receive in connection with the account or service. You agree to pay any applicable fees, including all taxes, tariffs and assessments levied or imposed by any government agency in connection with your account or account-related services (excluding any income tax payable by us), and you give us the right to collect the fees, as incurred by you, directly from the account balance. You also agree to pay such additional reasonable charges we may impose for services you request which are not contemplated by this Agreement.

We may add to, delete or change these rules, terms, and conditions by either giving notice to any of you personally or sending a notice to any of you at the last address (location or e-mail) shown on our records. Unless otherwise required by law, we may amend this Agreement without prior notice (e.g., by posting the information in our offices, on our website, or otherwise making it available to you.) You may choose to accept or decline these amendments by continuing or discontinuing the account(s) or the service(s) to which these changes relate. Continued use of your account or service with us after the effective date of a change will be further evidence of your agreement to the change.

We may substitute similar services or discontinue currently offered services for certain accounts by giving you prior notice. We do not have to notify you,

1

EXHIBIT C

however, of any changes that are beneficial to you (e.g., reduction of fee or addition of a service).

Unless otherwise provided in this Agreement, we may comply with applicable clearinghouse, Federal Reserve Bank and correspondent bank rules in processing transactions. You agree that we may act in accordance with those rules and that we do not have to notify you of a change in such rules, except to the extent required by law.

We reserve the option to waive, reduce or reverse charges or fees. We also reserve the right to waive any of these rules, terms or conditions. Any waiver or reversal will only apply to that individual situation and will not bind us in the future. You waive diligence, demand, presentment, protest and notice of every kind, except as set forth in this Agreement.

Either East West Bank or you may terminate this contractual Agreement, upon written notice. Termination does not release you from the payment of outstanding obligations (including accrued fees, overdraft balances, penalties, indemnity obligations or the liability for checks in process) or for obligations that arise after the account is closed, such as from a deposited check that is returned.

NOTE:
- **THIS AGREEMENT CONTAINS THE TERMS OF OUR DISPUTE RESOLUTION PROGRAM. THE TERMS OF THE PROGRAM ARE CONTAINED IN THE SECTION ENTITLED "DISPUTE RESOLUTION". PLEASE READ THEM CAREFULLY.**

## FDIC INSURANCE

East West Bank is considered a "single" insured bank for FDIC insurance coverage purposes. You acknowledge and understand that any account(s) you open at East West Bank will be, for FDIC insurance purposes, considered together with any account(s) you currently have or will open at East West Bank. Your deposits are insured up to an aggregate of at least $250,000 by the Federal Deposit Insurance Corporation (FDIC). To find out more about FDIC insurance, please refer to one of our informational brochures, available at our branch locations. You may contact the FDIC directly at 550 17th Street, NW, Washington, D.C. 20429, or by calling its toll-free consumer hotline at (877) ASK-FDIC or visiting their website at www.FDIC.gov

## CURRENCY TRANSACTION REPORTS ("CTRs")

The following information is designed to help you understand the requirements of the Federal law governing the reporting of certain large currency transactions.

**Why does the Bank ask you for identification and personal information?:** Federal law requires financial institutions to report currency (cash or coin) transactions over $10,000 conducted by, or on behalf of, one person, as well as multiple currency transactions that aggregate to be over $10,000 in a single day. These transactions are reported on Currency Transaction Reports ("CTRs"). The federal law requiring these reports was passed to safeguard the financial industry from threats posed by money laundering and other financial crime. To comply with this law, financial institutions must obtain personal identification information about the individual conducting the transaction such as Social Security number as well as driver's license or other government issued document. This requirement applies whether the individual conducting the transaction has an account relationship with the institution or not.

There is no general prohibition against handling large amounts of currency and the filing of a CTR is required regardless of the reasons for the currency transaction. The Bank collects this information in a manner consistent with your right to financial privacy.

If you have further questions, please contact FinCEN's Regulatory Helpline at (800) 949-2732.

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money-laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means to you:** When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## SIGNATURE CARD AND AUTHORIZED SIGNERS

The account signature card gives important information about your account, such as the ownership, identification, and customer contact information. For your protection, please make sure the information provided on your signature card is accurate.

At our discretion, you agree to provide us with information and documentation satisfactory to us, to identify all authorized signers and, if applicable, the organization or business. You may indicate the number of required authorized signers for an account on the signature card, and any of the authorized signers, without notice to the other authorized signers, may sign checks, make withdrawals, transfer funds, close the account, endorse for deposit to this account checks that are payable to any of you, authorize, amend or cancel Automated Clearing House entries and any other types of electronic fund transfers, initiate stop payment orders, or give us instructions and/or changes regarding the account.

- **Massachusetts Accounts Only:** By signing a signature card, you authorize the Bank to honor all instructions given by the account holders or authorized signers, except that for a joint account, no access device may be issued to any account holder until all joint account holders have signed the initial request for such an access device.

Although your card may indicate that more than one signature is required on checks and for the withdrawal or transfer of funds, that notation is for your own purposes. **We do not assume a duty to support multiple signature requirements.** As such, we assume no duty to confirm that two or more (or any combination) of the authorized signers have approved any transaction. Unless we enter into a separate written agreement to the contrary, we may act upon the instructions of any one signer. Although we may attempt on occasion to enforce the multiple signature requirements shown on your card (e.g., by refusing to permit a transaction authorized by less then the stated number of authorized signers), we may cease doing so at any time and without prior notice to you.

We have no duty to question withdrawals or the application of funds. We may, but are not obligated to, honor checks and other instructions where the authorized signer's name and/or signature is written in characters or otherwise not in English.

If a dispute or question arises (whether by us, you or a third party) over any person's authority to give us instructions concerning the account, we may

3

# EXHIBIT C

choose to handle the situation according to the terms described in this Agreement. (See *Disputes*, under the *Additional Terms and Conditions* section, for additional information.)

You agree to notify us immediately, in writing, if you change your business capacity (e.g., sole proprietor to corporation) or the authorized signers on your account. Unless you notify us in writing, we may continue to honor checks, withdrawals, and instructions by previously authorized signers.

**NOTE:**

A new or updated signature card, by itself, does not constitute such notice, nor does it constitute notice to terminate any pre-existing payment or transfer plan.

In some instances, we may require a new signature card and/or for you to close your account or provide us with stop payment orders in order to prevent transactions from occurring. There may be a delay in implementing a change in the authorized signers on our records, and you agree that we will be given a reasonable opportunity to make the necessary changes. (See *Transfer of Ownership*, under the *Account Ownership* section, for additional information.)

## ACCOUNT OWNERSHIP

This section describes some of the ways that title can be held to an account. You must clearly indicate on your signature card the exact account ownership you desire for your account. The type of account ownership you select may determine how the property is passed on after the death of one or more of the account owners. You may wish to consult with an attorney and/or tax advisor before deciding which form of account ownership is best for you. Specific account ownership types may be prohibited from establishing certain types of accounts. We may rely solely on our account records to determine the ownership of your account.

### California, Georgia, Massachusetts, Washington Accounts

**Individual Accounts** – If you open an account with yourself as an "individual" account owner, you will have a sole ownership interest in the account during your lifetime.

**Joint Tenancy Accounts** – If you open an account with others in "joint tenancy," each owner will have an equal ownership interest in the account during his or her lifetime. If one joint tenant dies, ownership of the account will automatically pass to the surviving joint tenant(s). Unless you designate a particular form of vesting on the signature card, we will assume that personal accounts opened by two or more natural persons are intended to be joint accounts with rights of survivorship.

- **Washington Accounts Only: Joint Account without Right of Survivorship** – If you open an account with others in "joint tenancy without right of survivorship," each owner will have an equal ownership interest in the account during his or her lifetime. If one joint tenant dies, the ownership interest of that person will automatically pass to the named payable-on-death payee(s) of that person or, if none, to the estate of that person. In other words, there is no right of survivorship on this account.

**Tenants in Common Accounts** – If your account is opened with others as "tenants in common," each owner will have some interest in the account, but not necessarily an equal interest. When an owner dies, his or her share does not pass automatically to the surviving owner(s). Instead, it goes to the estate or other legal successor of the deceased owner. We may hold the funds in a tenants-in-common account and refuse transactions until the surviving

account owner(s) and the personal representative or heirs of the deceased owner agree on the account's disposition. We may refuse to freeze the account, however, until we receive a death certificate or other proof, satisfactory to us, of an account owner's death.

**Community Property Accounts** – If you and your spouse reside in a community property state and open a "community property" account, each of you will have an equal interest in the account. The community property ownership vesting must be clearly stated on the signature card; otherwise, the account will be considered a joint tenancy account. If one of you dies, one-half of the account will belong to the surviving spouse; the deceased spouse's share of the account will go to his or her estate and may be effected by a will. We may hold one-half of the funds on deposit in a community property account and refuse transactions as to those funds until the surviving spouse and the personal representative or heirs of the deceased spouse agree on the account's disposition. We may refuse to freeze the account, however, until we receive a death certificate or other proof, satisfactory to us, of a spouse's death.

**"In Trust" Accounts** – If you open an account "in trust" or "as trustee for" someone else (e.g., your child) and there is no trust document (what is often referred to as a "totten trust" or "payable-on-death" account), the account will pass to the beneficiary upon the death of the last surviving account owner. If there is more than one beneficiary, each will receive an equal share of the funds unless you have given us other specific written instructions. During your lifetime, you may exercise full control over the account and may make deposits to and withdrawals from the account. The death of the beneficiary, prior to your death, revokes the trust. You can arrange to change the beneficiary during your lifetime by contacting your branch of account.

**Massachusetts Accounts Only: 18-65 Accounts** – Pursuant to Massachusetts law, residents of Massachusetts who are 65 years of age or older or 18 years of age or younger and otherwise meet the Bank's requirements for opening an account, qualify to have one checking account and/or one savings account under the Massachusetts 18-65 rule.

For joint accounts, each account holder must meet the 18-65 requirements except (1) the spouse of an eligible account holder, or (2) an adult cosigner on a minor's account. You can ask for the 18-65 status for an existing account or a new account.

If your account is established with 18-65 status, you will not be required to pay fees for the following services:

- Monthly account maintenance;
- Basic checks imprinted with your name;
- Check writing (no limits);
- Withdrawals in the form of cashier's checks or money orders;
- Wire transfers;
- Stop payment orders;
- Returned third party checks cashed against or deposited to your account.

We may assess a non-sufficient funds fee for each check or transaction presented for payment if your account does not have sufficient funds, whether or not we pay the check. The Bank may charge you for optional services that are not part of your account, such as traveler's checks or custom printed checks. You should check your bank statements each month to ensure that we are not charging you any extra fees, and notify us promptly if you find any discrepancies. If you are eligible for 18-65 status it is your responsibility to notify us. We are not liable for any fees assessed to your account prior to notification.

4

5

**EXHIBIT C**

Upon your request we will provide you, without charge, up to 10 paid check copies (front and back) per calendar year. If a request is made by an account holder who is legally blind, we will make accommodations to provide additional cancelled checks or other information thereon as is possible.

### New York Accounts :

**Individual Accounts –** If you open an account with yourself as an "individual" account owner, you will have a sole ownership interest in the account during your lifetime.

**Joint Tenancy Accounts –** If you open an account (e.g., make a deposit of cash, securities or other property) in your name and the name of another person or persons and in a form to be paid or delivered to any or the survivor of them, it will be considered a "joint account." The owner of a joint account refers to the depositor and any other person or persons named on the account. With respect to any joint account, the following rules apply: (1) the deposit, and any additions thereto, shall become the property of each owner as joint tenants and, as such, the Bank may release the entire account to any owner during the lifetime of all owners; (2) the Bank may honor checks or orders drawn by, or withdrawal requests from, any owner during the lifetime of all owners; (3) the Bank may be required by service of legal process to remit funds held in the joint account to satisfy a judgment entered against, or other valid debit incurred by, any owner of the account; (4) the Bank may honor checks or orders drawn by, or withdrawal requests from, the survivor(s) after the death of any owner(s); (5) the Bank may treat the account as the sole property of the survivor(s) after the death of any owner(s); and (6) unless the Bank receives written notice signed by any owner not to pay or deliver any joint deposit, or addition or accrual thereon, the Bank shall not be liable to any owner for continuing to honor checks or other orders drawn by, or withdrawal requests from, any owner, and after the receipt of such notice, the Bank may require the written authorization of any or all joint owners for any further payments or deliveries.

**Tenants in Common Accounts –** If your account is opened with others as "tenants in common," while each owner is living, any one of them may withdraw part or all of the funds in the account without the signature of any other owner. However, this account is different from a "joint account," in that when an owner dies, the ownership interest of that person will automatically pass to the named payable-on-death payee(s) of that person or, if none, to the estate of that person. In other words, there is no right of survivorship on this account.

Joint accounts and tenants in common accounts all have the following characteristics in common. Each person named in the account, without the consent of any other account holder, may (and hereby is authorized by every other person named on the account) to make any transaction permitted under this Agreement, including, without limitations: (1) to withdraw all or any part of the account funds; (2) to pledge the account funds as collateral to us for any obligation, whether that of one or more account holders or of a third party; (3) to endorse and deposit checks and other items payable to any joint account holder, (4) to give stop payment orders on any check or item, whether drawn by that account holder or not; and (5) to close the account, with the disbursement of account proceeds as instructed by the person closing the account. Each joint account holder is authorized to act for the other account holder(s) and we may accept orders and instructions regarding the account from any joint account holder. If we believe there to be a dispute between joint account holders or we receive inconsistent instructions from the account holders, we may suspend or close the account, require a court order to act, and/or require that all joint account holders agree in writing to any transaction concerning the account.

Your obligations under this Agreement are joint and several. This means that each joint account holder is fully and personally obligated under the terms of

6

this Agreement, including liability for overdrafts and debit balances as set forth above, irrespective of which joint account holder benefited from the withdrawal. If you establish a joint account without the signature of the other joint account holder(s), you agree to hold us harmless for our reliance upon your designation of the other joint account holder(s) listed on our documents. Further, the account is subject to the Bank's right of setoff.

**"Totten Trust" Accounts –** A "totten trust" is an informal trust account, reflected on our records, but without a written trust agreement, where the account is owned by the trustee. The beneficiaries have no right to any funds in the account during the trustee's lifetime. As the owner of the account, the trustee may withdraw money from the account and may, by written direction to us, change the beneficiary under the account. Unless the trustee expressly revokes, terminates, or modifies the trust account in the trustee's will, then when the trustee dies, the account will be owned by the named beneficiary or beneficiaries. If the totten trust account is held by more than one trustee, the trustees will be subject to the rules pertaining to joint account ownership as set forth in this Agreement. If there is no surviving beneficiary upon the death of the last trustee, state law will determine ownership of the funds in the account.

### Texas Accounts

**Texas Uniform Single- or Multiple-Party Account Selection Notice –** Your designation of one of the following account types on your signature card establishes the type of your account under Chapter XI of the Texas Probate Code.

- **Single-Party Account without a P.O.D. (payable on death) Designation:** The party to the account owns the account. On the death of the party, ownership of the account passes as part of the party's estate under the party's will or by intestacy.

- **Single-Party Account with a P.O.D. (payable on death) Designation:** The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not part of the party's estate.

- **Multiple-Party Account without Right of Survivorship:** The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes as a part of the party's estate under the party's will or by intestacy.

- **Multiple-Party Account with Right of Survivorship:** The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to any party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties.

- **Multiple-Party Account with Right of Survivorship & P.O.D. (payable on death) Designation:** The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to any party at any time. On the death of the last surviving party, the ownership of the account passes to the P.O.D. beneficiary(ies).

- **Convenience Account:** The parties to the account own the account. One or more convenience signers to the account may make account transactions for a party. A convenience signer does not own the account. On the death of the last surviving party, ownership of the account passes as a part of the last surviving party's estate under the

7

# EXHIBIT C

last surviving party's will or by intestacy. We may pay funds in the account to a convenience signer before we receive notice of the death of the last surviving party. The payment to a convenience signer does not affect the parties' ownership of the account.

- **Trust Accounts (Totten Trust/ Payable-on-Death / Informal Trust):** The parties named as trustees to the account own the account in the proportion to the parties' net contributions to the account. A trustee may withdraw funds from the account. A beneficiary may not withdraw funds from the account before all trustees are deceased. On the death of the last surviving trustee, the ownership of the account passes to the beneficiary(ies). The trust account is not a part of the trustee's estate and does not pass under the trustee's will or by intestacy, unless the trustee survives all of the beneficiaries and all other trustees.

**Community Property Accounts –** If you and your spouse reside in a community property state and open a "community property" account, each of you will have an equal interest in the account. The community property ownership vesting must be clearly stated on the signature card; otherwise, the account will be considered a joint tenancy account. If one of you dies, one-half of the account will belong to the surviving spouse; the deceased spouse's share of the account will go to his or her estate and may be effected by a will. We may hold one-half of the funds on deposit in a community property account and refuse transactions as to those funds until the surviving spouse and the personal representative or heirs of the deceased spouse agree on the account's disposition. We may refuse to freeze the account, however, until we receive a death certificate or other proof, satisfactory to us, of a spouse's death.

**Special Reporting Obligations for Texas Business Account Customers –** Texas Finance Code Chapter 277 provides that Texas business deposit customers must provide certain information to us when opening their accounts. For purposes of this Agreement, you are a "Texas business deposit customer" if you maintain a business deposit account with us in Texas and you are a "business" as defined in Texas Finance Code § 277.001(1), which includes a sole proprietorship, partnership, corporation, or any other legal entity formed for the purpose of making a profit. This law also provides that we must request that the Texas business deposit customer provide us with updated information at least annually.

By opening and maintaining a business account with us in Texas, you agree to provide us any updated information as required by Texas Finance Code Chapter 277 (described below) no later than December 31st of each year during which you maintain your account with us. You do not need to make any annual report if the information you previously provided has not changed during the preceding year. You only need to make the report required by Chapter 277 if there have been any changes in the information described below during the preceding year.

If your business is a *sole proprietorship*, we are required by Chapter 277 to request that you provide updated information for the following data:

- Business owner's name
- Physical address of the business
- Business owner's home address
- Business owner's driver's license number or Department of Public Safety personal identification card number

If your business is a *corporation, partnership, limited partnership, or limited liability company*, we are required by Chapter 277 to request that you provide updated copies of the business's certificate of incorporation, partnership agreement, certificate of limited partnership or articles of organization, as appropriate. If such business has adopted an assumed name, we are required

8

by Chapter 277 to request that you provide a copy of the assumed name certificate.

Please include the title of the account and account number with any information updates.

**Please Send Information Updates To:**

East West Bank
Branch Operations Department
9300 Flair Drive, 4th Floor
El Monte, CA 91731

Customer Service Center at (888) 895-5650

**Other Account Types**

**Documented Trust Accounts –** If you establish an account in connection with a written trust you certify that: (1) you are the only current trustee(s) of the trust; (2) you are authorized to enter into this and other agreements with us in connection with the trust; (3) no other person's authorization or court order is required for the actions you take and/or the instructions you give in connection with the account; and (4) the correct name of the trust is reflected on the signature card for the account. You agree to provide us with reasonable advance notice of any amendments made to the trust, any change in trustees or beneficiaries, and any other event that might affect any right, duty or authorization of any person (including us) with respect to the trust account.

Upon our request, you agree to provide us with a written and notarized trust certification, or any other documentation we may require, pertaining to the account. We will not be required to know, understand, interpret or enforce the terms of any trust documentation that may be provided to us.

**Uniform Transfers to Minors Act Accounts –** If you have established an account as a custodian for a minor beneficiary under an applicable state version of the Uniform Transfers to Minors Act or the Uniform Gifts to Minors Act, your rights and duties are governed by that Act. This account and any funds deposited to it are considered a complete and irrevocable transfer to the minor. The funds in the account belong to the minor but are controlled by and carried in the name of the custodian. The minor's tax identification number is used for the account, as they are the beneficial owner. When the minor reaches the age of majority, or other age at which withdrawal is permitted, it is the legal obligation of the custodian to turn the funds over to the minor. We are not responsible to determine whether the use of the funds by the custodian is for the benefit of the minor.

**Partnership Accounts –** If you open an account as a "partnership," any general partner may have signature and other authority to bind the partnership unless you have specifically advised us, in writing, otherwise; furnishing a copy of the partnership agreement is not considered specific advice and we will not be responsible to know, understand, interpret or enforce the partnership agreement. Upon our request, you agree to provide us with any documentation we may require pertaining to the account.

**Sole Proprietorship Accounts –** If you open a business account as a "sole proprietor," your business may not be a corporation, partnership, association, or limited liability company. A sole proprietorship account may only be established by an individual depositor or a husband and wife.

**Corporation Accounts –** If you open a business account as a "corporation," your business must be properly incorporated. Upon our request you agree to provide us with any documentation we may require pertaining to the account,

9

# EXHIBIT C

including additional supporting documentation for "Out-of-State" or "Out-of-Country" foreign entities.

**Limited Liability Company Accounts** – If you open a business account as a "limited liability company," your business must be properly established as a "limited liability company," and the account title must reflect this designation. Upon our request you agree to provide us with any documentation we may require pertaining to the account.

**Attorney-Client Trust Accounts** – If you want to open an "IOLTA" (Interest on Lawyers Trust Account), you must indicate that on your signature card. Otherwise, we may assume that it is not an IOLTA account.

**Transfer of Ownership** – While checks drawn on your account are negotiable, the account itself and any certificate of deposit, passbook or other indicator of ownership is not negotiable or transferable except on our books and records, unless the account document(s) for the account explicitly states it is negotiable or transferable. We must approve any pledge of the account as security for a debt, and any pledge remains subject to our right of set-off and security interest. We may, but are not required to, allow any authorized signer(s) to request the removal or addition of an authorized signer(s) without the consent of the other authorized signer(s), although in such case we may require that the account be closed and a new account opened. It is the responsibility of the authorized signer initiating the request to notify all other authorized signer(s), including the removed authorized signer(s), as applicable. Signers removed from an account remain liable for items negotiated, but not yet paid, prior to their removal from the account. (See the *Signature Card and Authorized Signers* section for additional information.)

**Retirement Accounts** – We offer a wide selection of retirement account options. Please refer to the Retirement Plan Disclosures or other documents, received at account opening or periodically thereafter, for specific information regarding the rules and regulations governing retirement accounts, specifically concerning IRS penalties for the distribution of funds.

Please note, that although retirement accounts do have specific regulatory rules, your retirement account with us is still governed by the terms and conditions (where applicable) that are listed in this Agreement.

## GENERAL TERMS AND CONDITIONS

**Annual Percentage Yield** – The Annual Percentage Yield (APY) means a percentage rate reflecting the total amount of interest paid on an account, based on the interest rate and the frequency of compounding for a 365 day period. Annual Percentage Yield assumes that interest remains in the account until maturity. If compounding occurs during the term of the account and interest may be withdrawn prior to maturity, a withdrawal will reduce your earnings.

**Business and Banking Days** – Our business and banking days are Monday through Friday. Saturdays, Sundays, and federal holidays are not considered business or banking days, even if we are open.

**Deposit of Items** – Deposits may be made to your account (if applicable) in person at any one of our branch locations, by mail, by proprietary (East West Bank owned) ATM, by authorized night deposit box, or as agreed upon by you and the Bank, directly to an authorized Bank processor. We are not responsible for deposits initiated by mail, messenger or depository boxes until we actually receive or credit them to your account. Except for deposits made at a proprietary ATM (e.g., ATMs operated by East West Bank), all deposits received after the "close of business" (as posted at the branch location) on a business day we are open, or received on a day in which we are not open for business, will be treated and recorded as if initiated on the

following business day that we are open. Proprietary ATM transactions initiated on a Sunday and federal holidays or after 3:00 p.m. (local time zone) on a business day or Saturday will be treated and recorded as if initiated on the following business day that we are open. (See the *Holds for Uncollected Funds/Delayed Funds Availability* section for additional information.)

An authorized person should complete a deposit ticket for each deposit made. Deposits received without proper instructions may either be applied, at our discretion, to any loan or deposit account you maintain with us or returned to the sender. We may accept deposits to your account from any source and need not question the authority of the person making the deposit.

We may choose to accept an item for deposit on a collection basis only. If an item is accepted on a collection basis, we may charge a fee for the collection (See Bank *Fee Schedule*) and will not credit your account with the funds until we receive them from the payor financial institution. If we elect to credit your account before then, we may charge your account for the amount if we do not receive payment for any reason. The institution upon which the item is drawn may also charge you a fee in connection with the collection. (See *Foreign Transactions*, under the *General Terms* section, for additional information.)

You warrant that all endorsements on items deposited to your account are genuine, and authorize us to supply any missing endorsement. On accounts with multiple authorized signers, you authorize all other authorized signers to act as your attorney-in-fact to endorse any check or debit payable to any one or more of the authorized signers on your account. You agree to reimburse us for any loss, cost or expense we incur as a result of your failure to endorse an item exactly as drawn. If we receive an affidavit or declaration stating that one or more endorsements on a check or other item is forged, we may rely upon the truthfulness of the affidavit and "restrict" the amount or charge back the amount of the check or item to your account, without prior notice to you and pending our investigation, even though you have already had use of the funds.

We reserve the right to refuse to accept any item for deposit, including but not limited to items that bear more than one endorsement or the endorsement of individuals who are not known to us. On previously endorsed items we reserve the right to refuse the item for deposit, to require the endorser to be present before we accept the item for deposit, or to require that their endorsement be guaranteed by their financial institution.

**Adjustments** – We may make adjustments to your account whenever we deem a correction or change is required. Adjustments might occur, for example, if deposits are recorded or keyed in for the wrong amount or items you deposit are returned unpaid. We may elect, at our discretion, to not make an adjustment to your account to correct an error which you or a third party (e.g., another financial institution) cause if the adjustment is less than $5.00 or our cost to make the adjustment is greater than the amount in question. The election will represent an indirect service charge to your account.

All deposits are on a provisional basis only, even if we cash an item or give you immediate credit; any credit to an account is subject to final verification, payment and adjustment by us. We may (but are not obligated to) require suitable identification for any "less cash" transactions. Deposit receipts do not necessarily indicate the correct balance in the account or the amount being deposited. All deposits are subject to later verification, adjustment and collection by us.

**Discrepancies** – If there is a discrepancy in a check you have written between the amount in numbers and the amount in words or embossed numbers, we may utilize either amount in paying the item or may dishonor the item, without liability.

10

11

# EXHIBIT C

**Indemnification** – Except as otherwise set forth in this Agreement, you agree to indemnify, defend and hold us harmless from all claims, actions, proceedings, fines, costs and expenses (including, without limitation, attorney fees) related to or arising out of: (a) your actions and omissions in connection with your accounts or our services, and (b) our actions and omissions, provided that they are taken/omitted in accordance with this Agreement or your instructions.  This provision shall survive the termination of this Agreement.

**Foreign Transactions** – Transactions must be in U.S. Dollars. If you use an Automated Teller Machine or conduct a point-of-sale transaction, a point of purchase transaction, or an electronic funds transfer in a foreign country, or if you write a check in foreign currency, we reserve the right to reject or accept the item.  If we choose to process the transaction, your account will be charged at the foreign currency exchange rate imposed by us or the third party processor, and an additional processing fee may apply. (See Bank *Fee Schedule*)

If you receive a credit or deposit to your account in currency, we reserve the right to reject or accept the transaction and/or, at our discretion, process it on a collection basis.  If accepted, your account will be credited at the foreign currency exchange rate imposed by us or the third party processor.  This exchange rate may be different than the exchange rate in effect on the day you initiated the transaction.  An additional processing fee may apply. (See Bank *Fee Schedule*)

**Collection of Items** – When you cash or deposit a check or other item with us, or when we receive an item for collection, we are acting only in the role of the depositor's agent and assume no responsibility beyond the exercise of ordinary care, nor will we be liable for the acts of agents, subagents or others, nor for any casualty, in the course of collection.  The risk of loss of an item in the process of collection is on you.  In no event shall we be liable to you if you cannot identify the maker and amount of the lost item.

We reserve the right to reverse any credit given and any interest earned or accrued for any deposited items lost in transit, or charge your account for any cashed items, should they become lost while in the process of collection. All items are credited subject to final payment and receipt of proceeds by us. You agree to do all things reasonably within your ability to assist us in finding, identifying, reconstructing, replacing and collecting lost items, including but not limited to maintaining a record of the maker of items delivered to us for deposit and collection.

We also reserve the right to pursue collection of previously dishonored item(s), and in so doing permit the payor bank to hold an item beyond the midnight deadline

**Withdrawals (Generally)** – We reserve the right to refuse any withdrawal or transfer request which is attempted by any method not specifically permitted, which is greater in number than the frequency permitted, which is for an amount less than the amount permitted, or which will reduce the account below the required minimum balance. Even if we honor a non-conforming request, repeated abuse of the stated limitations (if any) may force us to close your account. We will use the date a transaction is posted by us (as opposed to the date you initiate it) to apply frequency limitations and may impose an excess activity fee. (See Bank *Fee Schedule*)

At our option, withdrawals may be made only upon your written order or that of any of the authorized signer(s) (unless otherwise noted on the signature card). We may pay any check which bears a signature or endorsement (including a facsimile signature) resembling the authorized signature(s) on file for your account. We do not have to require a written order, however, if we are authorized to allow a withdrawal by other means (e.g., by telephone or at an automated teller machine). We may (but are not obligated to) require

suitable identification and/or receipt of passbook for any withdrawal or account closure.

We may honor checks drawn against your account by authorized signers, even if the checks are made payable to them, to cash, or for deposit to their personal accounts.  We have no duty to investigate or question withdrawals or the application of funds.  Checks or withdrawal requests without the designated number of signatures or which bear signatures that (in our opinion) do not satisfactorily compare with specimen signatures on file with us may be refused or returned unpaid.

All checks written on your account must be in U.S. dollars (unless you have opened up a foreign currency account, in which case other arrangements may apply).

We reserve the right to refuse or limit withdrawals from any office that is not your branch of account. We may also refuse to honor checks drawn on your account if they are directly presented to us by someone we cannot identify to our satisfaction. We may require reasonable identification, which may include without limit documentary identification and/or physical documentation (e.g. fingerprint, etc.), before cashing checks presented to us. We reserve the right to limit the dollar amount of withdrawals or other payments in cash, and may, at our discretion, fulfill the request by providing an East West Bank issued negotiable instrument in lieu of cash.

Depending on your account type, withdrawals may occur upon presentation of a preprinted personalized check, a temporary check, a counter-check or another form of withdrawal, including a withdrawal order initiated by a third party drawing a draft on your account or initiating an electronic funds transfer if the third party is authorized to do so by you or any other authorized person. In this respect, if you authorize a company to pay bills for you or to draw items against your account without your signature on them (for example, through a money management or similar software program or an automatic payment plan offered by someone from whom you have purchased goods or services or borrowed money), you understand and agree that because we will not be able to determine whether a given item is actually authorized by you, we are authorized to honor any items that are prepared by such company whether or not you have actually authorized the company to draw that item on your behalf and even though the item will not bear your signature or that of any other person (if such items are written, they usually are "signed" *signature on file* or words of similar effect; if they are presented through an automated clearing house ("ACH"), there may be no signature field). Moreover, if you voluntarily give your account number to a third party by telephone or other agreement, this act may be deemed by us to authorize the recipient of the information to initiate debits to your account, even though you may not have specifically authorized a particular transaction. In these situations, we may have no obligation to reimburse you for our payment of any item issued by this third party. Under certain conditions we may, in our sole discretion, also follow other forms of withdrawal instructions from you or others with signing authority over your account, such as instructions given by letter, facsimile, electronically, or over the telephone.

## ACCOUNT LIMITATIONS

**Deposit Limitations** – In addition to all other limitations set forth in this Agreement, we may refuse to accept a deposit or an addition to an account, limit its size, or return all or part of it to you. We reserve the right to limit the amount of funds that may be maintained in an account.

**Withdrawal Limitations** – As required by federal law, we reserve the right to require 7 days advance written notice of an intended transfer or withdrawal of funds from any savings account, Money Market Deposit Account, or

12

13

**EXHIBIT C**

interest-bearing checking account. We currently do not exercise this right and have not exercised it in the past.

**Money Market and Savings Accounts** – Transactions involving these accounts are limited by law. As allowed for by the account, you may only make up to six withdrawals and transfers, each calendar month or statement cycle, by check, draft, point-of-sale or debit card, preauthorized or automatic transfers, or telephonic agreement, order or instruction (including data transmission). Preauthorized or automatic transfers, and telephonic transfers include, but are not limited to, automatic payments to non-related financial institution loans, automatic overdraft transfers, Online Banking transactions, transfers authorized by facsimile transmission, and Automated Telephone Transfers (VRU). If you exceed this limitation, we may refuse to honor the excessive transaction(s), remove your transfer privileges, close the account without prior notice, convert it to another type of account, and/or impose a fee for exceeding the limits. (See Bank Fee Schedule)

**NOTE:**

> We count checks for purposes of the transaction limitations as of the date we post them to your account (not as of the date you write them). As such, a check you write during one statement cycle may not be counted until a subsequent statement cycle. Given these limitations, you should not use Money Market or Savings Accounts as your bill payment account.

We may refuse or limit telephone and mail withdrawals, at our discretion. There is no limit to the number of withdrawals you can make in person at your branch of account, by mail or messenger, or through an automated teller machine (if your account allows access). Nor is there any limit on the number of deposits that can be made to your account each month (e.g., in person or by preauthorized or automatic transfer).

**Fixed Rate, Fixed Term Certificate Accounts** – Unless our written agreement with you says otherwise, you do not have a right to make partial withdrawals from, or additional deposits to, an existing certificate of deposit. (See the *Annual Percentage Yield and Account Terms Disclosure*, received at account opening, for information regarding penalties imposed on withdrawals.)

**Bonus or Special Promotion** – Unless specifically stated otherwise, any bonus or special promotion we are offering will not apply to automatically renewing time deposits.

## ADDITIONAL TERMS AND CONDITIONS

**Facsimile Signatures** – We may refuse to accept facsimile signatures. If we do accept a facsimile signature(s), you agree that we may treat such signature(s) as authorized. You agree to assume full responsibility for any and all payments made by us in reliance upon a facsimile signature(s) resembling a signature(s) that has been provided to us by any of you. You agree that it is your responsibility to safeguard mechanisms that create facsimile or mechanical signatures, and to indemnify and hold us harmless from any and all losses, claims, damages, liability, costs and expenses arising directly or indirectly out of the misuses or the unlawful or unauthorized use of the facsimile signature(s) by any person.

**Fax/E-Mail/Voicemail Instructions** – We may, but are not required to, act upon instructions received by FAX transmission, telephone voicemail or answering machine, or e-mail. If, at our discretion, we act upon your instruction, you agree to accept any risk associated with your use of these means of communications.

14

**Fingerprinting** – If a person to whom you gave your check asks us to cash the check, we may require that they place their fingerprint on the check. If they refuse to provide their fingerprint, we may refuse to cash the check without any liability on our part. (See *Withdrawals (generally)*, under the *General Terms* section, for additional information.)

**Minors' Accounts** – We may refuse to honor checks or transfer instructions issued by minor (under 18 years of age) beneficiaries of a payable on-death account or minor joint tenants of a joint account, and may close the account upon the death of the principal(s) or adult joint tenant(s). At our option, funds held in an account for the benefit of a minor may be paid to the minor, or to the minor and the minor's parent(s), guardian or other legal representative. The existence of this right shall not be deemed to impose any duty on us to include the minor's parent(s), guardian, or other legal representative as co-payee(s).

**New Account Verification** – We may use a third party service to verify and obtain information regarding your previous banking relationships. You agree that by requesting to open an account or service with us, or by becoming an authorized signer on an account, that we may obtain credit information from a check or credit reporting agency, and/or by other means. We may obtain this information at the time you open the account, request the service, at any time while your account and/or service is open, or if you owe us an amount related to a closed account or service. Adverse information may be used as cause to decline an account. We may also report the closure of your account to such third party services.

**Power of Attorney** – We are sometimes asked to honor instructions from someone claiming to act as your agent. We reserve the right to refuse to act upon those instructions for any reason, including when the instructions are not clear to us or do not appear to be authorized by you. To reduce the possibility of this occurrence, we suggest that if you wish to appoint an agent to transact business with us on your account, that you consider using our standard power of attorney form, and further suggest that you review this form with your lawyer. You agree to be bound by and responsible for the acts of your attorney-in-fact, even if the attorney-in-fact relationship is not indicated on the check withdrawal order or other instruction. You agree not to hold us responsible for any unauthorized transaction or any loss or damage that may be incurred as a result of the decision we make whether to follow the instructions given by someone acting or claiming to act as your agent so long as our decision is made in good faith.

**Check Orders/Forms** – You agree to use the checks and forms as supplied by us or our authorized check printer. You are responsible for ensuring the accuracy of all information shown on your checks. If you find an error, please notify us immediately. Our liability is limited to the replacement or replacement cost of checks.

If you arrange for the printing of your own checks, verification of the form, encoding, format and proper printing of the checks are your responsibility. Your checks must follow our check specification requirements and be approved by us in advance. If you fail to obtain approval, these items may not be accepted by us for payment. We make checks available that include fraud prevention features. If you choose not to use them or other checks that include fraud prevention features, you agree to assume a heightened degree of responsibility for safeguarding your checks and for reviewing all returned checks and statements as soon as you receive them.

We reserve the right to return unprocessed, any other check, form or order incompletely or defectively drawn.

**Account Analysis** – You agree that if you deposit funds that belong to others (beneficial owners) in an analyzed account, you represent to us that (1) you are authorized by the beneficial owners to benefit from the use of any

15

# EXHIBIT C

associated earnings credit, and (2) your use of the earnings credit will not violate any contract, law or regulation. You also agree to indemnify, defend and hold us harmless from and against any and all claims, actions, proceedings, losses, costs (including attorney fees and other charges), liabilities and/or damages that arise from your use of the Service or the manner in which you compensate or charge beneficial owners for your use of our services. This provision shall survive the termination of this Agreement.

**Payment of Photocopies** – Checks and other items are sometimes lost during processing or while in transit to us. Photocopies of items you have written, deposited, cashed, or otherwise negotiated may be charged to your account without your prior approval if they appear to be drawn on your account. We shall not be liable to you if the original items are thereafter presented and paid against your account unless a stop payment had been placed on the items, according to the terms in this Agreement, prior to presentment of the photocopies. (See *Stop Payment Orders on Your Account,* under the *Additional Terms and Conditions* section, for additional information.)

**Cut-off Times** – Our processing cut-off hour with respect to any knowledge, notice, stop payment order, or legal process received by us involving a check, that is against a sum in an account and would require us to reverse an item paid the prior day to comply, is 10:00 a.m. (local time zone) the banking day following the day the item was paid. This will only be valid for items that were not paid in cash, certified by us, or settled for without having a right to revoke the settlement. The cut-off hour with respect to set-offs exercised by us is the close of the banking day following the banking day we receive a check. The cut-off hour determines our obligation under state law to pay or return certain checks that have been received (but not finally paid) by us on the previous banking day.

**Stop Payment Orders on Your Account** – If a check written on your account or an ACH debit to your account or an electronic transaction initiated by the use of a check (e.g., point of purchase "POP", etc.) has not yet been paid, any authorized signer on the account and/or any individual authorized to access your account through the Online Banking or Automated Telephone Transfer service may be able to prevent its being paid by initiating a stop payment order, irrespective of who signed the check or authorized the transaction, or how many authorized signatures were required on the check. Placing a stop payment order on ACH items, or other electronically presented payments, does not cancel your authorization to the originator of the transfer. You are responsible for notifying the originator, in writing, with your request to cancel your authorization.

To be effective, a stop payment order must be received in sufficient time to enable us to act on it. For ACH and electronically presented payment transactions we must receive your request three (3) business days or more before the payment is scheduled to be made. (See *Stop Payment of Pre-Authorized Transfer,* under the *Electronic Funds Transfers* section, for additional information.)

Stop payment orders on checks are good for six months and then will automatically expire. If the check is still outstanding after that time, another stop payment order may be requested. If the check is presented after the stop payment order has expired, you agree that we may pay the check against funds in your account, but are not obligated to do so. Our records will be conclusive evidence of the existence and details of any stop payment initiated by you.

Stop payments initiated using the Online Banking or Automated Telephone Transfer services are not considered accepted until we provide a stop payment confirmation to you. The ability to place a stop payment through the Online Banking or Automated Telephone Transfer service may be limited by system availability. If the system is not available to accept your stop

16

payment order, the stop order may be placed by contacting any East West Bank branch during normal business hours.

In order to process your request, you must provide us with the exact amount (dollars and cents), check number (if applicable), account number and payee of the item. If you provide us with any incorrect information or do not give us sufficient time to act on your stop payment request, we will not be responsible for our failure to stop payment on the check/transaction.

A fee may be charged for each stop payment order or renewal thereof. (See Bank *Fee Schedule*)

**Stop Payments, Bank Issued Checks** – You do not automatically have the right to stop payment on a Bank issued check you receive or purchase from us, and we may refuse to stop payment on a Bank issued check or payment guaranteed by us. If any of the above items are lost, stolen, or destroyed, we may, at our sole discretion, stop payment if you and/or the payee sign a stop payment order and provide us with a surety bond in an amount and duration acceptable to us. Under certain circumstances, you may be able to claim a refund on a lost, stolen, or destroyed Bank issued check 90 days following the date of its issuance. At our sole discretion, claims will be required to be submitted in writing, on a Bank form, and signed by you and/or the payee. If the Bank issued check is presented during the 90 day waiting period, we may pay the item to a person entitled to enforce the check. If this happens, we will not pay your claim.

A fee may be charged for each stop payment order received. (See Bank *Fee Schedule*)

**Stop Payments, Money Orders** – East West Bank only acts in the capacity of agent for the sale of money orders. All stop payment orders on money orders must be handled through and approved by the company they are drawn on.

A fee for placing a stop payment order may be imposed by the company the item(s) is drawn on.

**Lost or Stolen Checks** – You agree to notify us immediately if any checks, drafts or other payment orders have been lost or stolen. We may close your current account and may open a new account, of the same type and features, for you. All inclearing items will then be returned, unless you specifically request that a particular check be paid (to do so you must provide us with specific information regarding the item). Once you make such a request you agree to indemnify and hold us harmless should the item be altered or forged. You will be responsible for issuing any replacement checks.

You will be responsible for notifying any outside agencies who make deposits to or withdrawals from your account (e.g., payroll, insurance, etc.) of your new account number as soon as possible. Failure to do so may lead to delays or non-processing of the transaction(s).

**Stale Dated Checks** – You agree we may pay or reject a check, which is presented to us for payment more than six months after its date (a "stale dated" check), even if the presentation occurs after the expiration of a stop payment or postdated check order. We normally do not examine the date on checks presented for payment. You agree that we are not required to identify stale dated checks or to seek your permission to pay them.

**Postdated Checks** – Unless prohibited by state law, if you postdate a check we have the option to either pay the check against your account or refuse to pay it, unless you have given us advance notice, in writing, not to pay the postdated check and describe the check by providing us with the exact amount (dollars and cents), issuance date on the check, check number, account number and payee of the item.

17

# EXHIBIT C

Dating a check later than the actual calendar date you write it does not guarantee that payment will be delayed. Thus, it is not recommended that you postdate a check. You agree that the Bank will not be liable to you for charging your account before the indicated date on a properly payable but postdated check. If the postdated check is returned because there were insufficient funds in your account, you will be charged the standard fee. (See Bank *Fee Schedule*)

To be effective, a request not to pay a postdated check must be received in sufficient time to enable us to act on it. A request not to pay is good until the issuance date on the check (as provided by you) and then will automatically expire, allowing the check to pay. Our records will be conclusive evidence of the existence and details of any postdated check notification initiated by you.

We may pay the item as of the check issuance date, even if you have given us a request not to pay. If you do not want the item to be payable as of the issuance date, you must place a stop payment order. (See *Stop Payments on Your Account*, under the *Additional Terms and Conditions* section, for additional information.) For a stop payment order to be effective, we must receive your request in sufficient time to act on it before the check has paid.

A fee may be charged for each item that you requested us not to pay. (See Bank *Fee Schedule*)

**Demand Drafts** – If you use or authorize another to issue a demand draft against your account or voluntarily give information about your account (such as our routing number and your account number) to a third party who is seeking to sell you goods or services, and you do not deliver a check physically signed by you to the third party, any demand draft or other debit to your account initiated by the third party to whom you gave the information is deemed authorized even if it differs in amount, frequency or timing from your intentions or agreement with that third party. This provision does not obligate us to honor demand drafts. We may refuse to honor demand drafts without cause or prior notice, even if we have honored similar items previously. We are not under any obligation to verify whether the name and account number shown on the demand draft are consistent. (See *Withdrawals (generally)*, under the *General Terms* section, for additional information.)

You may not deposit demand drafts (items not bearing the maker's signature, but purporting to be authorized by the maker) to an account with us without our prior, express written consent. If you deposit demand drafts with us, you agree that we may withhold a portion of the proceeds of such drafts or other funds in your account or in a reserve account, in an amount that we reasonably believe may be needed to cover future chargebacks, returned items, and/or claims that such drafts were unauthorized. You grant us a security interest in the reserve account. Unless we agree otherwise in writing with you, reserve funds shall not bear interest. Our right to charge your account for returned demand drafts will not be limited to the balance or existence of any reserve, and you agree that the opening and maintenance of a reserve account is not intended to constitute, nor shall it constitute, our sole or exclusive remedy, nor an election of remedy.

Our rights with respect to the reserve, as well as the security interest granted to us, shall survive the termination of this Agreement. We may discontinue accepting demand drafts at any time without cause or prior notice.

You agree that you will not hold us responsible for any loss, damage or other problems resulting from your having used or authorized another to create a demand draft.

**Insufficient Funds** – Checks, withdrawals, automatic transfers, ACH debits, ATM/Visa Check Card transactions, or other items drawn on your account against an insufficient available balance, which is not covered by available overdraft protection (under the terms of an East West Bank overdraft plan), are subject to either payment, which would create an overdraft on your account, or return of the item to the entity from whom it was received.

You agree that we have no liability for returning unpaid items, even if the insufficiency of available funds in your account resulted from our assessing fees against your account. Each item or transaction presented against an insufficient available balance is subject to a fee that will be charged against the account. (See Bank *Fee Schedule*)

You agree to pay us the amount of any overdraft immediately, without notice or demand from us. You agree to cover any service charges resulting from a transaction presented against insufficient available funds. Additionally, you agree to cover any service charges and/or accrued interest that may result from a transaction that overdraws your account.

Each of you is jointly and severally responsible to us for paying any and all overdrafts created by any one of the authorized signers (including your authorized agents and/or attorney-in-fact), irrespective of who signed the check or item creating the overdraft, benefited from the payment, or contributed funds to the account. Honoring of past items against an insufficient available balance does not obligate us to honor them in the future and we will not send prior notice of checks returned. Please note that we may discontinue permitting overdrafts without notice to you. We reserve the right to terminate any account with excessive insufficient funds activity.

**Returned Items/Transactions** – If we are notified that an item you cashed or deposited is being returned unpaid, we may attempt to reclear the item, place a hold on the funds in question, or charge your account for the amount (and any interest earned on it), whether or not the return or notice of non-payment is proper or timely. This also applies to checks drawn on us which are not paid for any reason, and to checks that are returned to us in accordance with any law, regulation or rule (including a clearinghouse rule). We may assess a fee (See Bank *Fee Schedule*) for each returned item and notify you of the return orally, electronically, or in writing.

If we receive an affidavit or a declaration under penalty of perjury stating that an endorsement on an item deposited to your account is forged, that the item contains an alteration, or that there has been a breach of warranty in connection with the item, we may charge the item back against your account or place a hold on the funds pending an investigation, without prior notice to you.

**Check Processing** – We operate an automated check processing system. In order to facilitate the processing of items in a timely and cost-effective manner, you agree that we may rely solely upon magnetic ink character recognition (MICR) to process checks written against your account. This means we may not visually examine each of your checks to determine if they are properly completed and endorsed. Although we may review checks from time to time, you understand that reasonable commercial standards do not require us to do so. As such, you agree to review all statements and checks as soon as you receive them and to notify us immediately of any discrepancy.

**Order of Payments** –We may process your checks, ATM transactions, point-of-sale payments and other transactions in any order we choose. Although we generally pay larger checks first, rather than in the order in which they are presented, we are not obligated to do so, and we may change the order in which we process your transactions without prior notice to you unless otherwise required by law. Paying larger checks and transactions first can result in increased fees. If you want to avoid non-sufficient fund (NSF) charges and the possibility of returned items, you should ensure that your account contains sufficient collected funds for each of your transactions.

18

19

**EXHIBIT C**

**Electronic Presentment/Posting** – We may charge your account on the day that a check or other transaction is presented (or returned) to us directly or electronically for payment. We may charge your account or place a hold on funds at an earlier time if we receive notice that a check or other item deposited to your account is being returned, or if we receive notice that your check or electronic payment (e.g., at a point-of-sale) is being processed for collection. Please note: Some merchants may obtain authorizations in advance for point-of-sale transactions in an amount greater than the final transaction amount. You agree that we may place a hold on sufficient funds to cover the amount of the authorized transaction, pending its final settlement through the system, even if that amount exceeds the actual amount of the transaction. This could affect the balance available to cover other transactions.

**Electronic Imaging of Checks** – Check imaging is a process of capturing, indexing, storing and retrieving electronic images of checks. Imaging systems replace the handling, distribution and storage of checks with electronic images. The images are retained by the Bank for a period of seven years from the date of posting. We may, at our discretion, create an electronic image of a check drawn on or deposited to your account. By using your account you agree to this procedure and authorize us to destroy the original items and checks. You agree to allow any imaged document, or copy thereof, to serve as an original item for any and all purposes, including charging your account or determining the validity of any signature or otherwise.

Upon request by you, we will provide you, without charge, with legible copies of two checks from each account statement. Additional imaged copies of cancelled checks are subject to the applicable service charges. (See Bank *Fee Schedule*) You may request these copies by contacting your branch office. To produce a copy we will need your account number, check number, exact amount of check and the date the check was paid. You agree that if we provide your requested copies within five business days that we will have provided the copies within a reasonable time. If we need more time, we will inform you when the copy will be available.

**Check Truncation** – Certain products may come with or allow you to request check truncation (sometimes referred to as check "safekeeping" or "storage"). Truncated checks and other items will be deemed to be made available to you when your statement is made available. If your account has check truncation your checks will be electronically imaged and these images will be stored free of charge for seven years. We are under no obligation to retain the original items, unless required by law. If your checks are truncated, you can request up to two free photocopies per statement cycle. Additional copies may be requested for a fee. (See Bank *Fee Schedule*) You agree that an electronic image of the check will suffice as a copy.

You agree that your statement, which includes the check/item number, dollar amount and date posted to your account, provides sufficient information to allow you to identify and authenticate any and all transactions, including whether they are altered, forged or otherwise unauthorized. Whether or not you receive your canceled checks, you are required to review your statement and notify us of any errors or discrepancies in the time limit required. (See *Unauthorized Transactions,* under the *Additional Terms and Conditions* section, for specific time frame information.)

**Electronic Redeposit of Returned Checks** – You agree that for items we have previously returned unpaid due to insufficient or uncollected funds, we may, at our discretion, accept checks redeposited electronically by another financial institution. Transactions involving electronically redeposited checks may appear on your statement as an electronic debit, indicating the check number involved. If we accept an electronic image of a check, you agree that the original check may be destroyed.

20

**Checks Bearing Restrictive Notations** – We may pay or accept checks and other items bearing restrictions or notations (e.g., "Void after 90 days", "Paid in full", etc.), whether on the front or the back, in any form or format. Such notations shall have no effect on us, and you agree to assume the risks and losses resulting from our acceptance or payment of items that may not conform with the purportedly restrictive language. You agree we will not be liable for our refusal to honor such restrictions (whether or not we have previously honored or dishonored similar restrictions). You agree to indemnify, defend and hold us harmless from any claimed or alleged loss associated with our acceptance or payment of such items.

**Improper Endorsement Under Regulation CC** – You agree to assume responsibility for any loss resulting from a delay in the return of an item you deposited, cashed, or otherwise negotiated with us, due to endorsements that are not legible because of markings on the back of the item at the time it was presented. You agree to endorse each check within the top 1 ½ inches on the back of the item (when viewed vertically from the trailing edge). Additionally, you agree to assume responsibility for any delay in return caused by the condition of the check arising after issuance until deposit, for example, a payee endorsement that violates Regulation CC placement standards.

**Periodic Statement and Notice Responsibilities** – If we provide you with a statement and/or notice, electronically or otherwise, you agree to inspect your statements and, if included, canceled checks or check images, and/or notices as soon as you receive them and to report any errors, irregularities or unauthorized transactions to us immediately. If you fail to do so, you may become responsible for the losses resulting from such failure.

You assume full responsibility for monitoring and reviewing the activity of your account and the work of your employees, agents and accountants. If you are a business, you agree to have at least two persons review your statements, notices and returned checks, and agree not to entrust the writing of checks and the reconcilement and review of your account statements, checks and notices to the same person without frequent monitoring. We may deny a claim for monetary loss due to forged, altered or unauthorized checks if you fail to follow these procedures. (See *Unauthorized Transactions and Customer Responsibilities and Limit on Time to Assert Claims,* under the *Additional Terms and Conditions* section, for additional information.)

We are not required to send statements on accounts that are "inactive", "dormant", "bad address", or in a default status.

**Unauthorized Transactions** – You are in the best position to discover and report any unauthorized debit to your account. If you discover a forgery, alteration, counterfeit check or other unauthorized withdrawal or debit involving your account, you must promptly notify your branch of account, in writing, of the relevant facts. It is important that you carefully and promptly review all statements and notices we send to you. If you fail to notify us within a reasonable period of time (not exceeding 21 days after your statement date) of an unauthorized signature, alteration, forgery, counterfeit check or other unauthorized debit to your account we may not be responsible for subsequent forgeries or alterations by the same wrongdoer. (See *Customer Responsibilities and Limit on Time to Assert Claims,* under the *Additional Terms and Conditions* section, for additional information. See the *Holds for Uncollected Funds/ Delayed Funds Availability* section for information regarding claims pursuant to a *substitute check,* covered under the "Check 21 Act".)

Without regard to care or lack of care of either you or us, if you do not discover and report an error or an unauthorized signature, alteration, forgery, counterfeit check, or other unauthorized debit to your account within 60 days after the date of your statement or the date the information about the item or transaction is made available to you, whichever is earlier, you are precluded

21

**EXHIBIT C**

from asserting the error or unauthorized transaction against us. (Note: Different notification and liability rules apply to certain electronic fund transfers. See the *Electronic Funds Transfers* section for additional information.)

If you claim a credit or refund because of a forgery, alteration or any other unauthorized withdrawal, you agree to provide us with a declaration containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the claimed loss. You also agree to make a report to the police and to provide us with a copy of the report upon request.

We will have a reasonable period of time to investigate the circumstances surrounding any claimed loss. During our investigation, we will have no obligation to provisionally credit your account, unless otherwise required by law (e.g., in connection with certain consumer electronic funds transfer services).

If, after conducting an investigation, we determine that you are entitled to a credit, the credit shall be limited to the amount withdrawn from the account. This limit shall be reduced, whether in whole or in part, by the percentage of the loss caused by any of the following: (1) any action or omission by you or anyone acting pursuant to your express or implied authority, (2) any action or omission of any third party which we could not have discovered using reasonable and ordinary care; or (3) any action or omission of any third party which could have been prevented by you in the exercise of ordinary care. In no event shall the Bank, or any of its employees, agents, or subcontractors be liable for any special or consequential damages, including, but not limited to, lost profits.

You also agree that we will have no liability for items paid that were forged or altered in a manner such that the fraud could not be reasonably detected by us.

You agree to pursue all rights you may have under any insurance policy covering any loss and to provide us with information regarding coverage. Our liability will be reduced, proportionately in accordance with our responsibility for any loss, by the amount of any insurance proceeds you receive or are entitled to receive for the loss. If we reimburse you for a loss and the loss is covered by insurance, you agree to assign us your rights under the insurance policy to the extent of our reimbursement, in accordance with this provision. You waive all rights of subrogation against us with respect to any insurance policy or bond.

**Positive Pay Fraud Prevention Option** – On certain business products we may make our Positive Pay service available. Positive Pay can be extremely helpful in preventing fraudulent checks from being charged against your account. If your product is offered with the Positive Pay service and if you choose not to use the service, you agree to assume a heightened degree of responsibility for safeguarding your checks, supervising persons who have access to your checks and statements, reviewing all returned checks and statements, and immediately reporting any unauthorized check transactions involving your account. If you do not enroll in the Positive Pay service and a fraudulent check loss occurs despite our exercise of good faith and ordinary care, you agree to assume responsibility for the loss to the extent that it could have been prevented by your use of the service.

**Protecting Your Account** – Your role in preventing misuse of your account(s) and or service(s) is extremely important. You agree to exercise reasonable control over all bank checks, unissued checks, passbooks, certificates, ATM/Visa Check Cards, facsimile signatures, codes and personal identification numbers related to any account(s) and/or service(s) you have with us. It is your responsibility to keep these items safe and secure, and to immediately discover and report to us if they are lost, stolen or otherwise

misused. In addition, if you are an Online Banking customer, please be aware that we are not able to detect if there is spyware or other viruses on your computer, or if your Internet access is not secure, so that it is of necessity your responsibility to ensure that you conduct your online banking transactions from a secure computer. It is highly recommended that Online Banking customers use security programs to protect their computer. If we become aware that your account(s) or service(s) is or may be compromised we may require that you close the account and/or service and, at our discretion, open a new one. If you refuse to close the account or service, we will be released from any liability for subsequent losses due to fraud or misuse. In addition to any other rights we may have, we may deny a claim or loss due to forged, altered or unauthorized signature if you do not properly protect against improper access to your checks, statements and other account information. (See *Unauthorized Transactions* and *Customer Responsibilities and Limit on Time to Assert Claims*, under the *Additional Terms and Conditions* section, for additional information.)

The following are some of the things that you can do to protect your account:

*   Store blank and cancelled checks, deposit and withdrawal slips, and account statements under dual control in a secure, locked location that is accessible only to authorized personnel. Destroy unused deposit slips, checks, receipts, cancelled checks and statements before discarding them. Notify us immediately if any of these items are lost, stolen or missing.

*   Write checks in permanent ink and ensure that all lines are filled completely. Numbers should be legible, and begin on the far left of the line so that additional numbers can not be added. Personally sign your checks using a clear and legible signature, and never give anyone a "blank" pre-signed check.

*   You should not use your account to cash checks for others who are not well known to you. Although we may make funds provisionally available to you and may take steps to determine whether a check will be paid, you are responsible for any loss that occurs if the check is returned to us for any reason (e.g., because it is counterfeit). Our employees cannot promise that checks drawn on or issued by other institutions, including cashier's checks, will be paid.

*   Do not leave outgoing mail in an unlocked collection area or mail box. Deposit it in a locked Postal Service mail box.

*   Do not give any account information or personal identification numbers or codes to callers, even if they claim to be a Bank employee or from a law enforcement agency.

*   Notify us immediately if you do not receive a new check order within 14 business days. Always use tamper resistant check stock, and never print your social security number or driver's license number on your checks.

*   Notify us immediately if any document containing your identification is lost, stolen or missing.

*   Maintain accurate records of your transactions and reconcile your account statements as soon as they are made available to you. When reviewing your statements pay close attention to (1) checks cashed out of sequence, (2) checks made payable to cash, (3) balance discrepancies or unexpected fluctuations, and (4) check numbers that have previously cleared or are for any amount different than originally issued.

22

23

**EXHIBIT C**

- For Online Banking customers, use security programs to protect your computer and to alert you to the existence of spyware or other undesired software programs or viruses, and regularly change your password(s).

**Address Changes** – You agree to notify the branch where your account is held, or any other location as we may designate for notices in our agreements with you, in the event of a change in your address, mailing address, e-mail address or telephone number. Your request will apply to all accounts and or services on which you are an owner, unless you specifically state otherwise. You agree to give us sufficient time to process this change on our records. You authorize us to obtain information on your residence address from the Department of Motor Vehicles and waive your rights under California Vehicle Code 1808.21 or similar applicable state law.

**Mailing/Delivering Statements and Notices** – We may send your statements and notices to any authorized person on your account by mailing or delivering the documents to the last address on file for the account. In some cases, statements and notices may be delivered through electronic communication, as agreed upon by you and us. Notice to any one of you is considered notice to all.

You assume full responsibility for notices, vouchers, checks, items, statements and other documents that are lost, destroyed or stolen while in the mail or in transit to or from you or a third party. You agree to promptly return any checks or other items that do not belong to you.

Statements and notices sent or made available to any of you are deemed to be received by all of you. If we hold them at your request or because you fail to provide us with a current address, they will be deemed delivered to you when they are prepared (for held statements), mailed (for returned mail) or otherwise made available to you.

If a statement and/or notice are returned to us by the Postal Service or other means, for any reason, we may hold subsequent statements and notices of any kind until we receive corrected address information from you.

At our discretion, we may destroy mail that is returned to us or determined to be undeliverable.

You must mail or deliver all notices to us in writing at the branch(es) where you maintain your account(s), or at such other address(es) as we designate. Notices sent elsewhere may be delayed or may not reach the correct office.

**Determination of Account Balance** – When determining an account balance to pay a check or item, we will make our available balance determination any time between presentment of the check for payment and our midnight deadline, and will be required to make only one review of the account balance before making our decision to pay or return the check or item.

**Subaccounts** – For regulatory reporting and reserve purposes, we divide checking accounts into two subaccounts: a checking subaccount and a savings subaccount. If your checking account earns interest, we will pay the same interest rate on both subaccounts. If it does not earn interest, no interest will be paid on either subaccount. In either case, your account will continue to operate, from your perspective, as one account.

We may establish a threshold for the balance maintained in the checking subaccount and may transfer funds periodically from one subaccount to the other to meet that threshold and cover transactions against your account. Your account statements will not reflect the existence of the subaccounts, and our periodic reallocation of funds between subaccounts will not affect your ability to withdraw funds, the interest rate (if any), fees, or other features of

24

your checking account. You agree that we may treat the subaccounts as one and the same account if we receive a levy, subpoena or other legal process regarding either subaccount or your checking account.

**Large Cash Transactions** – Cash transactions are subject to availability of cash, and the limitations of the branch location where the request is being made. You agree, that at our discretion, we may either partially or completely fulfill your cash withdrawal request or the cash withdrawal request of someone seeking to cash a check drawn on your account, by issuing a cashier's check or requiring that you or they go to a specific branch location to obtain the cash.

For large cash transactions, exceeding $10,000, we reserve the right to require advance notification and may require that you or they provide additional security measures (such as an armored car service) and/or deliver the cash to a specified location. In addition, for large cash transactions we reserve the right not to disburse such cash until we have had the opportunity to first contact you to obtain confirmation that the person seeking to receive the cash is in fact authorized to do so and is the person to whom you intended to give the check, and/or to obtain additional identification for the person seeking to obtain the cash, including a bank signature guaranty from the person's own bank.

**Escheat (Transfer) of Dormant Accounts** – If, for an extended period of time (as defined by your applicable state law) there is no activity by you on your account(s) we are required by law to escheat (transfer) the balance of your account to the applicable state agency. If permitted by state law, and to the extent allowable, we may charge your account for costs incurred in delivery of the funds and/or property to the state and may discontinue interest payments on any interest bearing accounts (See Bank *Fee Schedule*).

You can prevent your account from becoming dormant by doing any one of the following within the applicable time period: (1) make a deposit or withdrawal; (2) present passbook or other similar evidence of account for updating; (3) cash an interest check; (4) correspond electronically or in writing with us concerning the account; or (5) otherwise indicate an interest in the account (e.g., by a letter or other record on file with us). We may consider an account inactive even if you maintain another active account with us.

You may reclaim account funds that are turned over to the applicable state by presenting adequate proof of ownership to the state.

For security reasons, we may refuse a withdrawal or transfer from accounts we internally classify as dormant if we cannot reach you in a timely fashion to confirm the authorization.

**Direct Deposit/Preauthorized Withdrawals** – You may authorize others to access your account on a regular basis to make electronic deposits (credits) to your account. For example, you may authorize your employer to electronically deposit your payroll into your account. Certain government benefit programs may also pay you through periodic electronic deposits to your account. If, in connection with a direct deposit plan, we deposit any amount in your account which should have been returned to the originator (usually a government agency) for any reason (e.g., the death of a beneficiary), you authorize us to deduct the amount of our liability to the originator from this account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

You may authorize others to access your account on a recurring basis to make electronic transfers from (or debits to) your account. For example, you may authorize an insurance company to make periodic withdrawals to pay your insurance premiums. Additionally, you may authorize others to make

25

**EXHIBIT C**

electronic transfers from your account on a non-recurring (single entry) basis. For example, some merchants offer you the opportunity to use a check to initiate an electronic payment, and then return the paper check to you. These items are referred to as point of purchase or "POP" transactions.

**Telephone Transfer** – At our discretion, we may accept telephonic instructions from you in connection with your account. Our understanding of the instructions and our records shall be conclusive evidence of the actual instructions given. We are not required to accept instructions or permit withdrawals by telephone, and this does not constitute an agreement by us to do so. Telephone transactions involving certain accounts are also subject to transaction limitations. (See the *Annual Percentage Yield and Account Terms Disclosure*, received at account opening, for additional information regarding transfer restrictions, and the Bank *Fee Schedule* for applicable fee information.)

**Closing an Account** – We reserve the right to close your account at any time with or without cause by giving oral, electronic or written notice to any of you. We also reserve the right to: (1) refuse to open any new account, (2) refuse to accept further deposits to any existing account, (3) discontinue or limit the use of checks drawn on, or ATM/Visa Check Card(s) linked to, any checking or savings account, (4) terminate other account related services such as Online Banking and Bill Payment, and, if applicable, (5) report your name, address, taxpayer identification number (TIN), driver's license number, and date/reason we closed the account to an account verification service, such as Chex Systems, if your account was closed with or without cause. The account verification service may supply this information to others. This may adversely impact your ability to establish an account at any financial institution for up to 5 years from the date of the report. If your account is closed by us, we may issue a single cashier's check for the account balance, jointly payable to all account holders, and may mail or deliver the check to any one of the account holders.

If for any reason we close your account, notification will be delivered to any one of the authorized signers on the account at the last address shown on our records. The notice may advise you to withdraw any part of or the entire amount on deposit by a specified date, may include a check for the account balance (including any interest and less any applicable service charge(s) or federal withholding), and/or may specify a date after which no payment will be made on any check or item presented for payment.

Any authorized signer(s) may close your account at any time, with or without cause. We are not required to provide notice of such closure to the other authorized signers on the account.

We may dishonor any check, item or transaction presented for payment after an account is closed. At our sole discretion, we may honor checks, items and orders presented or occurring after an account is closed if the transaction is guaranteed by us to third parties (e.g., an electronic funds transfer) or you fail to give us a timely stop payment order for any outstanding checks. You remain responsible for such items and transactions, which may be treated as overdrafts.

**Telephone and Electronic Communication Monitoring/Recording** –We may monitor telephone conversations and electronic communications for quality and control purposes. We usually do not record conversations without notice to you.

**Document Retention** – We may store certain or all documents relating to your account and your cash management, credit, investment, insurance, or other relationships with us, in electronic form ("imaging") and may destroy the originals thereof. You agree that documents imaged and stored in accordance with our standard procedures for storing such documents may be relied upon to the same extent as the originals and shall be admissible in any

26

court or other proceedings involving the same. (See *Electronic Imaging of Checks*, under the *Additional Terms and Conditions* section, for additional information regarding check imaging.)

**Release of Account Information** – Our disclosure of consumer information regarding your account(s) and/or transaction(s), and your ability to limit the sharing of certain information, is governed by our Privacy Policy. Please refer to the *East West Family of Companies Privacy Notice for Consumers* for specific information.

**Legal Process** – You agree that we may honor legal process that is served personally, by mail, or by facsimile transmission at any of our offices (including locations other than where the funds, records or property sought is held), even if the law requires personal delivery at the office where your account or records are maintained.

**Death or Adjudication of Incompetency** – You agree to notify us immediately of the death or court-declared incompetence of any owner, authorized signer, or designated beneficiary on your account. You agree that we may disregard any notice of incompetency unless the accountholder has been declared incompetent by a court of appropriate jurisdiction and we receive written notice and instructions from the court regarding the account. We may also freeze, offset, refuse and/or reverse deposits and transactions (e.g., governmental or retirement benefit payments payable to the deceased) if an owner dies or is adjudicated incompetent. You also agree that we will be given a reasonable opportunity to act on any such notice.

Upon the death of any owner of the account, ownership of the deceased owner's share will pass based on the type of account. Under certain circumstances, payment from the account may be made to the heirs or personal representative of a deceased party. We may require letters testamentary or other appropriate documentation, duly issued and received by us to consider payment to such representatives. (See the *Account Ownership* section for additional information.)

If we have any question as to the ownership of funds or the amount of funds that belong to any person upon the death of an owner, we may freeze all or part of the account, pending receipt of proof (satisfactory to us) of each persons right to the funds. Even with this knowledge, for 10 days after the date of death, we may pay checks drawn on or before that date, unless a stop payment is ordered or an adverse claim is made by a person claiming an interest in the account. Additionally, we may off-set, refuse and/or reverse deposits and transactions (e.g., government or retirement benefit payments payable to a deceased account holder). (See *Disputes*, under the *Additional Terms and Conditions* section, for additional information.)

**Bank Policies and Procedures** – Any internal policies and procedures that we may maintain in excess of reasonable commercial standards and general banking usage are solely for our own benefit and shall not impose a higher standard of care then otherwise would apply in their absence.

**Set-Off and Security Interest** – You hereby grant us a security interest in all accounts at our Bank and all property in our possession as collateral for all indebtedness and amounts owned by you to us from time to time, whether or not applicable loan or other documents refer to this security interest.

You agree that we may set-off funds in all accounts maintained by you with us (or any affiliate of ours) against any due and payable debt owed to us now or in the future, without prior notice and at any time, to the full extent of the law, including, but not limited to, agreeing that we may use the account to pay the debt even if the withdrawal results in an interest penalty or dishonor of subsequent checks.

27

**EXHIBIT C**

In the case of a joint account, tenancy in common, or partnership, each of you authorize us to exercise set-off and enforce our security interest in the account, to satisfy any one of your individual obligations, even though only one of you is the defaulting debtor and irrespective of who signed the check creating the overdraft, who benefited from the overdraft, or who contributed funds to the account. Additionally, each of you agrees that we may use the funds in your individual account(s) to satisfy obligations of the account.

In the event of the death of any joint account holder, the rights of survivorship of the remaining account holder(s) is expressly subject to our right of set-off and consensual security interest.

Our right to set-off and consensual security interest in this account does not apply to this account if: (1) it is an IRA or tax-deferred retirement account; (2) the debt is created by a consumer credit transaction under a credit card plan; or (3) the debtor's right of withdrawal only arises in a representative capacity.

**Governing Law** – This Agreement shall be governed by and construed in accordance with all applicable federal laws and all applicable substantive laws of the state where your account is held. If any terms of this Agreement come into conflict with applicable law, those terms will be nullified to the extent that they are prohibited by such law, and the applicable law will govern.

**Contract Language** – English is the language that governs our relationship with you. Although we may translate our agreements, disclosures, advertisements, etc. into another language for you, unless we are otherwise required by law, if there is a discrepancy between our English language materials and our materials in another language the English language version governs.

**Compliance** – You agree not to violate the laws of the United States, including without limitation the economic sanctions administered by the U.S. Treasury's Office of Foreign Asset Control. You agree to comply with applicable law. You may not use your account or any account-related service to process Internet gambling transactions or conduct any activity that would violate applicable law. If we are uncertain regarding the legality of any transaction, we may refuse the transaction or freeze the amount in question while we investigate the matter. You agree to indemnify, defend and hold us harmless from every action, proceeding, claim, loss, cost and expense (including attorney's fees) suffered or incurred by us due to any U.S. or foreign government entity seizing, freezing or otherwise asserting or causing us to assert control over any account or funds in an account of yours (or ours) when purportedly caused by or arising out of your action or inaction. This will apply whether or not such action is ultimately determined to be authorized under the laws of the U.S. or its territories, or of any foreign jurisdiction. We are not required to inquire or determine the authority of any action taken by the U.S. or foreign government entity prior to acceding to any legal process initiated by it.

**Limiting Our Liability** – Subject to any contrary provisions of the California Commercial Code, and other applicable laws and regulations that can not be waived or modified by agreement of the parties, we are not responsible for any loss, expense or liability arising out of deposit, funds transfer, safe deposit box, or other relationships contemplated by this agreement for:

- any delay, inaccuracy, mis-execution, events, or causes not within our reasonable control, including losses or delays resulting from materials sent through U.S. mail or other vendors;

- failure of others to accept payment;

28

- subsequent wrongful dishonor resulting from our acts or failure to act; and

- accidents, strikes, fire, flood, war, terrorism, riot, equipment failure, acts of third parties or acts of God.

In addition, we shall be excused from failing to accept, execute or settle with respect to a funds transfer request if to do so would result in the Bank having exceeded any limitation upon its intra-day net funds position established pursuant to a present or future risk control program of the Federal Reserve, or any rule or regulation of any other U.S. or state governmental regulatory authority.

Our maximum liability will never exceed the amount of actual damages proven by you. In the case of funds transfers, we make no warranty that the intended recipient of your funds transfer will receive the funds transferred. Our liability will be reduced (1) by the amount of loss that is caused by your own negligence or lack of care; (2) to the extent that damages could not have been avoided by our exercise of ordinary care; and (3) by any loss recovery that you obtain from third parties (apportioned in accordance with the provision). We will not be liable for any loss that is caused in part by your negligence if we acted with ordinary care. Unless otherwise required by law, we will not be liable for incidental, special or consequential damages, including, without limitation, loss of profits and/or opportunity, loss or damage from subsequent wrongful dishonor resulting from our acts or omissions pursuant to this Agreement, or for attorney's fees (including in-house attorney fees) incurred by you, even if we were aware of the possibility of such damages.

You agree to pursue all rights you may have under any insurance policy or bond you maintain in connection with any loss associated with your account and to provide us with information regarding coverage. Our liability will be reduced by the amount of any insurance or bond proceeds you receive or are entitled to receive for the loss. If we reimburse you for a loss and the loss is covered by insurance or by a bond, you agree to assign us your rights under the insurance policy or bond to the extent of our reimbursement, in accordance with this provision. You hereby waive all rights of subrogation against us with respect to any insurance policy or bond.

**Customer Responsibilities and Limit on Time to Assert Claims** – You agree to exercise reasonable control over all bank checks, unissued checks, certificates of deposit, passbooks, check cards (of any kind), personal identification numbers (PINs), ATM access cards and any other item, instrument, or card related to your account. It is your responsibility to keep any of the above safe and secure and to promptly discover if any of them are missing in time to prevent misuse. You agree to notify us immediately if any of these items may be lost, stolen or used without your authorization, or if you believe there is an error in your periodic statement or that an unauthorized transaction has occurred or may occur on your account. You acknowledge that your account may have to be closed if any of these events occurs. (See *Unauthorized Transactions* and *Protecting Your Account*, under the *Additional Terms and Conditions* section, for additional information.)

If you are an Online Banking customer, please be aware that we are not able to detect if there is spyware or other viruses on your computer or if your Internet access is not secure, so that it is of necessity your responsibility to ensure that you conduct your online banking transactions from a secure computer. There are computer viruses that exist that may enter your computer without your knowledge and also without your knowledge send to a third party information about your account gained from your computer, such as for example keystrokes of your account number and passwords. It is highly recommended that Online Banking customers use security programs to protect their computer and alert them to any viruses, and that they regularly change their password(s).

29

**EXHIBIT C**

You agree to review your statements, checks and other records sent or made available to you with reasonable promptness, which you agree does not exceed 21 days after your statement date or the date the information is otherwise made available to you. If you do not receive your statement by the date you usually receive it, call us at once. You assume full responsibility for monitoring and reviewing the activity of your account and the work of your employees, agents, accountants, whether or not you actually receive the statements, and whether or not the statements contain the items bearing an unauthorized signature or alteration. (See *Periodic Statement and Notice Responsibilities*, under the *Additional Terms and Conditions* section, for additional information.)

You must notify us as soon as possible if you believe there is an error, forgery, alteration, unauthorized transaction or other problem (individually and/or collectively referred to herein as "problem") related to your account. You agree that 21 days after we have mailed the statement to the mailing address you have provided to us, or otherwise made the information available to you, is a reasonable amount of time for you to review your account activity and report any problem related to your account and we will not be responsible for any subsequent unauthorized activity or other problems that might have been corrected if you had reviewed your statement and reported any problems within such period. In addition, you agree not to assert a claim concerning any problem unless you have notified us of such problem within 60 days after we mailed you the statement or otherwise made the information available to you, and to exhaust all of your remedies against your insurance or bonding company before filing a claim against us for unauthorized transactions in which your employee has been involved. You agree that any recovery you receive will be applied toward the loss you claim against us. (See *Limiting Our Liability*, under the *Additional Terms and Conditions* section, for additional information.)

Notwithstanding the foregoing, and in addition to any rights we may have under applicable law, if you fail to discover and report to us any problem related to your account(s) within 60 days of the date the statement on which such problem is reflected is mailed or the information is otherwise made available to you (or other shorter period provided by law), you agree for all purposes to accept the balance indicated in our records as correct and relieve us of further responsibility or liability to you with respect to such problem. You are precluded from asserting, and waive any right to assert, any such problem against us in any proceeding including, without limit, arbitration or court proceeding, after such period.

Except for shorter periods provided under this Agreement or by applicable law, any action or proceeding brought by you to enforce any obligation, duty, or right arising under or relating to this Agreement or otherwise relating to your account(s) or service(s) provided to you hereunder, must be commenced within 1 year after the cause of action occurs.

You agree that you will not deposit any item into your account, which does not bear either a true original signature of the person on whose account the item is drawn or an authorized mechanical reproduction of that person's signature, without our prior express written consent, which may be withheld at our discretion. If we do consent to deposit of such items such consent may be withdrawn at any time without cause or prior notice.

**Disputes** – Sometimes we are brought into the middle of a dispute among the account holders or authorized signers over an account or a dispute between account holders or authorized signers claiming to be owners of or the person entitled to control or withdraw funds from a deposit account. When we know or suspect that this is happening, we may choose any of the following courses of action:

- We may ignore instructions (such as an instruction by one account holder or authorized signer not to honor items or other withdrawal orders by another account holder or authorized signer) for the account unless all account holders or authorized signers sign the withdrawal, deposit, check or instructions;

- We may freeze the account and withhold payment from all of you until we receive written proof (in a form and substance satisfactory to us) of your right and authority over the account and its funds;

- We can require that all account holders or authorized signers sign any instruction, check, item or other withdrawal order even though the signature card for the account does not require all those signatures to authorize a withdrawal. If your account is a corporate, limited liability company, partnership or other entity account, we may require specific signatures or other authorization from directors, partners, managers or owners of the entity or, if a power of attorney account, we may require approval of the principal, or if a trust account, we may require approval of other trustees or the beneficiary(ies);

- We can return checks or other items, marked "Refer to Maker" (or similar language), or we may "restrict" the account, until satisfactory evidence has been received by us confirming your right or authority over the account or that the dispute has been resolved, or we can close the account and issue a single cashier's check for the account balance jointly payable to all account holders, and we may mail or deliver that check to any one of the account holders;

- We may request instructions from a court of competent jurisdiction at your expense regarding the ownership or control of the account;

- At our discretion and without liability to us, we may or may not continue to honor checks, withdrawals or other instructions given to us by any individual(s) with actual, implied or apparent authority on our records to access the account;

- We can deposit the account balance with the clerk of a court in connection with an interpleader action we bring or in response to a court action naming us as a party. The court would then decide who is entitled to the funds. If we make an interpleader deposit with the court, the court may be asked to award us our costs, including attorney's fees (including in-house attorney fees), for the lawsuit. The law provides that this award is payable out of the deposit;

- We can take any other action we believe to be reasonable under the circumstances even if the action is not listed here. These actions include, but are not limited to, any specific procedures that may be applicable under a law or regulation;

- The existence of the rights set forth above shall not impose an obligation on us to assert such rights or to deny a transaction.

In no event will we be liable for any delay or refusal to follow instructions that occur as a result of a dispute or uncertainty over the ownership or control of your account. You agree not to hold us responsible for, and to indemnify and defend us against, damages that may result from any decisions we make in this regard as long as our decision and action (or inaction) is made and taken in good faith.

**Other Agreements** – You may have another agreement with us which, by its terms, supersedes this Agreement in whole or in part. For example, if you are a governmental unit or a business customer, certain provisions of your other

30

31

# EXHIBIT C

agreements with us (e.g., involving cash management services) may supersede some of the terms of this Agreement, to the extent that they are inconsistent.

**Severability** – If any of the provisions of this Agreement are determined to be void or unenforceable, the remainder of this Agreement shall remain in full force and effect.

**Waiver** – Waiver of any of the provisions of this Agreement will not constitute a waiver of other provisions.

**Non-Assignability** – This Agreement is made exclusively for your and our benefit, and you may not assign this Agreement without our written consent. As such, no other person shall have any right against you or us hereunder.

## DISPUTE RESOLUTION

MAINTAINING GOOD RELATIONSHIPS WITH OUR CUSTOMERS IS IMPORTANT TO US, SO WE ASK THAT YOU CONTACT US IMMEDIATELY IF YOU HAVE A PROBLEM WITH YOUR ACCOUNT OR THE SERVICE WE PROVIDE. OFTEN, A CALL OR A VISIT TO THE BRANCH WILL RESOLVE THE MATTER QUICKLY. HOWEVER, IF YOU AND WE ARE NOT ABLE TO RESOLVE OUR DIFFERENCES INFORMALLY, THEN YOU AGREE BY OPENING OR MAINTAINING A DEPOSIT ACCOUNT WITH US, OR BY ACCEPTING A SERVICE FROM US, THAT ANY DISPUTE BETWEEN YOU AND US, WILL BE SETTLED, AT YOUR OR OUR OPTION, AS FOLLOWS:

MEDIATION – YOU AND WE EACH AGREE THAT IN ORDER TO ATTEMPT TO SETTLE DISPUTES IN AN EXPEDITIOUS, AMICABLE, AND COST EFFECTIVE WAY, YOU AND WE WILL, PRIOR TO FILING ANY LEGAL ACTIONS, FIRST CONFER AND ATTEMPT TO RESOLVE THE DISPUTE WITHOUT LITIGATION. IN SUCH CONNECTION, YOU WILL, AT LEAST 30 DAYS BEFORE FILING ANY LITIGATION ABOUT WHETHER WE HAVE HONORED OUR CONTRACTUAL AND LEGAL OBLIGATIONS TO YOU RELATING TO A DEPOSIT ACCOUNT WITH US OR FOR SERVICES DESCRIBED IN THIS AGREEMENT, SUBMIT THE DISPUTE IN WRITING TO OUR CORPORATE SECRETARY WHO SHALL ATTEMPT TO RESOLVE THE DISPUTE IN AN EXPEDITIOUS AND MUTUALLY SATISFACTORY MANNER. IF THIS IS NOT SUCCESSFUL, AND IF REQUESTED IN WRITING BY YOU OR US PRIOR TO THE END OF THIS 30 DAY PERIOD, THE DISPUTE SHALL BE SUBMITTED TO MEDIATION BY A MEDIATOR SELECTED AND PAID FOR BY US FOR A PERIOD OF 60 DAYS. IF NO RESOLUTION IS REACHED, EITHER YOU OR WE MAY THEN FILE A LAWSUIT. THIS PROCESS OF A PERIOD OF CONFERRING AND MEDIATION DOES NOT APPLY TO INTERPLEADER ACTIONS, TO CLAIMS MADE IN DEFENSE TO OR AS COUNTERCLAIMS WITH RESPECT TO A LEGAL ACTION ALREADY FILED BY THE OTHER, OR TO CLAIMS FOR REIMBURSEMENT OF OVERDRAFTS OR TO INDEMNIFY OR HOLD US HARMLESS FOR MATTERS RELATING TO YOUR ACCOUNT.

EXCEPTIONS – THIS DISPUTE SECTION WILL NOT BE DEEMED TO LIMIT OR CONSTRAIN OUR RIGHT TO SET OFF, TO OBTAIN PROVISIONAL OR ANCILLARY REMEDIES, TO INTERPLEAD FUNDS IN THE EVENT OF A DISPUTE, TO EXERCISE ANY SECURITY INTEREST OR LIEN WE MAY HOLD IN PROPERTY, OR TO COMPLY WITH LEGAL PROCESS INVOLVING YOUR ACCOUNTS OR OTHER PROPERTY.

32

ARBITRATION – IF A DISPUTE INVOLVING $25,000 OR MORE ARISES BETWEEN US WITH RESPECT TO THIS AGREEMENT, ITS ENFORCEMENT OR OUR SERVICES, EITHER OF US MAY REQUIRE THAT IT BE SETTLED BY BINDING ARBITRATION, ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION, IN ACCORDANCE WITH TITLE 9 OF THE UNITED STATES CODE (FEDERAL ARBITRATION ACT) AND THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. IF LITIGATION IS COMMENCED BY EITHER PARTY, DEMAND FOR ARBITRATION MUST BE MADE WITHIN 30 DAYS OF SERVICE OF THE COMPLAINT ON THE PARTY DEMANDING ARBITRATION. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE ARBITRATION RULES PERMIT YOU TO REQUEST DEFERRAL OR REDUCTION OF THE ADMINISTRATIVE FEES OF ARBITRATION IF PAYING THEM WOULD CAUSE YOU A HARDSHIP. YOU AND WE AGREE THAT THE ARBITRATOR(S) MAY CONDUCT SOME OR ALL OF THE ARBITRATION BY TELEPHONE IF THE ARBITRATOR(S) FINDS THAT DOING SO IS APPROPRIATE GIVEN THE LOCATION OF THE PARTIES AND THE AMOUNT IN QUESTION.

A SINGLE ARBITRATOR WILL BE CHOSEN FOR ANY DISPUTE THAT INVOLVES A TOTAL CLAIM OF LESS THAN $200,000. IN SUCH A CASE, THE ARBITRATOR WILL ONLY HAVE THE AUTHORITY TO AWARD UP TO $200,000, INCLUDING ALL DAMAGES AND COSTS OF EVERY KIND. A SUBMISSION TO A SINGLE ARBITRATOR WILL BE DEEMED A WAIVER OF ANY RIGHT TO RECOVER MORE THAN THAT AMOUNT. A DISPUTE INVOLVING TOTAL CLAIMS EXCEEDING THAT AMOUNT WILL BE DECIDED BY A MAJORITY VOTE OF A PANEL OF THREE ARBITRATORS. THE SOLE ARBITRATOR AND THE PRESIDING ARBITRATOR IN AN ARBITRATION PANEL WILL BE A PRACTICING ATTORNEY OR A RETIRED JUDGE.

YOU UNDERSTAND AND AGREE THAT, EXCEPT AS SET FORTH ABOVE, YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, OR A TRIAL BEFORE A JUDGE IN A PUBLIC COURT. YOU ALSO UNDERSTAND THAT THE AWARD OF THE ARBITRATOR(S) MAY BE SUBJECT ONLY TO LIMITED REVIEW BY A SUPERIOR COURT. THESE ASPECTS OF ARBITRATION APPLY TO US AS WELL AS TO YOU.

FOR MATTERS THAT ARE NOT SUBJECT TO ARBITRATION, AND IN THE EVENT THE RIGHT TO REQUIRE ARBITRATION IS HELD UNENFORCEABLE FOR ANY REASON, YOU AND WE AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO A TRIAL BEFORE A JURY IN CONNECTION WITH ANY DISPUTE RELATED TO THIS AGREEMENT OR THE SERVICES COVERED BY IT, IF SUCH WAIVER IS ALLOWED BY LAW. THIS INCLUDES, TO THE EXTENT PERMITTED BY LAW, ANY CLAIM BY US OR BY YOU, CLAIMS BROUGHT BY YOU AS A CLASS REPRESENTATIVE ON BEHALF OF OTHERS, AND CLAIMS BY THIRD PARTIES ON YOUR BEHALF.

JUDICIAL REFERENCE – IF YOUR ACCOUNT IS MAINTAINED IN CALIFORNIA, THIS PROVISION RATHER THAN THE ABOVE ARBITRATION PROVISION SHALL APPLY IN THE EVENT OF A DISPUTE RELATED TO YOUR ACCOUNT. IF A DISPUTE INVOLVING $25,000 OR MORE ARISES BETWEEN US WITH RESPECT TO THIS AGREEMENT, ITS ENFORCEMENT OR OUR SERVICES, EITHER OF US MAY REQUIRE THAT IT BE

33

# EXHIBIT C

RESOLVED BY JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE, SECTIONS 638, ET SEQ. THE REFEREE SHALL BE A RETIRED JUDGE, AGREED UPON BY THE PARTIES, FROM EITHER THE AMERICAN ARBITRATION ASSOCIATION (AAA) OR JUDICIAL ARBITRATION AND MEDIATION SERVICE, INC. (JAMS). IF YOU AND WE CANNOT AGREE ON THE REFEREE, THE PARTY WHO INITIALLY SELECTED THE REFERENCE PROCEDURE SHALL REQUEST A PANEL OF TEN RETIRED JUDGES FROM EITHER AAA OR JAMS, AND THE COURT SHALL SELECT THE REFEREE FROM THAT PANEL. THE COSTS OF THE REFERENCE PROCEDURE, INCLUDING THE FEE FOR THE COURT REPORTER, SHALL BE BORNE EQUALLY BY ALL PARTIES AS THE COSTS ARE INCURRED. THE REFEREE SHALL HEAR ALL PRE-TRIAL AND POST-TRIAL MATTERS, INCLUDING REQUESTS FOR EQUITABLE RELIEF; PREPARE AN AWARD WITH WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW; AND APPORTION COSTS AS APPROPRIATE. JUDGMENT UPON THE AWARD SHALL BE ENTERED IN THE COURT IN WHICH SUCH PROCEEDING WAS COMMENCED AND ALL PARTIES SHALL HAVE FULL RIGHTS OF APPEAL. VENUE FOR ANY ACTION BROUGHT IN ACCORDANCE WITH THIS PROVISION SHALL BE IN STATE OF CALIFORNIA.

LIMITATION ON TIME TO SUE / ARBITRATE – UNLESS OTHERWISE REQUIRED BY LAW, AN ACTION OR PROCEEDING BY YOU TO ENFORCE AN OBLIGATION, DUTY OR RIGHT ARISING UNDER THIS AGREEMENT OR BY LAW WITH RESPECT TO YOUR ACCOUNT OR ANY ACCOUNT SERVICE MUST BE COMMENCED WITHIN ONE YEAR (TWO YEARS FOR TEXAS ACCOUNTS) AFTER THE CAUSE OF ACTION ACCRUES.

**HOLDS FOR UNCOLLECTED FUNDS/DELAYED FUNDS AVAILABILITY**

**Funds Availability** – The information below explains how we determine when funds deposited to your account will be available for withdrawal.

**Ability to Withdraw Funds** – Our policy is to make funds from your deposits available to you on the first business day after the day we receive your deposit. Electronic direct deposits will be available on the day we receive the deposit. Once they are available, you can withdraw the funds in cash and we will use the funds to pay checks that you have written.

For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit in person at one of our branch locations before the close of business on a business day that we are open, we will consider that day to be the day of your deposit

NOTE:
    Generally, our close of business is 5 p.m. (local time zone), Monday through Friday, however most of our locations close at 6 p.m. (local time zone) on Friday. (Note: These times may vary by location.)

If you make a deposit into one of our automated teller machines before 3:00 p.m. (local time zone) on a business day we are open, we may consider that day to be the day of deposit. However, if you make any of the above mentioned deposits after the cut-off time or on a day we are not open, we will consider that the deposit was made on the next business day we are open.

34

Longer Delays May Apply – In some cases, we will not make all of the funds that you deposit by check available to you on the first business day after the day of your deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. However, the first $100 of your deposit will be available on the first business day.

If we are not going to make all of the funds from your deposit available on the first business day, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice by the day after we receive your deposit.

If you will need the funds from a deposit right away, you should ask us when the funds will be available.

In addition, funds you deposit by check may be delayed for a longer period under the following circumstances:

• We believe a check you deposit will not be paid.

• You deposit checks totaling more than $5,000 on any one day.

• You redeposit a check that has been returned unpaid.

• You have overdrawn your account repeatedly in the last six months.

• There is an emergency, such as failure of communications or computer equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

**Special Rules for New Accounts** – If you are a new customer, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers and the first $5,000 of a day's total deposits of cashier's, certified, teller's, traveler's and federal, state and local government checks, will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,000 will be available on the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of your deposit.

Funds from all other check deposits will be available on the ninth business day after the day of your deposit.

NOTE:
    The forgoing rules do not apply to deposits of foreign items (items drawn on or payable through or at an office of a depository institution not located in the U.S.).

**Holds on Other Funds (Check Cashing/Other Account)** – If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your

35

# EXHIBIT C

account. Those funds will be available at the time the funds from the check we cashed would have been available if you had deposited it.

If we accept for deposit a check that is drawn on another bank we may decide to make funds from the deposit available for withdrawal immediately, but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the end of the hold period which would have applied to the check you deposited.

Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for checks you deposit that are returned unpaid to East West Bank for any reason.

### Substitute Checks and Your Rights

You agree not to deposit substitute checks, as described below, or checks bearing a substitute check legal equivalence statement ("*This is a legal copy . . .*") to your account without our prior written consent. Unless we agree otherwise in writing, our acceptance of such checks shall not obligate us to accept such items at a later time, and we may cease doing so without prior notice. If we approve the deposit of substitute checks, you agree to indemnify, defend and hold us harmless from all losses, costs, claims, actions, proceedings and attorney's fees that we incur as a result of such checks, including without limitation, any indemnity or warranty claim that is made against us because: (1) the check fails to meet the requirements for legal equivalence, (2) a claimant makes a duplicate payment based on the original check, the substitute check, or a paper or electronic copy of either; or (3) a loss is incurred due to the receipt of the substitute check rather than the original check. Upon our request, you agree to provide us promptly with the original check or a copy that accurately reflects all of the information on the front and back of the original check when it was truncated.

You agree not to issue checks with features or marks that obscure, alter or impair information on the front or back of a check or that otherwise prevents us or another bank from capturing such information during automated check processing.

The following notice applies to consumer accounts and supersedes, where inconsistent, other terms in this agreement with respect to substitute checks.

### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other laws with respect to those transactions.

### What are my rights regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this

36

procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other laws.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) no later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

### How do I make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us as follows:

**You May Direct Calls and Letters To:**

East West Bank
Branch Operations Department
9300 Flair Drive, 4th Floor
El Monte, CA 91731

Customer Service Center at (888) 895-5650

You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

**Your claim must include:**

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);

- An estimate of the amount of your loss;

- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and

- A copy of the substitute check and/or the following information to help us identify the substitute check: your name, your account number, the check number, the date the check was written, the date the check was paid, and the name of the person to whom you wrote the check.

### WITHHOLDING OF INCOME TAX

Unless you are exempt under federal law, we are required to withhold a portion of your taxable interest and certain other payments (this is referred to as backup withholding) if: (1) you fail to supply us, under penalties of perjury, with your correct taxpayer identification number (TIN); (2) you fail

37

EXHIBIT C

to provide us with the required certified information; (3) the IRS instructs us to withhold; or (4) the IRS notifies you that you are subject to backup withholding. You must provide your TIN whether or not you are required to file a tax return. You also must certify that you are not subject to backup withholding.

We may report interest and other payments to you to the Internal Revenue Service (IRS), along with your TIN.

We may refuse to open, and we may close, any account for which you do not provide a certified TIN, even if you are exempt from backup withholding and information reporting. To avoid possible erroneous backup withholding, an exempt payee should furnish its TIN and indicate on the signature card that it is exempt.

A non-resident alien or foreign entity not subject to information reporting must certify its exempt status by completing an appropriate IRS certification form (e.g., W-8 BEN). Non-resident aliens may be required to certify their exempt status every three years (or earlier upon request) to avoid backup withholding.

You may be subject to civil and criminal penalties if you fail to provide us with a correct TIN or falsify information with respect to withholding. For additional information on interest reporting and withholding, contact your tax advisor or the IRS.

## ELECTRONIC FUNDS TRANSFERS

The following terms apply to electronic fund transfers governed by the Electronic Fund Transfer Act (e.g., consumer ATM, point-of-sale and ACH transfers). It also applies to ATM and Check Cards issued for business and other non-personal accounts. Any authorized signer on an account may apply for electronic fund transfer services on behalf of all authorized signers. Once an electronic fund transfer service is established, any authorized signer on your account may act alone in conducting electronic fund transactions, regardless of the number of required signers indicated on the account's signature card.

### Services

**Automated Teller Machine ("ATM") Card/Check Card** – You can perform the following transactions with your ATM and/or Visa® Check Card ("Card"), depending on the accounts and services associated with your Card:

- Withdraw cash from your checking or savings account;

- Make deposits to your checking or savings account at one of our ATMs;

- Transfer funds between your checking and savings accounts;

- Pay for purchases at places that have agreed to accept our Card; and

- Obtain account balance information.*

**NOTE:**
    * Balance information may not reflect recent transactions, and may include funds that are not available for immediate withdrawal.

Some of these services may not be available at all terminals, and all deposits and payments are subject to later verification by us. If you have more than one account with us, some of these services may not be available for each account.

Your Card can be used at terminals that are part of the networks in which we participate (please see your Card for the logos of the networks in which we participate). If you decide you do not want to use your Card, destroy it at once by cutting it in half and notify us in writing.

Your Card cannot be used to transfer money into or out of your account without a personal identification number ("PIN") at ATMs and most POS terminals. You may be asked to sign a sales slip or provide identification, rather than enter your PIN, for certain Check Card transactions. At some merchants, such as gas stations, you may not be required to sign your name or enter your PIN for a Check Card transaction; however, you may be required to enter your ZIP code or another identifier.

**Transaction Holds** – When you use your Card to pay for goods or services, certain merchants may ask us to authorize the transaction in advance and may estimate its final value. When we authorize the transaction, we commit to make the requested funds available when the transaction finally settles and may place a temporary hold on your account for the amount indicated by the merchant. Until the transaction finally settles or we determine that it is unlikely to be processed, the funds subject to the hold will not be available to you for other purposes. We will only charge your account for the correct amount of the final transaction, however, and we will release any excess amount when the transaction finally settles.

**Refunds on Purchases** – Cash refunds will not be made to you for purchases made with your Debit Card. If a merchant gives you a credit for merchandise returns or adjustments, it may do so by processing a credit adjustment, which we will apply as a credit to your checking account.

**Foreign Transactions** – If you conduct a transaction in a currency other than U.S. dollars, the merchant, network or card association that processes the transaction may convert any related debit or credit into U.S. dollars in accordance with its then current policies. Visa currently uses a conversion rate that is either: (1) selected from a range of rates available in the wholesale currency markets on or one day prior to its central or transaction processing date (note: this rate may be different from the rate Visa itself receives), or (2) the government-mandated rate. The conversion rate may be different from the rate in effect on the date of your transaction and the date it is posted to your account. We may impose a charge equal to 1% of the transaction amount (including credits and reversals) for each transaction that you conduct outside the United States or in a foreign currency. This charge is in addition to the Bank's usual ATM fee.

**Preauthorized/Automatic Transfers** – Pre-authorized electronic fund transfers may be made to your account from a third party (e.g., Social Security, a pension fund or your employer) or from your account to a third party (e.g., recurring mortgage or insurance payments through the Automated Clearing House). Pre-authorized transfers do not include: (1) transactions initiated by check, draft or similar paper instrument, (2) transfers to or from business or other non-personal accounts, (3) individual transfers we initiate under an agreement with you, but without your specific request (e.g., automatic savings and automatic loan payments to us from your account), or (4) transfers initiated by telephone. Please note, if federal recurring or other electronic payments are made into your account, the payments may be affected by a change in account status or transfer (e.g., to another office). If you plan to transfer your account or change its status, please speak with us in advance about the impact the change may have on your electronic fund transfer services.

**EXHIBIT C**

**Electronic Check Conversion** – You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases or pay bills.

**Preauthorized Automated Telephone Transfer Service** – This service allows you to transfer funds among your designated East West Bank checking and savings accounts.

**Online (Internet) Banking Transactions** -- This service allows you to:

- Transfer funds among your designated East West Bank checking and savings accounts.

- Initiate online bill payment transactions.

(Please refer to the Bank's Online Banking Agreement for additional information.)

### Limitations on Frequency and Type of Transactions

- If your account is subject to transaction limitations as described in this Agreement, you agree not to initiate transactions in excess of the limitations established for your account.

- You can use your East West Bank ATM/Visa Check Card at any automated teller machine located at an East West Bank branch, or at an authorized third party ATM or point-of-sale terminal. The reverse side of your ATM/Visa Check Card indicates the logos of participating networks at the time the card was issued to you. You may call us for a current list of participating networks.

- We reserve the right to reject any Internet gaming, gambling, lottery, or similar transaction. We also reserve the right to reject any transaction that we reasonably believe to be unlawful or connected with a transaction we believe to be unlawful.

### Limitations on Dollar Amounts of Transactions

**ATM Card Transactions** – Dollar amount limitations are as follows:

- Withdrawals and/or transfers using an East West Bank ATM Card are limited to $300 per day (including surcharges), or your available balance, whichever is less.

- Purchases of goods or services using an East West Bank ATM Card at point-of-sale terminals (terminals for which you entered a PIN) at authorized merchants are limited to $1,000 per day, or your available balance, whichever is less.

**Visa Check Card Transactions** – Dollar amount limitations are as follows:

- ATM Withdrawals and/or transfers using an East West Bank Visa Check Card are limited to $500 per day (including surcharges), or your available balance, whichever is less.

- Purchases of goods or services using an East West Bank Visa Check Card at point-of-sale terminals at authorized merchants are limited to $1,000 per day or your available balance, whichever is less.

- Purchases of goods or services using an East West Bank Visa Check Card at authorized merchants are limited to $1,000 per day or your available balance, whichever is less.

40

- Cash advances at authorized financial institutions are limited to $300 per day or your available balance, whichever is less.

**NOTE:**
At your request and subject to our approval, higher limits may be granted. Such limits will be disclosed at the time the limits are established. From time to time the Bank may discontinue a specific ATM or Visa Check Card product for new customers. This EFT disclosure also applies to discontinued ATM or Visa Check Cards where existing customers are allowed to continue using their cards (including re-issued cards) under the terms and limits of that discontinued product.

**NOTE:**
**Massachusetts Accounts Only:** You have the option to limit your withdrawals and purchases to $50 per Bank business day provided you make a written request to the Bank. You also have the option to limit access by electronic means to one or more of your accounts.

**Preauthorized Automated Telephone Transfer Service Transactions** – Dollar amount limitations are as follows:

- Transfers between your designated East West Bank checking and savings accounts are limited to your available balance.

**Online Banking Service Transactions** – Dollar amount limitations are as follows:

- Transfers between your designated East West Bank checking and savings accounts are limited to your available balance.

- Online bill payments are limited to your available balance.

**Electronic Check Conversion Transactions** -- Dollar amount limitations are as follows:

- Electronic funds withdrawals from your checking account that are initiated by a merchant or others using scanned information from you, are limited to your available balance.

**NOTE:**
Purchases and cash withdrawals may be subject to authorization by us or, if applicable, by VISA or another participating authorization center, and authorization may be withheld if the amount of all outstanding purchases and cash withdrawals would exceed your available balance or your applicable credit limit or your daily limit. Available balance includes, if applicable, any overdraft credit line associated with the account. Withdrawals, POS transactions, purchases, and Visa cash advances made at terminals not owned by us may be subject to lower limits or other restrictions imposed by the third party terminal owner.

### Cut-off Times

For purposes of calculating your withdrawal limit for ATM/Visa Check Cards and POS transactions, we define our "day" as 10:00 p.m. to 10:00 p.m. PST. For transfers initiated using Online Banking (including bill payments) or the Automated Telephone Transfer Service, we define our "day" as 8:00 p.m. to 8:00 p.m. PST.

41

# EXHIBIT C

### Charges for Electronic Funds Transfers

**Transaction Fees** – You will be responsible for all fees associated with your use of any electronic funds transfer service offered by the Bank. Please refer to our Bank *Fee Schedule* for all applicable Electronic Funds Transfer fees. Your transactions are also subject to any applicable fees associated with your account (See the Bank *Fee Schedule* and *Annual Percentage Yield and Account Terms Disclosure*).

**Fees Charged by Third Parties** – Third parties (merchants, financial institutions, etc.) involved in processing an Electronic Funds Transfer may assess additional transaction fees for transactions made at their terminals or machines. These fees may be included in the total transaction amount that is withdrawn from your account and shown on your East West Bank account statement.

**NOTE:**
> All fees are subject to change at any time. See the *About this Agreement* section for additional information.

### Record of Your Transactions

**Receipts** – You can get a receipt at the time you make any transfer to or from your account using one of our ATMs. All ATM transactions are subject to later verification by us.

**Preauthorized Credits** – If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you can call us at the contact number provided in this section to find out whether or not the deposit has been made.

**Account Statements** – You will get a monthly account statement unless there are no transfers in a particular month. In any case, you will get a statement at least quarterly. Point of purchase and other electronic check conversion transactions will appear in the electronic payments section of your account statement.

**Passbook Accounts** – If the only possible transfers to or from your East West Bank passbook account are preauthorized deposits, we do not send periodic statements. You may bring your passbook to us and we will record any electronic deposits that were made to your account since the last time you brought in your book. We may allow withdrawals and deposits on a passbook account, or the closure of a passbook account, without the passbook being presented.

**Varying Preauthorized Transfers** – If you have arranged in advance to make regular payments out of your account and they may vary in amount, the person you are going to pay will tell you 10 days before each payment when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.

**NOTE:**
> **Massachusetts Accounts Only:** Proof of Transfer. Any documentation provided to you which indicates that an electronic funds transfer was made shall be admissible as evidence of such transfer and shall constitute prima facie proof that such transfer was made.

**NOTE:**
> Under the operating rules of the National Automated Clearing House Association, which are applicable to ACH transactions involving your account, we are not required to give next day notice to you of receipt of ACH items, and will not do so. However, this information will be provided on your account statement.

### Stop Payment of Pre-Authorized Transfers

If you have told us in advance to make regular payments out of your account, you can stop any of these payments by writing to us at the address or calling us at the number listed below. We must receive your request at least three business days before the payment is scheduled to be made. (Note: If you fail to give us your request at least three business days prior to a transfer, we may attempt, at our sole discretion, to stop the payment. We assume no responsibility for our failure or refusal to do so, however, even if we accept the request for processing.) Tell us your name, account number, the payment amount, the payment date and the person or company who is to receive the payment. We may charge you a fee for each stop payment order you give us. (See Bank *Fee Schedule*)

Unless you notify us otherwise, we will treat your stop payment order as a request to stop only one payment. If you want all future payments to a particular party stopped, you must revoke authorization in writing to the originator. (The originator is the person, organization, or financial institution you authorized to make payments from your account.) If you order us to stop one of these payments at least three business days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages. (See *Stop Payment Orders on Your Account*, under the *Additional Terms and Conditions* section, for additional information.)

### Disclosure of Account Information to Third Parties

We may release information about you, your deposit and loan accounts and the transactions you perform to third parties: where it is necessary or helpful in verifying or completing a transaction; to disclose the existence, history, and condition of your account to consumer reporting agencies; when you give us your consent;* to our affiliates; to other financial institutions with whom we have a joint marketing agreement; to comply with the law or a court or governmental order; to local, state and federal authorities if we believe a crime may have been committed involving your account; as permitted by law; and, if you are a business, in response to trade inquiries. Please see our Privacy Policy for additional details.

**NOTE:**
> **Massachusetts Accounts Only:** * Written permission will automatically expire after 45 days.

### Lost of Stolen Card/PIN or Unauthorized Transaction

If you believe your Card or PIN has been lost or stolen or that someone has transferred or may transfer money from your account without your permission, call us at the number or write us at the address described below. You should also call the number or write to the address if you believe a transfer has been made using the information from your check without your permission.

### Error Resolution

Call us at the number or write us at the address described below as soon as you can if you think your statement or receipt is wrong or if you need more information about an electronic transaction. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

(1)   Tell us your name and account number.

**EXHIBIT C**

(2)  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(3)  Tell us the dollar amount of the suspected error.

In addition, it would be helpful if you provided us with any supporting documentation related to the error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (5 business days in some cases for Visa Debit Card transactions) for the amount you think is in error, so that you will have the use of the money during the time that it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our in investigation.

### Your Liability

Tell us AT ONCE if you believe your Card or PIN has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line of credit). If you tell us within two business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your Card or PIN, and we can prove we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500. Note: This $500 liability provision does not apply to Visa Debit Cards issued to California account holders. Also, unless we determine that you were grossly negligent or fraudulent in the handling of your account or Card, you will not be liable for the $50 or $500 amounts described above for transactions with a Visa Debit Card processed over the Visa network (excluding ATM transactions).

### Our Liability for Failing to Make Transfers

If we do not complete an electronic fund transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. There are some exceptions, however. We will not be liable, for instance, if:

- Through no fault of ours, you do not have enough available funds in your account to make the transfer;

- The transfer would exceed any permitted overdraft line you have with us;

44

- Circumstances beyond our control (such as fire, flood, water damage, power failure, strike, labor dispute, computer breakdown, telephone line disruption or a natural disaster) or a rolling blackout prevent or delay the transfer despite reasonable precautions taken by us;

- The system, ATM or POS terminal was not working properly and you knew about the problem when you started the transaction;

- The funds in your account are subject to legal process, an uncollected funds hold or are otherwise not available for withdrawal;

- The information supplied by you or a third party is incorrect, incomplete, ambiguous or untimely;

- We have reason to believe the transaction may not be authorized by you;

- You do not follow the instructions provided (if any) for initiating the transfer; or

- The transaction cannot be completed because your Card is damaged.

There may be other exceptions stated in our agreement with you.

### Business and Other Non-personal Accounts

The provisions in this Electronic Funds Transfers section dealing with "Our Liability," "Your Liability," and "Error Resolution" (and related provisions on the back of periodic statements) do not apply to business or other non-personal accounts. You should notify us immediately if you discover any unauthorized transactions or errors involving your Card or account. You must send us a written notice of the problem within a reasonable time, not to exceed 14 days from the date of discovery or your receipt of the first statement or notice reflecting the problem, whichever occurs first.

You are liable for all unauthorized transactions made with your Check Card or the PIN associated with your Card that occur prior to the time you notify us to cancel your Card, that an unauthorized transaction has taken place, or that your Card or PIN has been lost or stolen. There is one exception to this liability: Unless you are grossly negligent or fraudulent in the handling of your Check Card or account, you will not be liable for unauthorized signature-based Check Card transactions processed through the Visa network. It is important that you review your statements closely, however. If you fail to notify us of unauthorized transactions within 60 days of the date of the first statement showing unauthorized activity, you will be liable for unauthorized transactions that occur after the 60-day period.

Check Card transactions are not considered unauthorized if they are made by a business co-owner or any other person with an interest in or authority to transact business on your account, even if the person exceeds any authority given by you.

### You May Direct Letters To:

East West Bank
Branch Operations Department
9300 Flair Drive, 4th Floor
El Monte, CA 91731

### During Business Hours You May Direct Calls To:

Customer Service Center at (888) 895-5650

45

# EXHIBIT C

For questions or to report errors regarding online funds transfers and Bill Payment services, please e-mail us at: hbinfo@eastwestbank.com

### Business Days

Our business days are Monday through Friday, excluding holidays. All transfers completed after the "cut-off time" on a business day, or on a Saturday, Sunday or banking holiday, may be posted on the next business day.

### Change in Terms/Termination of Service

We may add to, delete or amend the terms or terminate your use of our electronic fund transfer services at any time, with or without cause and without affecting your outstanding obligations under this Agreement. We may terminate or suspend your electronic fund transfer service immediately if: any of you breach this or any other agreement with us; we have reason to believe that there has been or may be an unauthorized use of your account, Card or PIN; there are conflicting claims to the funds in your account; or any of you requests that we do so. If you ask us to terminate your account or the use of any Card, you will remain liable for subsequent transactions performed by you or any authorized user.

### Provisional Payment

Credit given by us to you with respect to any automated deposit is provisional until we receive final settlement for such entry. If we do not receive such final settlement, you are hereby notified and agree that we are entitled to a refund of the amount credited to you in connection with such entry, and the party making payment to you (originator) via such entry shall not be deemed to have paid you the amount of such entry.

### Card and PIN Security

You agree not to disclose or otherwise make your Card or PIN available to others without our prior written consent. For security reasons, you agree not to write your PIN on your Card or keep it in the same location as your Card. You agree to return your Cards to us upon our request.

### ATM User Precautions

As with all financial transactions, please exercise discretion when using an ATM. You are responsible for your own safety. The following suggestions may be helpful:

1. Prepare for your ATM transactions at home (for instance, by filling out a deposit slip or sealing cash in the deposit envelope) to minimize your time at the ATM. Have your card ready.

2. Mark each transaction in your account record, but not while at the ATM. Always save your receipts. Do not leave them at the ATM because they may contain important account information.

3. Compare your records with the account statement you receive.

4. Protect the secrecy of your Personal Identification Number (PIN). Do not write your PIN where it can be discovered. For example, don't keep a note of your PIN in your wallet or purse.

5. Do not lend your ATM/Visa Check Card/PIN to anyone. Never give information about your ATM card/PIN to strangers or to anyone over the telephone.

6. Remember, do not leave your card or money at the ATM.

46

7. Notify us immediately if the ATM swallows your card – do not re-enter your PIN.

8. Prevent others from seeing you enter your PIN by using your body or free hand to shield their view.

9. If you lose your ATM/Visa Check Card/PIN or if it is stolen, promptly notify us. Please refer to *Your Liability*, under this Agreement section, for additional information about what to do if your card is lost or stolen.

10. Immediately report the unauthorized use of an ATM machine or ATM card to us and, as applicable, to your local police precinct/station.

11. When you make an ATM transaction, be mindful of your surroundings. Look out for suspicious activity near the ATM facility. Be sure the ATM site (including the parking area) is well-lighted and monitored by a surveillance camera or a security guard. It may be safer to bring someone with you when you make a transaction. If you observe any problem, go to another ATM facility or a bank branch where you feel more comfortable.

12. Do not accept assistance from anyone you do not know when using an ATM.

13. If you are using an indoor ATM that requires your card to open the door, avoid letting anyone that you do not know come in with you. Once inside the vestibule, make sure the door is completely closed behind you.

14. If you notice anything suspicious or any other problem arises after you have begun an ATM transaction, cancel the transaction, pocket your card and leave. Confirm with us as soon as possible that the transaction was canceled.

15. Wait until you are at home or in other secure surroundings to count your cash.

16. At a drive-up ATM, make sure all the car doors are locked and all of the windows are rolled up, except the driver's window. Keep the engine running and remain alert to your surroundings.

17. If at all possible, use an ATM that is located in a bank location. It may be easier for criminals to tamper with a machine that is in a non-bank location, such as a grocery store, deli or shopping mall.

18. Be especially cautious when making transactions in neighborhoods that are unfamiliar to you.

19. Please tell us if you know of any problem with our ATM facility. For instance, let us know if a light is not working or there is any damage to a facility. Report any suspicious activity to us and to the police.

**New York Accounts Only:** If you have a complaint or concern about the security at any ATM please call the Bank at (888) 895-5650 or contact the New York State Banking Department at 1-877-BANK-NYS (1-877-226-5697) or visit them on the Web at www.banking.state.ny.us

NOTE:

**WE DO NOT GUARANTEE YOUR SAFETY WHILE USING THE ATM.**

47

# EXHIBIT C

## ONLINE BANKING

Your Online Banking services with us are subject to the terms and conditions of our Online Banking Agreement as may be amended from time to time, this Agreement including the *Electronic Funds Transfers* section, and any other agreement applicable to services available through our Online Banking service.

## FUNDS TRANSFERS

**Funds Transfer Agreement** – This Agreement is in addition to, and does not modify, any other agreements we may have with you.

**Introduction** – This portion of the Deposit Agreement applies to wire transfers, and internal transfers between accounts at the Bank ("Funds Transfers").

In this Agreement "Cash Management" refers to any PC based or Internet based funds transfer initiation program offered by the Bank.

The terms and conditions in this Agreement, in conjunction with the information contained in the Funds Transfer Designation and Authorization and addenda, govern:

- our policies for verifying and completing funds transfers;

- the rules that affect funds transfers;

- your rights and responsibilities; and

- our rights and responsibilities.

**Authorizing Funds Transfers** – By signing a Funds Transfer Designation and Authorization and/or by signing a Funds Transfer Request and/or by initiating a wire transfer request or internal account transfer by any other method, you permit us to transfer funds based on instructions you or someone you authorize give us. You agree that anyone you allow to transfer funds may act, even if this person cannot withdraw funds from your account in other ways. Funds transfers may be processed on authorization from ONE person notwithstanding any multiple signature or authorization requirements on the account(s). We may, but are not obligated to, record our telephone conversations with you.

**Requesting Funds Transfers** – You or someone you authorize may request funds transfers as follows, depending on your account:

- **In Person:** At a Bank office, branch or department. Primary Identification must be shown.

- **In Writing (by mail or messenger):** All written requests must be signed with an original signature.

- **Facsimile:** All facsimile requests must be signed and clearly legible.

- **Telephone:** To a Bank office, branch or department.

- **Online:** East West Bank's Business Internet Banking products.

You may, depending on the East West Bank products and services you use, have the option of selecting one or more of these methods when you set up your account or enter into an agreement pursuant to these other products and

48

services. When applicable, if you later wish to change the way(s) you request funds transfers, we will send you a form to complete and return. It can take up to 10 business days for us to make any changes before you may use the new method(s).

If you generate a large volume of funds transfer requests, we may require you to use a specific method of requesting funds transfers.

**Funds Transfer Security** – We maintain certain security procedures described below. You agree to:

- use one or more of our security procedures for your funds transfer instructions;

- notify us promptly, in writing, if the authority of any previously authorized individual has changed and to give us reasonable time to act on such notice; and

- to take responsibility to insure that security information is kept confidential, and to inform us promptly if one of our security procedures is no longer confidential.

Some of our procedures may provide greater security than others. If we follow a security procedure you have selected, you allow us to execute funds transfers, and you agree to be bound by such transfer whether or not actually authorized. You agree that the Bank's security procedures, set forth in this Agreement, are commercially reasonable. These security procedures may be changed by the Bank from time to time.

**Security Procedures** – For all funds transfer requests, we will attempt to verify that the person requesting the transfer is authorized. For telephone and facsimile requests, we use one or more of the following security procedures. Please note that our validation checks will not detect any errors you make, and we will rely on the information you give us in making your funds transfers.

We use a combination of verification procedures depending on the type of funds transfer request, and where you make the request.

- **Callback:** After we receive a funds transfer request via telephone or facsimile, we telephone or "callback" someone else whom you have previously authorized to verify the request. If there is only one authorized individual designated, or if you have waived your right for "callback" to an authorized individual who is not the initiator, or if you have not previously designated an individual for "callback", "callback" may be made to the initiator of the funds transfer request, or to any authorized signer on the account. Otherwise, if there are no other authorized individuals available, the funds transfer may not be processed.

- **Test Key:** Test Key is a PC based, password protected, security calculation that uses various components of your funds transfer request to calculate a verification number. To use the Test Key two individuals you have previously authorized will enter the appropriate data into the program where a verification number will be generated. This number is provided to the Bank with the funds transfer request. If you choose this method, you agree to treat the Test Key as you do other sensitive and irreplaceable business records. You must always be able to account for the location of your test key software and are responsible for ensuring that it is properly safeguarded against unauthorized use. For your protection we recommend that you change your password regularly.

49

**EXHIBIT C**

- **Online:** East West Bank offers Business Internet Banking product from a web based system. To initiate funds transfers online, two individuals you have previously authorized will enter the funds transfer into the system, which is then transmitted to the Bank upon entry of the security code indicated on the token at the time of the wire release. If only one individual has been previously authorized to enter funds transfers into the system, the funds transfer will be processed based on the entry by the one authorized individual and authenticated by the security code indicated on the token at the time of the funds transfer release.

**Repetitive Transfers** – Repetitive transfers are funds transfers that are sent to the same account of the same bank that differ only in amount. To establish a repetitive funds transfer, complete the Funds Transfer Designation and Authorization along with a Repetitive Funds Transfer Agreement and Request. We will assign a repetitive transfer number for use with telephone and facsimile requests. For repetitive transfers, we callback only when you set up the initial transfer instructions. Subsequent repetitive transfers will not be verified.

**Processing Funds Transfers** – We will use our best efforts to transfer funds the same day if:

- you make your request when our office, branch or department is open to transfer funds (i.e., not a Saturday, Sunday or banking holiday), and

- we receive and can authenticate your instructions before our cut-off time (which may change without prior notice). Instructions received after this time will be executed the next business day.

If you request that we use a specific account for a transfer, we will try to transfer funds from this account. You agree to pay us the current fees for funds transfers established in our published fee schedules. (See Bank *Fee Schedule)* We may change our fees, but we will provide you with at least 30 days prior notice in writing. Such fees do not include, and you will be responsible for payments of, any sales, use excise, value added, utility or other similar taxes relating to the services provided for herein.

If you identify the beneficiary or a bank for a funds transfer using both a name and a number, we may use the number alone to complete your funds transfer request. We, any intermediary bank, and the beneficiary's bank, are not responsible if the name and the number do not agree. Your obligation to pay the amount of the funds transfer to us is not excused in such circumstances.

We use a variety of facilities to make funds transfers. Unless you instruct otherwise, we will use one or more of the following funds transfer systems.

- Fed Wire System (Fedwire)

- SWIFT

- Any correspondent bank or banks we consider suitable under the circumstances.

We may, without prior notice or demand, to obtain payment of any amount due and payable by you under this Agreement, debit your account with us from which the transfer was made or, if there are insufficient collected funds in that account, debit any other account maintained by you (separately or together with others) with us or any affiliate of ours and offset against that account the amounts owed. By transferring funds, you hereby grant to us a security interest in all accounts maintained by you (separately or together with others) with us or any affiliate of ours with respect to your payment obligations under this Agreement.

50

You accept and agree to the rules of the funds transfer payment system we, the beneficiary bank and any intermediary bank may use.

**Changing or Recalling a Funds Transfer** – If you try to cancel or change an instruction after we receive it, we will use reasonable efforts to comply with your request. We cannot guarantee that we will be able to do so. You agree that we are not responsible if we do not cancel or change your instructions. If you instruct us to send changed or amended instructions on a funds transfer that has already been transmitted by us, you agree that we will not be responsible for any loss or damages you may incur, and that you may be charged additional fees.

**Sending Funds Outside the United States** – If you request that U.S. dollars be sent to a bank in a foreign country, and you do not designate a specific U.S. correspondent bank, payment may be made through a correspondent bank as determined appropriate by us.

If you request that funds be sent to a foreign country in foreign currency, payment will be made through a correspondent bank as determined appropriate by us. An exchange rate will be quoted to you prior to sending the funds.

**Foreign Currency Fund Transfers** – Foreign currency fund transfers will additionally be governed by the terms and conditions contained in the Foreign Currency Fund Transfers Agreement.

**Other Banks' Charges** – Correspondent banks, as well as the destination bank, may charge fees for handling funds transfers. These charges are beyond our control and will reduce your final wire proceeds.

**Confirming Your Instructions** – We will send you a confirmation of your funds transfer instructions and/or account statements. You agree to review them and notify us immediately, in writing, of any errors, unauthorized transactions or irregularities. If you fail to notify us in writing of any such discrepancy within 30 calendar days from the date we mailed the confirmation or account statement (whichever was sent first), you agree that we shall not be liable for any other losses resulting from your failure to give such notice or any loss of interest with respect to a funds transfer that is or should have been shown. If you fail to notify us in writing of any such discrepancy within one year from our mailing of such confirmation or account statement, you will be precluded from asserting the discrepancy against us.

**Liability for Erroneous/Inaccurate Instructions** – If we receive an authorized funds transfer request from you, which is erroneous or inaccurate in any way, you shall be obligated to pay the amount of such transaction as provided herein whether or not we complied with any applicable security procedures.

You agree to exercise reasonable care in observing security procedures, examining statements and records, and initiating requests. You are responsible for ensuring the accuracy of your funds transfer requests and we have no duty to verify the accuracy of a funds transfer request nor are we liable for any losses or damages arising out of a request that contained erroneous or inaccurate information.

**Data Retention** – You shall retain data on file adequate to permit remaking or reconstruction of all funds transfer requests for *one (1) year* following the date of the execution of the request to which such data relates, and shall provide such data to us upon request.

**Rejecting Funds Transfers** – A funds transfer request is considered accepted when the Bank executes it. We may decide to reject any funds transfer instructions for any reason, including but not limited to (1)

51

# EXHIBIT C

instructions that are inconsistent; (2) instructions that are not in accordance with the requirements of this Agreement; (3) instructions we cannot verify in accordance with our security procedures, (4) instructions we believe are unauthorized; and/or (5) otherwise if the Bank has reasonable cause to believe it is necessary for your or the Bank's protection. If we cannot verify your funds transfer instructions to our satisfaction, you agree that we are not responsible if we do not execute your instruction(s). If you do not have sufficient available funds in your account(s) with us, we may, but are not required to complete funds transfers you request. In such cases, you agree to repay us immediately the amount of any overdraft and for any related fees.

**Rejected or Returned Funds Transfers** – If your funds transfer request is rejected for any reason, you may be required to remake the request. The Bank shall have no obligation to retransmit a returned funds transfer if we originally executed it in compliance with the provisions of this Agreement or to pay any interest on the returned amount.

**Liability Limitations** – (See *Limiting Our Liability*, under the *Additional Terms and Conditions* section, for additional information.)

## AUTOMATED TELEPHONE TRANSFER SERVICE

This Agreement sets forth the terms of our Automated Telephone Transfer Service ("Service") provided to you by East West Bank. By signing an automated telephone transfer service request you are to be bound by the following terms and conditions. (See the *Electronic Funds Transfers* section for further terms applicable to Automated Telephone Transfer Service.)

**Services Offered** – After we process your automated telephone transfer service request and application, and provide you with a Personal Identification Number (PIN), you may transfer funds among your East West Bank checking and savings accounts through the Service.

**Balance Information** – Account balance information may not reflect recent transactions and may include funds which are not available for immediate withdrawal.

**Personal Identification Numbers and Use of Service** – We will assign you a PIN, which you may change by following the instructions provided when you call the Service. The PIN must be used each time you access the Service. You agree not to disclose or otherwise make your PIN available to anyone not authorized to sign on your accounts.

**Authorized Users** – If there are other signers on any of your account(s) covered by this Agreement, you hereby authorize them to use your PIN and this Service. Any signer on accounts covered by this Service is authorized to make transfers, even if your account(s) is otherwise subject to a two-signature requirement for withdrawals.

**Transaction Limitations** – (See the *Account Limitations* section for additional information.)

**Charges** – If you make any transfer from a money market deposit and/or savings account that exceeds the transaction limitations applicable to your account, we may charge you an excessive transaction fee. Additional transaction fees may apply. (See Bank *Fee Schedule*)

**Transfer Cut-Off Time and Business Days** – (See *Business Days* and *Cut-Off Time*, under the *Electronic Funds Transfers* section, for additional information.)

52

**Stop Payment Orders** – (See *Stop Payment Orders on Your Account*, under the *Additional Terms and Conditions* section, and *Stop Payment of Pre-Authorized Transfers*, under the *Electronic Funds Transfers* section.)

**Termination** – We reserve the right to terminate this Agreement at any time with or without cause. We may immediately terminate the Agreement and/or your use of the Service if: (1) you or any authorized user of your PIN breach any agreement with us; (2) we have reason to believe there has been or may be an unauthorized use of your PIN or account(s); (3) any party associated with your checking or savings account requests that we do so; or (4) there are conflicting claims to the funds in your account(s).

**Unauthorized Transactions to Your Consumer Account** – (See the *Electronic Funds Transfers* section for additional information.)

**Unauthorized Transactions to Business and Trust Accounts** – Business and trust account customers must promptly review their statements and notify us immediately if they discover any errors or unauthorized transactions.

**Periodic Statements** – You will get a monthly account statement unless there are no transfers in a particular month. In any case, you will get a statement at least quarterly.

## SAFE DEPOSIT BOX TERMS AND CONDITIONS

**Fees** – Your safe deposit box is subject to an annual fee, which is payable in advance, unless you maintain the balance we prescribe in the savings account designated on your Signature Card. (See Bank *Fee Schedule*) If you fail to maintain the required balance at any time for any reason, your box will no longer be subject to a fee waiver. If that occurs, your agreement will begin a new term, and we may either send you a bill for the annual fee or charge it to your deposit account. You agree to pay the annual fee (if any) associated with your box. If you fail to pay us the fee when due, we may deny access to the box, force open the box, and/or dispose of the contents as provided by law.

**Term of Agreement** – This Agreement is for a term of one year, unless otherwise specified in writing and signed by us, and will automatically renew each year unless you or we send a notice of termination prior to the end of the term. If you terminate this Agreement before the end of any term for any reason, you will not be entitled to a rebate of any part of the annual fee. Any holder or authorized signer(s) on the box may terminate this Agreement. We may terminate this Agreement at any time, with or without cause. Upon notification of termination, you agree to promptly remove all contents from the box, surrender the keys to the Bank, and execute such release or any other agreements we may require. If you fail to comply with a termination notice, we may force open the box, replace the keys and lock, and remove and store the contents in whatever manner we choose. You agree that we may dispose of all or any part of the contents in any manner as is permitted by law. Additionally, you agree to reimburse us for any expense, including drilling and storage fees, we may incur.

**Rental Fees** – See the Bank *Fee Schedule* for applicable annual rental fee information.

**Changes** – We may change the terms of this Agreement, including the annual fee and the balance requirement to avoid the fee, by providing any of you with advance notice of the change.

We may change the location of the box or substitute a box, without incurring any liability to the box holder(s). In the event the box is relocated to another branch office of the Bank, the rights and obligations of the box holder(s) and the Bank hereunder shall remain in effect.

53

# EXHIBIT C

**Access to the Box and Vault Area** – Authorized signer(s) may have access to the safe deposit box during normal business hours if they show identification, which is acceptable to the Bank, and otherwise prove to the Bank's satisfaction that they are authorized to access the box. Any box holder shall have the right, without notice to or without the presence of any other holders, trustees or representatives, to access the box and to remove the contents and surrender the box and keys. If more than one signer is required to gain entry, access will be permitted only upon our receipt of the required number of signatures (as reflected on the Signature Card). The Bank may accept or act on any instructions by one holder, trustee or representative as if it were made by all box holders.

Authorized signer(s) will be allowed into the vault for a reasonable time to gain access to the box. We may require that they carry the box to a room or desk outside the vault area. The box may not be removed from the Bank's premises.

**Storage Restrictions** – The holder is prohibited from placing any of the following items in the safe deposit box: any liquids, any property the possession of which is unlawful, property of an explosive, dangerous, or offensive nature, or which may become a nuisance to us or any other box holder. If the Bank has reason to believe that any of these items are stored in your box, the Bank reserves the right to open the box and remove its contents without prior notification. If we do so, we will inventory the contents. The inventory shall be deemed conclusive evidence of the contents of your box.

**Keys** – We have given you two keys to your box. You agree to use the highest degree of care to keep the keys out of the possession of unauthorized persons and to notify us immediately if either key is lost or stolen. You must reimburse us for any expense we incur in replacing lost or stolen key(s), replacing a lock, or forcing open your box. You agree not to make duplicate keys or to give your keys to others without our prior written consent. You must return the keys to us at the end of this Agreement or at our earlier request.

**Death and Incompetence** – You agree to notify us promptly if any holder or authorized signer dies or is declared incompetent. We may deny access to the heirs or other legal representatives of the holder or the holder's estate until they provide us with suitable identification and proof, satisfactory to us, of their authority to access the box. Upon the death or disability of an individual holder of a jointly held box, the remaining holder(s) are entitled to exclusive right of access. If there is more than one surviving holder any one of the surviving holders may continue to have access the box and remove any or all contents. Additionally, you agree that we are not required to give any notice regarding such access to the representatives of the deceased or disabled holder(s). An inventory of the safe deposit box contents may be required by us prior to release of the contents.

**Adverse Claims** – In the event of conflicting claims or demands regarding this box or its contents, the Bank may refuse further access to the box until we receive evidence or proof, satisfactory to us, of each person's right to access the box and remove its contents. At our sole discretion, we may require all authorized signers (including the legal representative(s) of a deceased holder) to act together in gaining access to your box.

**The Bank's Responsibility** – We are only responsible for providing you with space for the storage of property, if any, in a safe deposit box. In doing so, we are required only to use ordinary care with respect to your box. We do not represent that the box is fireproof, waterproof, or burglar-proof. As such, we will not be liable to you if any unauthorized person opens your box or a fire causes damage to its contents, as long as we have used ordinary care in preventing such an occurrence.

54

It shall not be presumed that an unauthorized person opened your box simply because you claim something is missing. You agree that in the event of any loss or damage to the box or its contents, we will not be liable to you for any consequential, special or incidental damage, nor for any amount in excess of the face value or fair market value of any items as of the date of the loss. We shall not be liable for any loss or damage which arises, wholly or in part, directly or indirectly, as a result of the failure of any holder or authorized signer to abide by the terms of this Agreement, accidents, fire, flood, water damage (including damage from fire suppression systems), burglary, civil unrest, terrorism, acts of God, or any cause beyond our reasonable control.

In the event of any loss or damage for which we are liable, we reserve the right, in our sole discretion, to pay you the face value or fair market value of any items as of the date of the loss, or to replace the items.

**NOTWITHSTANDING ANY PROVISION IN THIS OR ANY OTHER AGREEMENT TO THE CONTRARY, AND IN CONSIDERATION OF THE MODEST FEE FOR THE LOCK BOX, YOU AGREE THAT OUR LIABILITY FOR ANY LOSS OR DAMAGE TO YOUR BOX OR ITS CONTENTS, HOWEVER OCCURRING, SHALL NOT EXCEED $10,000. IF YOU WOULD LIKE TO PAY A HIGHER FEE FOR THE SAFE DEPOSIT BOX IN RETURN FOR HIGHER LIABILITY PROTECTION IN CASE OF A LOSS FOR WHICH WE ARE RESPONSIBLE UNDER THIS AGREEMENT, YOU MAY CONTACT THE HEAD OF BRANCH OPERATIONS TO CONSIDER, ON A CASE BY CASE BASIS, A HIGHER RATE IN RETURN FOR HIGHER LIABILITY. IF YOU WANT TO INSURE WHAT YOU KEEP IN THE BOX, YOU SHOULD CONTACT AN INSURANCE COMPANY. WE DO NOT INSURE THE CONTENTS OF YOUR BOX.**

**No Third Party Beneficiaries** – There are no third party beneficiaries to this agreement. We assume no responsibility to others with respect to any property you store for them in your box.

55

EXHIBIT C

# INDEX

## SECTIONS

Starting Page

- *Introduction* .......................................... 1

- *About the Agreement* ................................ 1

- *FDIC Insurance* ..................................... 2

- *Currency Transaction Reports ("CTRs")* ............. 2

- *Important Information About Procedures for Opening a New Account* ........... 3

- *Signature Card and Authorized Signers* .............. 3

- *Account Ownership*
  *California, Georgia, Massachusetts, Washington Accts.*
  Community Property Accounts ..................... 5
  "In Trust" Accounts ............................. 5
  Individual Accounts ............................. 4
  Joint Tenancy Accounts .......................... 5
  Massachusetts Accounts Only: 18-65 Accounts ...... 5
  Tenants in Common Accounts ...................... 4
  *New York Accounts*
  Individual Accounts ............................. 6
  Joint Tenancy Accounts .......................... 6
  Tenants in Common Accounts ...................... 6
  "Totten Trust" Accounts ......................... 7
  *Texas Accounts*
  Community Property Accounts ..................... 8
  Special Reporting Obligations for Texas Business Account Customers ............................. 8
  Texas Uniform Single – or Multiple-Party Account Selection Notice ............................... 7
  *Other Account Types*
  Attorney-Client Trust Accounts .................. 10
  Corporation Accounts ........................... 9
  Documented Trust Accounts ...................... 9
  Limited Liability Company Accounts .............. 10
  Partnership Accounts ........................... 9
  Retirement Accounts ............................ 10
  Sole Proprietorship Accounts ................... 9
  Transfer of Ownership .......................... 10
  Uniform Transfers to Minors Act Accounts ........ 9

- *General Terms and Conditions*
  Adjustments .................................... 11
  Annual Percentage Yield ........................ 10
  Business and Banking Days ...................... 10
  Collection of Items ............................ 12
  Deposit of Items ............................... 10
  Discrepancies .................................. 11

## SECTIONS

Starting Page

  Foreign Transactions ........................... 12
  Indemnification ................................ 12
  Withdrawals (Generally) ........................ 12

- *Account Limitations*
  Bonus or Special Promotion ..................... 14
  Deposit Limitations ............................ 13
  Fixed Rate, Fixed Term Certificate Accounts ..... 14
  Money Market and Savings Accounts .............. 14
  Withdrawal Limitations ......................... 13

- *Additional Terms and Conditions*
  Account Analysis ............................... 15
  Address Changes ................................ 24
  Bank Policies and Procedures ................... 27
  Check Orders/Forms ............................. 15
  Check Processing ............................... 19
  Check Truncation ............................... 20
  Checks Bearing Restrictive Notations ........... 21
  Closing an Account ............................. 26
  Compliance ..................................... 28
  Contract Language .............................. 28
  Customer Responsibilities and Limit on Time to Assert Claims ........................................ 29
  Cut-off Times .................................. 16
  Death or Adjudication of Incompetency .......... 27
  Demand Drafts .................................. 18
  Determination of Account Balance ............... 24
  Direct Deposit/Preauthorized Withdrawals ....... 25
  Disputes ....................................... 30
  Document Retention ............................. 26
  Electronic Imaging of Checks ................... 20
  Electronic Presentment/Posting ................. 20
  Electronic Redeposit of Returned Checks ........ 20
  Escheat (Transfer) of Dormant Accounts ......... 25
  Facsimile Signatures ........................... 14
  Fax/E-Mail/Voicemail Instructions .............. 14
  Fingerprinting ................................. 15
  Governing Law .................................. 28
  Improper Endorsement Under Regulation CC ....... 21
  Insufficient Funds ............................. 18
  Large Cash Transactions ........................ 25
  Legal Process .................................. 27
  Limiting Our Liability ......................... 28
  Lost or Stolen Checks .......................... 17
  Mailing/Delivering Statements and Notices ...... 24
  Minors' Accounts ............................... 15
  New Account Verification ....................... 15
  Non-Assignability .............................. 32
  Order of Payments .............................. 19
  Other Agreements ............................... 31
  Payment of Photocopies ......................... 16
  Periodic Statement and Notice Responsibilities . 21
  Positive Pay Fraud Prevention Option ........... 22
  Postdated Checks ............................... 17
  Power of Attorney .............................. 15
  Protecting Your Account ........................ 22

# EXHIBIT C

**SECTIONS**                       **Starting Page**

*Release of Account Information* .................... 27
*Returned Items/Transactions.* ..................... 19
*Set-Off and Security Interest* ..................... 27
*Severability* ..................................... 32
*Stale Dated Checks* .............................. 17
*Stop Payment Orders on Your Account.* .............. 16
*Stop Payments, Bank Issued Checks* ................ 17
*Stop Payments, Money Orders* ..................... 17
*Subaccounts* .................................... 24
*Telephone and Electronic Communication Monitoring/*
*Recording* ................................... 26
*Telephone Transfer* .............................. 26
*Unauthorized Transactions* ....................... 21
*Waiver* ......................................... 32

• *Dispute Resolution*
                                  32

• *Holds for Uncollected Funds/Delayed Funds Availability*
*Ability to Withdraw Funds* ........................ 34
*Funds Availability* ............................... 34
*Holds on Other Funds (Check Cashing/Other Account)* 35
*Longer Delays May Apply* ......................... 35
*Special Rules for New Accounts* ................... 35
*Substitute Checks and Your Rights..* ............... 36

• *Withholding of Income Tax*
                                  37

• *Electronic Funds Transfers*
*ATM User Precautions.* ........................... 46
*Business and Other Non-Personal Accounts* ......... 45
*Business Days* ................................... 46
*Card and PIN Security* ........................... 46
*Change in Terms/Termination of Service* ............ 46
*Charges for Electronic Funds Transfers*
*Fees Charged by Third Parties* .................... 42
*Transaction Fees* ................................ 42
*Cut-off Times* ................................... 41
*Disclosure of Account Information to Third Parties* ... 43
*Error Resolution* ................................ 43
*Limitations on Dollar Amounts of Transactions*
*ATM Card Transactions.* .......................... 40
*Electronic Check Conversion Transactions* .......... 41
*Online Banking Service Transactions* ............... 41
*Preauthorized Automated Telephone*
*Transfer Service Transactions* ..................... 41
*Visa Check Card Transactions* .................... 40
*Limitations on Frequency and Type of Transactions* ... 40
*Lost Stolen Card/PIN or Unauthorized Transaction.* ... 43
*Our Liability for Failing to Make Transfers* ......... 44
*Provisional Payment* ............................. 46
*Services*
*Automated Teller Machine ("ATM") Card/*
*Check Card* ................................... 38
*Electronic Check Conversion* ..................... 40
*Foreign Transactions* ............................ 39
*Online (Internet) Banking Transactions* ............ 40

**SECTIONS**                       **Starting Page**

*Preauthorized Automated Telephone Transfer*
*Service* ....................................... 40
*Preauthorized/Automatic Transfers* ................ 39
*Refunds on Purchases* ........................... 39
*Transaction Holds* ............................... 39
*Stop Payment of Pre-Authorized Transfers* .......... 43
*Record of Your Transactions*
*Account Statements* ............................. 42
*Passbook Accounts* .............................. 42
*Preauthorized Credits* ........................... 42
*Receipts* ....................................... 42
*Varying Preauthorized Transfers* .................. 42
*You May Direct Letters/Call To* ................... 43
*Your Liability* .................................. 44

• *Online Banking*
                                  48

• *Funds Transfers*
*Authorizing Funds Transfers* ...................... 48
*Changing or Recalling a Funds Transfer* ............ 51
*Confirming Your Instructions* ..................... 51
*Data Retention* ................................. 51
*Foreign Currency Fund Transfers* .................. 51
*Funds Transfer Agreement* ....................... 48
*Funds Transfer Security* .......................... 49
*Introduction* ................................... 48
*Liability for Erroneous/Inaccurate Instructions* ...... 51
*Liability Limitations* ............................. 52
*Other Banks' Charges* ........................... 51
*Processing Funds Transfers* ...................... 50
*Rejected or Returned Funds Transfers* .............. 52
*Rejecting Funds Transfers* ........................ 51
*Repetitive Transfers* ............................. 50
*Requesting Funds Transfers* ...................... 48
*Security Procedures* ............................. 49
*Sending Funds Outside the United States* ........... 51

• *Automated Telephone Transfer Service*
*Authorized Users* ............................... 52
*Balance Information* ............................. 52
*Charges* ....................................... 52
*Periodic Statements* ............................. 53
*Personal Identification Numbers and Use of Service* .... 52
*Services Offered* ................................ 52
*Stop Payment Orders* ............................ 53
*Termination* .................................... 53
*Transaction Limitations* .......................... 52
*Transfer Cut-Off Time and Business Days* ........... 52
*Unauthorized Transactions to Business and Trust*
*Accounts* ..................................... 53
*Unauthorized Transactions to Your Consumer Account* 53

# EXHIBIT C

**SECTIONS** _____ Starting Page

• *Safe Deposit Box Terms and Conditions*

*Access to the Box and Vault Area* . . . . . . . . . . . . . . . . . . . .  54
*Adverse Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54
*Changes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53
*Death and Incompetence* . . . . . . . . . . . . . . . . . . . . . . . . . .  54
*Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53
*Keys* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54
*No Third Party Beneficiaries* . . . . . . . . . . . . . . . . . . . . . .  55
*Rental Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53
*Storage Restrictions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54
*Term of Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53
*The Bank's Responsibility* . . . . . . . . . . . . . . . . . . . . . . . . .  54

**EXHIBIT C**

however, of any changes that are beneficial to you (e.g., reduction of fee or addition of a service).

Unless otherwise provided in this Agreement, we may comply with applicable clearinghouse, Federal Reserve Bank and correspondent bank rules in processing transactions. You agree that we may act in accordance with those rules and that we do not have to notify you of a change in such rules, except to the extent required by law.

We reserve the option to waive, reduce or reverse charges or fees. We also reserve the right to waive any of these rules, terms or conditions. Any waiver or reversal will only apply to that individual situation and will not bind us in the future. You waive diligence, demand, presentment, protest and notice of every kind, except as set forth in this Agreement.

Either East West Bank or you may terminate this contractual Agreement, upon written notice. Termination does not release you from the payment of outstanding obligations (including accrued fees, overdraft balances, penalties, indemnity obligations or the liability for checks in process) or for obligations that arise after the account is closed, such as from a deposited check that is returned.

NOTE:

- **THIS AGREEMENT CONTAINS THE TERMS OF OUR DISPUTE RESOLUTION PROGRAM. THE TERMS OF THE PROGRAM ARE CONTAINED IN THE SECTION ENTITLED "DISPUTE RESOLUTION". PLEASE READ THEM CAREFULLY.**

## FDIC INSURANCE

East West Bank is considered a "single" insured bank for FDIC insurance coverage purposes. You acknowledge and understand that any account(s) you open at East West Bank will be, for FDIC insurance purposes, considered together with any account(s) you currently have with or will open at East West Bank. Your deposits are insured up to an aggregate of at least $250,000 by the Federal Deposit Insurance Corporation (FDIC). To find out more about FDIC insurance, please refer to one of our informational brochures, available at our branch locations. You may contact the FDIC directly at 550 17th Street, NW, Washington, D.C. 20429, or by calling its toll-free consumer hotline at (877) ASK-FDIC or visiting their website at www.FDIC.gov

## CURRENCY TRANSACTION REPORTS ("CTRs")

The following information is designed to help you understand the requirements of the Federal law governing the reporting of certain large currency transactions.

**Why does the Bank ask you for identification and personal information?:** Federal law requires financial institutions to report currency (cash or coin) transactions over $10,000 conducted by, or on behalf of, one person, as well as multiple currency transactions that aggregate to be over $10,000 in a single day. These transactions are reported on Currency Transaction Reports ("CTRs"). The federal law requiring these reports was passed to safeguard the financial industry from threats posed by money laundering and other financial crime. To comply with this law, financial institutions must obtain personal identification information about the individual conducting the transaction such as Social Security number as well as driver's license or other government issued document. This requirement applies whether the individual conducting the transaction has an account relationship with the institution or not.

2

There is no general prohibition against handling large amounts of currency and the filing of a CTR is required regardless of the reasons for the currency transaction. The Bank collects this information in a manner consistent with your right to financial privacy.

If you have further questions, please contact FinCEN's Regulatory Helpline at (800) 949-2732.

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money-laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means to you:** When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## SIGNATURE CARD AND AUTHORIZED SIGNERS

The account signature card gives important information about your account, such as the ownership, identification, and customer contact information. For your protection, please make sure the information provided on your signature card is accurate.

At our discretion, you agree to provide us with information and documentation satisfactory to us, to identify all authorized signers and, if applicable, the organization or business. You may indicate the number of required authorized signers for an account on the signature card, and any of the authorized signers, without notice to the other authorized signers, may sign checks, make withdrawals, transfer funds, close the account, endorse for deposit to this account checks that are payable to any of you, authorize, amend or cancel Automated Clearing House entries and any other types of electronic fund transfers, initiate stop payment orders, or give us instructions and/or changes regarding the account.

- **Massachusetts Accounts Only:** By signing a signature card, you authorize the Bank to honor all instructions given by the account holders or authorized signers, except that for a joint account, no access device may be issued to any account holder until all joint account holders have signed the initial request for such an access device.

Although your card may indicate that more than one signature is required on checks and for the withdrawal or transfer of funds, that notation is for your own purposes. **We do not assume a duty to support multiple signature requirements.** As such, we assume no duty to confirm that two or more (or any combination) of the authorized signers have approved any transaction. Unless we enter into a separate written agreement to the contrary, we may act upon the instructions of any one signer. Although we may attempt on occasion to enforce the multiple signature requirements shown on your card (e.g., by refusing to permit a transaction authorized by less then the stated number of authorized signers), we may cease doing so at any time and without prior notice to you.

We have no duty to question withdrawals or the application of funds. We may, but are not obligated to, honor checks and other instructions where the authorized signer's name and/or signature is written in characters or otherwise not in English.

If a dispute or question arises (whether by us, you or a third party) over any person's authority to give us instructions concerning the account, we may

3

EXHIBIT C

<u>PROOF OF SERVICE</u>

    I am over the age of eighteen years and not a party to this action.  My business address is

Orrick, Herrington & Sutcliffe LLP, 777 S. Figueroa Street, Suite 3200, Los Angeles, CA 90017.

On July 18, 2018, I served the following document(s):

    **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; FRAUD;
CONVERSION; LIABILITY ON INSTRUMENTS; AND CIVIL CONSPIRACY**

upon the interested parties in this action as follows:

☒    (BY MAIL)  By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Irvine, California, in the ordinary course of business.

☐    (BY EMAIL)  By transmitting a true pdf copy of the foregoing document(s) by e-mail transmission from dbourgeois@orrick.com to the interested parties only as indicated on the attached service list at the e-mail addresses set forth on said service list. Said transmission(s) were completed on the aforesaid date at the time stated on declarant's e-mail transmission record. Each such transmission was reported as complete and without error.

☐    (BY PERSONAL SERVICE)  By personally hand-delivering a true copy of the foregoing document(s) to the interested parties listed below.

Edward E. Alon, Esq.
Alon LLP
6303 Owensmouth Ave., 10th Flr.
Woodland Hills, CA 91367
Tel: 818-858-0051
Fax: 818-858-0052

Edwardalon@alonllp.com

Claire N. Espina, Esq.
Edelberg & Espina, APLC
18757 Burbank Blvd., Ste. 215
Tarzana, California 91356
Tel:  (818) 708-7791
Fax: (818) 708-8126

arnel@edelbergandespina.com

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on July 18, 2018, at Los Angeles, California.

Mercylyn Adams

PROOF OF SERVICE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa St. Suite 3200
Los Angeles, CA 90017-5855

A true and correct copy of the foregoing document entitled (*specify*): **Complaint to Determine Nondischargeability of Debt – 11 U.S.C. § 523(a)(2) and § 523(a)(6)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/23/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

• Nathan M Dooley    ndooley@cozen.com, sfraser@cozen.com
• Dennis A Dressler    ddressler@dresslerpeters.com
• John A Farmer    jfarmer@orrick.com
• Marshall F Goldberg    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
• Hal D Goldflam    hgoldflam@frandzel.com, bwilson@frandzel.com
• Stella A Havkin (Attorney for Debtor)    stella@havkinandshrago.com, havkinlaw@earthlink.net;r49306@notify.bestcase.com
• Jeffery D Hermann    jhermann@orrick.com
• Leslie R Horowitz    lhorowitz@clarktrev.com, caguilar@clarktrev.com
• Stephen E Jenkins    sjenkins@hemar-rousso.com
• Matthew Klinger    mklinger@sheppardmullin.com
• June T Monroe    june@rjlaw.com, shelly@rjlaw.com,abby@rjlaw.com
• Scott H Olson    solson@vedderprice.com, jcano@vedderprice.com,jparker@vedderprice.com;scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com
• Joshua K Partington    efilings@amlegalgroup.com
• Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.epiqsystems.com
• United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
• Mohammad Walizadeh    mwalizadeh@hansonbridgett.com, mless@hansonbridgett.com
• Charles C H Wu    cchwu@wclawyers.com, vreddy@wclawyers.com;tphillip@wclawyers.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 1/23/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Nino Jefferson Lim
27062 W. Island Road
Valencia, CA 91355

United States Trustee
915 Wilshire Blvd. Suite 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/23/2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

By Overnight Mail:
<u>Judge</u>
Hon. Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/23/2019 | John A. Farmer | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**